1          IN THE CRIMINAL COURT OF TENNESSEE AT MEMPHIS

2                    THE THIRTIETH JUDICIAL DISTRICT

3

4   STATE OF TENNESSEE,              )         COPY

5                                    )

6   vs.                             )     Case No. P 43279

7   DELCHON WEATHERSPOON,           )

8              Defendant.           )

9   ------------------------------------------------------------

10          PETITION FOR WRIT OF CERTIORARI/BOND HEARING

11                       MARCH 22, 2017

12  ------------------------------------------------------------

13

14          THE HONORABLE GLENN WRIGHT, PRESIDING JUDGE

15                          APPEARANCES

16  FOR THE STATE:

17          MEGHAN FOWLER
            Assistant District Attorney General
18          District Attorney General's Office
            201 Poplar Avenue - Third Floor
19          Memphis, TN 38103

20  FOR THE DEFENDANT:

21          JOSHUA STANTON
            Assistant Public Defender
22          Public Defender's Office
            201 Poplar Avenue - Second Floor
23          Memphis, TN 38103

24
                            Reported by:
25                      **Katherine Knowles**
                          Court Reporter

TABLE OF CONTENTS

VOLUME ONE

PAGE

Appearances                                          1

Table of Contents                                    2

List of Exhibits                                     3

Style and Caption                                    4

**Wednesday, March 22, 2017**

Statements (By Mr. Stanton)                          3

**STATE'S PROOF**

**SERGEANT CORDERO**

        Direct Examination (By Ms. Fowler)          8
        Cross-Examination (By Mr. Stanton)          17

Closing Arguments (By Mr. Stanton)                  18

Closing Arguments (By Ms. Fowler)                   23

Closing Arguments (By Mr. Stanton)                  25

Court's Ruling                                      27

Certificate of Reporter                             28

1

## INDEX OF EXHIBITS

2

3

| NO. | STATE/DEFENSE | ID/EVIDENCE | TO/DESCRIPTION | PAGE |
|-----|---------------|-------------|----------------|------|
| 1 | Defense | Evidence | Court, affidavit | 5 |
| 2 | Defense | Evidence | Court, court file | 6 |
| 3 | Defense | Evidence | Court, Pretrial report | 7 |
| 4 | State | Evidence | Court, photos | 15 |

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1     IN THE CRIMINAL COURT OF SHELBY COUNTY, TENNESSEE

2          DIVISION 2

3

4 STATE OF TENNESSEE,     )

5             )

6 vs.          )  Case No. P 43279

7 DELCHON WEATHERSPOON,   )

8      Defendant.   )

9

10     This cause came to be heard and was heard on the

11 22nd day of March, 2017, before the Honorable Glenn Wright,

12 Judge, holding the Criminal Court for Shelby County, at

13 Memphis, Tennessee, and the following proceedings were had

14 to-wit:

15

16     THE COURT:  All right.  This is the matter of

17 Delchon Weatherspoon.  This is your motion?

18     MR. STANTON:  It is, Your Honor.

19     THE COURT:  All right.  You may proceed.

20     MR. STANTON:  Your Honor, at this time the only

21 evidence that the petitioner and defendant would like to

22 introduce first is a uniform affidavit of indigency signed by

23 the defendant but have previously shown that to the prosecutor.

24 If I could have that marked and admitted into evidence.

25     MS. FOWLER:  Judge, the State will stipulate that

1    he is indigent if he had the public defender on this and that

2    he can afford to pay a bond of no more than $500.

3            THE COURT:  Let's mark it Exhibit 1 to this

4    hearing.

5            (Exhibit No. 1 was marked and filed.)

6            THE COURT:  All right.

7            MR. STANTON:  And second, Your Honor, petitioner

8    would like to introduce a record of the General Sessions Court

9    file.  We were unable to obtain a certified copy of this and

10   went to the court clerk's office and they explained that

11   because it's somewhat in limbo between General Sessions Court

12   and Criminal Court that they cannot provide a certified copy

13   but they did retrieve it from the grand jury section and made a

14   copy of it and so I wanted to submit for the record the

15   documents that were in the General Sessions Court file.

16           THE COURT:  State?

17           MS. FOWLER:  And, Judge, I don't have a problem

18   entering that but I want to point out to the Court that that's

19   not the full file.  The initial affidavit of complaint was

20   amended to increase the charges to criminal attempt murder in

21   the first degree.  It documents much of the investigation and

22   so if we're entering the General Sessions file, then the State

23   wants to make sure that the amended affidavit of complaint is

24   included.

25           MR. STANTON:  Defense has no opposition then.

1          THE COURT:  Let's show that Exhibit 2 then.

2          MS. FOWLER:  Judge, as the Court reviews the --

3          THE COURT:  Hold on just a second.

4          MS. FOWLER:  Yes, sir.

5          THE COURT:  All right.  Go ahead.

6          MS. FOWLER:  Judge, I just wanted to point out as

7   the Court is reviewing the documents that Mr. Stanton is asking

8   the Court to be made an exhibit to this hearing, that the exact

9   same motion was filed and heard in General Sessions Court by

10  the judge that heard the proof in this matter and rejected.

11          MR. STANTON:  And, Your Honor --

12          THE COURT:  Let's mark this Exhibit 2.

13          (Exhibit No. 2 was marked and filed.)

14          THE COURT:  How do you respond to that?

15          MR. STANTON:  Well of course the defendant has a

16  right to review in the Criminal Court to review the bond that's

17  been set.  The General Sessions Court's judgment is not the

18  final say under the bail reform act.  He has a right to appeal.

19  In fact that's specifically noted in the petition for writ of

20  certiorari that the petition is presented under Tennessee Code

21  Annotated section 40-11-144(b), which again provides a method

22  for appeal of General Sessions Courts bond judgment.

23          THE COURT:  You may proceed.

24          MR. STANTON:  Thank you, Your Honor.  And last for

25  the purposes of the record, I would like the Shelby County

1   pretrial services investigation report marked and entered into

2   evidence.

3              THE COURT:  All right.  Mark the pretrial report

4   Exhibit 3.

5              MR. STANTON:  I believe the Court already has a

6   copy but I can provide this to the Court if -- yes, Your Honor,

7   in the jacket.  Thank you, Your Honor.

8              (Exhibit No. 3 was marked and filed.)

9              THE COURT:  All right.  You may proceed.

10             MR. STANTON:  Defense has no further proof at this

11  time.

12             MS. FOWLER:  Judge, the State has proof.  The State

13  will call Sergeant Cordero.  As Sergeant Cordero is coming in,

14  I wanted to inform the Court that the victim is present for

15  this and also she has a vested interest in the bond hearing and

16  she did not want the bond reduced at all.

17             MR. STANTON:  At this time, Your Honor, I would ask

18  for the Rule to be invoked.

19             THE COURT:  Okay.

20             MS. FOWLER:  I'm not going to call her unless the

21  Court wants me to.

22

23

24

25

1                        SERGEANT CORDERO

2  called as a witness, being first duly sworn, was examined and

3  testified as follows:

4                        DIRECT EXAMINATION

5  BY MS. FOWLER:

6     Q     Morning, Sergeant.  Will you state and spell your name,

7  please.

8     A     My name is Sergeant Daniel Cordero, C-O-R-D-E-R-O.

9     Q     Sergeant Cordero, how are you employed?

10    A     I work with the City of Memphis, Memphis Police

11 Department and I've been with the Domestic Violence Bureau.

12    Q     And in that capacity did you have an occasion to

13 investigate an offense that occurred on January 1, 2017,

14 involving Delchon Weatherspoon and a Victoria Kelly?

15    A     Yes, ma'am.

16    Q     And what was the nature of the case that you

17 investigated?

18    A     Mr. Weatherspoon was arrested for stabbing Ms. Kelly.

19    Q     And how many times did Mr. Weatherspoon stab Ms. Kelly

20 by his own admission?

21    A     By his admission 10 to 13 times.

22    Q     And did Mr. Weatherspoon by his own admission chase

23 Ms. Kelly down the street stabbing her over and over and over

24 again?

25    A     Yes, ma'am.

1    Q    And why did Mr. Weatherspoon do this?

2    A    In his statement he said that he wanted her to feel the

3    pain he was feeling in his heart.

4    Q    And prior to stabbing -- chasing Ms. Kelly out of her

5    own home and stabbing her repeatedly, what did

6    Mr. Weatherspoon do in the hours that led up to the attack on

7    Ms. Kelly in her own home?

8    A    They were in the home together.  She was there with her

9    child's father and they were celebrating New Years.  And at

10    some point he went up to his room --

11           MR. STANTON:  Objection, Your Honor.  It doesn't

12    appear that the witness is testifying from his own personal

13    knowledge.

14           MS. FOWLER:  Judge, reliable hearsay is permissible

15    in bond hearings and this is all about his investigation.

16           THE COURT:  Objection overruled.

17    Q    I'm sorry, Sergeant?

18    A    He went upstairs.  They were downstairs.  And while he

19    was upstairs, he appeared -- I can't say how he felt but he was

20    posting on Facebook.

21           THE COURT:  This is what he told you, right?

22           THE WITNESS:  No, sir.  This is what was in his

23    statement.  I didn't take his statement.  I reviewed his

24    statement.  Part of it is what he told me and what Ms. Kelly

25    told me when I took her statement.

1          THE COURT:  Go ahead.

2          MR. STANTON:  Objection, Your Honor.  At this time

3     with respect to the contents of the statement, if he was not

4     even present, there's no foundation that the evidence he's

5     testifying to is actually from --

6          THE COURT:  Who took the statement from the

7     defendant?

8          THE WITNESS:  Felony Response investigators took

9     the statement.

10          MS. FOWLER:  Judge, reliable hearsay is permissible

11     in bond hearings.  If that's the case, then I'm going to have

12     to get the Felony Response officer down here.  I brought the

13     case officer down here who reviewed the statement for the

14     purposes of his investigation and to further his investigation.

15          THE COURT:  Is the case officer available who took

16     the statement?

17          MS. FOWLER:  This is the case officer.

18          THE COURT:  I mean the one who took the statement.

19          MS. FOWLER:  Judge, I'll have to find out.  He is a

20     Felony Response officer.  I thought that in the interest of

21     efficiency, given that reliable hearsay is permissible in bond

22     hearings that --

23          THE COURT:  Do you think we have to have that

24     statement?

25          MS. FOWLER:  I think that given that Mr. Stanton is

1    asking for an ROR bond in this Class A felony that the

2    defendant admitted to, that he admitted to stabbing her 13

3    times and what Sergeant Cordero is going to say is that he was

4    weapon seeking prior to the attack, I think that it's necessary

5    for the Court to hear this and the severity of it in addition

6    to the strength of --

7         THE COURT:   I've heard the severity from him

8    already okay.

9         MS. FOWLER:   Yes, Judge.   I just want the State's

10   case and the premeditation, the strength of the State's case

11   given that this is a bond hearing and that's a factor to be

12   considered, that the Court is aware that the premeditation is

13   very clear in this case, in addition to chasing her down the

14   street and stabbing her, was actually weapon seeking prior to

15   the attack.   That's the extent I'm going to ask him if he met

16   with Ms. Kelly and viewed her injuries and that's the extent.

17        THE COURT:   Okay.   Go ahead and ask him that.

18   BY MS. FOWLER:

19   Q    And prior to the attack, did Mr. Weatherspoon advise he

20   was seeking weapons in order to kill Ms. Kelly and her child's

21   father?

22   A    Yes.

23        MR. STANTON:   I'd object again on the basis of

24   knowledge, Your Honor.

25        THE COURT:   Overruled.

1          MS. FOWLER:  And again, Judge, reliable hearsay is

2     permissible.

3     Q    Now were you aware of the status of the relationship

4     between Mr. Weatherspoon and Ms. Kelly at the time of the

5     attack?

6     A    They were boyfriend/girlfriend.

7     Q    Had they broken up?

8     A    It was on again, off again.

9          MR. STANTON:  Again, I'd object, Your Honor.  The

10    basis of knowledge has not been established.

11         MS. FOWLER:  Judge, that's fine.  I'll withdraw

12    that question.

13    Q    Did you also meet with Ms. Kelly during the course of

14    your investigation?

15    A    Yes, ma'am.

16    Q    And when you got to Ms. Kelly, where was she?

17    A    She was in Regional One medical hospital.

18    Q    And did you -- during the course of your investigation,

19    did you view any of Ms. Kelly's injuries?

20    A    Yes, I did.

21    Q    If I may, did you photograph them?

22    A    Yes, I did.

23         MS. FOWLER:  And if I may, I'll show these to the

24    defense and pass them to the witness.

25    Q    Sergeant Cordero, are you familiar with those photos?

1    A    Yes, ma'am.

2    Q    Can you tell the Court what those photos are?

3    A    It's photographs of Victoria Kelly.

4    Q    And is Victoria Kelly the victim in this matter?

5    A    Yes, ma'am.

6    Q    And she's the one that Delchon Weatherspoon stabbed at

7    least 10 to 13 times?

8    A    Yes, ma'am.

9    Q    Do those pictures document some of the injuries that Ms.

10   Kelly sustained as a result of the attack that

11   Mr. Weatherspoon induced on Ms. Kelly?

12   A    Yes, ma'am.

13   Q    And can you -- are those a true and accurate depiction

14   of what Ms. Kelly looked like when you met with her in the

15   hospital in the days after the attack?

16   A    Yes, ma'am.

17   Q    Can you tell the Court what those pictures are?

18   A    The first picture she's wearing a head bandage.  She has

19   blood on the side of her face.  And she says -- beneath the

20   bandage she's sustained a cut to her throat.

21   Q    And as a result of the cut to her throat, does she have

22   permanent paralysis in the left side of her face?

23   A    I don't know if it's permanent but she had paralysis the

24   day I spoke to her.

25                MR. STANTON:  Objection.

1              THE COURT:  Hold on, there's an objection.  What's

2      the objection?

3              MR. STANTON:  Well, Your Honor, I think he would be

4      testifying to a medical conclusion.

5              THE COURT:  I'm going to sustain that objection.

6              MS. FOWLER:  Well, Judge, I want to point out that

7      it's in the affidavit of complaint that Mr. Stanton asked to be

8      entered into evidence as part of his proof.

9              THE COURT:  Okay.  Well it's in evidence already

10     then.

11             MS. FOWLER:  Thank you, Judge.

12     BY MS. FOWLER:

13     Q     It does document her injuries?

14     A     Yes, ma'am.

15     Q     You weren't able to document all of her injuries due to

16     the extensive nature of them, were you?

17     A     She had injuries that were bandaged that I didn't ask

18     her to remove her bandage or her clothing to see injuries, but

19     she had injuries to her stomach area that I didn't observe.

20     Q     Did she have injuries to her throat?

21     A     Yes.

22     Q     And did you also in those pictures does that document

23     injuries to her hands?

24     A     Yes.

25     Q     And were those defensive wounds?

1      A      Based upon my experience --

2                  MR. STANTON:  Objection, Your Honor.

3                  THE COURT:  What's your objection?

4                  MR. STANTON:  Well the witness hadn't been

5      qualified to answer questions as to the nature of wounds and

6      how they are received.

7                  MS. FOWLER:  I'll qualify him, Judge.  He's been an

8      MPD officer for --

9                  THE COURT:  I don't think we need to go into that.

10     It's just a bond hearing, okay.

11                 MS. FOWLER:  Yes, Judge.  Judge, I'd ask these be

12     made an exhibit to the hearing, please.

13                 THE COURT:  Okay.  Photographs of victim collective

14     Exhibit 4.

15                   (Exhibit No. 4 was marked and filed.)

16                 THE COURT:  Any further questions?

17                 MS. FOWLER:  No, sir.

18                 THE COURT:  Cross-examination?

19                 MR. STANTON:  Yes, Your Honor.  Before

20     cross-examination begins, we would move for the Court to

21     require the testifying witness to turn over or the State to

22     turn over any prior statements relating to this case from the

23     testifying witness.

24           Although obviously Tennessee Rule of Criminal Procedure

25     26.2 may not apply in this hearing as it's pending indictment,

1    Your Honor, under Tennessee Code Annotated 40-17-120, the

2    Tennessee Code actually requires after a witness called by the

3    State or the defendant in a criminal case not a trial but in a

4    criminal case it says specifically has testified on direct

5    examination, the Court shall a motion order the State or

6    defense to produce any statement of a witness in the State's or

7    the defense's possession which relates to the subject matter as

8    to the witness that's testifying.

9            Your Honor, I was not previously aware that Mr. Cordero

10   was testifying so I did not have an opportunity to ask for any

11   prior statements prior to his testimony.

12           THE COURT:  What has he testified to that's

13   surprised you?

14           MR. STANTON:  I'm not suggesting that there's a

15   surprise, Your Honor.  It's simply that --

16           THE COURT:  Everything he testified to is already

17   in the documents you introduced.

18           MR. STANTON:  Yes, Your Honor.  I'm not suggesting

19   it's a surprise but again --

20           THE COURT:  I'm going to deny that request, okay.

21   You may proceed if you have some questions.

22           MR. STANTON:  All right.  Thank you, Your Honor.

23

24

25

1                         CROSS-EXAMINATION

2     BY MR. STANTON:

3         Q     Good morning, Officer Cordero.

4         A     Good morning, sir.

5         Q     So you met with Ms. Kelly on January 1st?

6         A     No, sir.

7         Q     What day did you meet with Ms. Kelly?

8         A     I think it was January 5th.

9         Q     So that was four days after the event occurred?

10        A     Yes, sir.

11        Q     And when she -- when you met with her, what were the

12   circumstances of that meeting?

13        A     She was still in the hospital recovering from her

14   injuries.  I called and spoke with her mother who said that she

15   thought she was well enough to speak so I went to the hospital,

16   located her, and documented her injuries and asked if she was

17   well enough to give me a statement and she did.

18        Q     And at that time was she under the influence of any

19   medication?

20        A     She was taking medication, but I asked her if she felt

21   clear headed and could give me a truthful statement and she

22   said that she did feel well enough to give a statement.

23                    MR. STANTON:  Your Honor, may I have a moment?

24                    THE COURT:  Sure.

25                    MR. STANTON:  I have no further questions.

1          THE COURT:  Thank you, sir.  You may step down.

2     Any further proof?

3          MS. FOWLER:  I do have one more witness, Judge, but

4     I will just tell the Court what that witness would testify to.

5     An investigator in my office on the day of the prelim did take

6     pictures to document all of Ms. Kelly's injuries.  There are

7     upwards of 20 stab wounds documented in these photos.  I don't

8     know if the Court wants to get into it.

9          Again, the purpose of this, Judge, is simply to show the

10    severity of the attack and --

11         THE COURT:  That's already been shown.

12         MS. FOWLER:  -- the risk to the community.  Yes,

13    Judge.  Then in that case I don't have any further proof.

14         THE COURT:  Okay.  Defense, do you have any proof?

15         MR. STANTON:  No rebuttal, Your Honor.

16         THE COURT:  Statements?

17         MR. STANTON:  Your Honor, if I could address the

18    argument in the petition, I think it would be fair to divide

19    the argument into two sections, first to address the relevant

20    sections in the bail reform act as it applies to

21    Mr. Weatherspoon and then subsequently to move on to discussing

22    the constitutional argument in the petition.

23         With respect to the bail reform act, Your Honor, the

24    pretrial services investigation reflects that the defendant

25    certainly has been in Shelby County for at least the last six

1   years working, employed here.  He does have family ties here,

2   both his mother and aunt are in Shelby County.

3        Your Honor, as far as the military service that was

4   referenced in the petition, of course as the Court is certainly

5   aware, getting records for that kind of thing can take some

6   time.  Have not been able to secure that for the purposes of

7   this hearing and although I am proceeding to do that.  But the

8   defendant has made certainly a good faith representation to me

9   that that is the case.

10       Moving on to the defendant's prior criminal record,

11  including prior releases on recognizance or bail, he has no

12  record, Your Honor.  This is the very first charge that he has

13  received.

14       And moving on to the nature of the offense and apparent

15  probability of conviction and likely sentence, well, Your

16  Honor, certainly the severity of the injuries I would

17  understand to the Court are certainly problematic, but I would

18  note to the Court that there is a defense, a potential defense

19  at least certainly for a lesser included, the possibility of

20  criminal attempt voluntary manslaughter or aggravated assault

21  given the circumstances of this as an intimate partner

22  relationship.  And Your Honor, the likelihood of adequate

23  provocation under those circumstances is increased.

24       Last, Your Honor, as far as other factors relating to

25  his ties to the community, he is a high school graduate.  And

1    so I do think that the factors under the bail reform act

2    actually do suggest the recognizance release is appropriate.

3    And certainly the bail reform act in subsection 115 suggests

4    that the Court should consider recognizance release first.  And

5    only after the Court has considered that recognizance release

6    is inappropriate directed I believe it's under section 117

7    should the Court consider reasonable bail conditions.

8         And last in subsection 118 should the Court look to what

9    is an appropriate bond to be set.  And of course under section

10   118 it does give the Court opportunity to set an unsecured bond

11   instead of a secured bond if the Court sees appropriate.

12        And with respect to subsection 118 as far as the

13   defendant's financial condition and circumstances, the State

14   has stipulated that the maximum bond that the defendant

15   petitioner can afford is $500.  I do think that that's highly

16   relevant in this case and I'll address that more in the

17   constitutional argument.

18        But with respect to the danger to the community, and I

19   do expect that the State's argument will largely be about the

20   danger to the community if Mr. Weatherspoon is released.  Under

21   subsection 118 of the bail reform act specifically notes that

22   the danger to the community should be considered with respect

23   to the defendant's prior record, does not direct the Court to

24   consider danger to the community with respect to the current

25   charge.

1     Mr. Weatherspoon is of course constitutionally presumed

2   innocent in this matter and as a result would argue that it's

3   inappropriate for the Court to consider danger to the community

4   with respect to simply charges for which he is presumed

5   innocent.

6     Next, Your Honor, to move on to the constitutional

7   argument, there is a fundamental problem with the bail as it's

8   currently set.  It's set at $200,000 for Mr. Weatherspoon.  And

9   the fundamental problem is this.  He is in jail solely because

10   he is impoverished.  A wealthy man in his position would be

11   free, would be out of custody pending trial.

12     And so to the extent that the Court and the General

13   Sessions Court judge had set a bond which Mr. Weatherspoon is

14   completely unable to afford or meet, then he is discriminated

15   against or his liberty is taken away solely because of his

16   economic status.  And, Your Honor, a line of cases going back

17   decades shows this to be constitutionally impermissible.

18     Going back to Gideon v. Wainright, obviously the Supreme

19   Court held that an indigent defendant can't be discriminated

20   against in terms of not having counsel.

21     And I think two of the most relevant cases are Williams

22   v. Illinois and Bearden V. Georgia.  In Williams v. Illinois

23   the Supreme Court held again that a person's liberty actually

24   cannot be taken away solely because of economic status.

25     And Williams is outlined in the petition.  The defendant

1    in that case had his liberty taken away because he was unable

2    to pay a fine.

3        The Illinois criminal code at the time provided that a

4    person who could not pay their fine could instead be held in

5    jail longer to work off the fine.  The Supreme Court said

6    that's illegal, it's impermissible.

7        In Bearden v. Georgia the Supreme Court held that a

8    defendant cannot have their probation violated solely because

9    they cannot pay a fine as long as they're making good faith

10    efforts to pay that fine.

11        So the Supreme Court has held again in additional cases

12    noted in the petition on multiple occasions that an indigent

13    defendant cannot be discriminated against on the basis of their

14    economic status.

15        As a result, I think the appropriate way to read the

16    bail reform act so that it does not run afoul of these

17    constitutional mandates from the United States Supreme Court is

18    to read the provisions related to the defendant's economic

19    status as requiring the Court essentially to set reasonable

20    bail conditions in light of the defendant's economic status and

21    then to set a money bail that either the defendant can afford

22    the secured money bail or an unsecured bond because again, it

23    is fundamentally unfair, a violation of Mr. Weatherspoon's

24    equal protection rights to deprive him of his liberty solely

25    because he is poor.

```
 1                    THE COURT:  State.

 2                    MS. FOWLER:  Judge, I'll do this in reverse.  I'll

 3        address the constitutional argument first.  He is not being

 4        deprived of his liberty solely because he's poor.  He's being

 5        deprived of his liberty because a judge in General Sessions

 6        Court found by a preponderance of the evidence that and found

 7        probable cause that Mr. Weatherspoon stabbed Victoria Kelly

 8        upwards of 20 times and was trying to kill her.  He caused her

 9        serious bodily injury.  She has paralysis to the left side of

10        her face.  She has injuries documented in the photos that she

11        has cut marks on her neck.

12            He committed -- by probable cause he committed a

13        criminal attempt murder in the first degree and this woman will

14        be permanently disfigured.  And so he's not -- his liberty is

15        not being -- he's not being confined because he's poor.  He's

16        being confined because he committed a crime, and I think that

17        should be clear.

18            I also think it should be clear that the two cases that

19        Mr. Stanton is relying on, these are cases that involve

20        punishment after conviction that were fine-only crimes.  That's

21        not the case here.  The punishment in this case is 15 years to

22        25 years at 85 percent.  The likelihood of conviction in this

23        case is extremely high.

24            Mr. Weatherspoon gave a full statement of admission that

25        lays out not only his premeditation, in that he was weapon
```

1    seeking prior to the event, but then he broke into her room, he

2    chased her down the street, and he stabbed her 20 times.   And

3    there were witnesses to this crime.

4         Ms. Kelly picked him out in General Sessions Court and

5    the likelihood of conviction in this case is very high.

6    Therefore, Judge, and given the severity of the case, the

7    State's position is that the bail is set too low.   We're not

8    going to ask the Court to raise it but that's the State's

9    position.

10        This man armed himself with a knife because he was mad

11   and he stabbed this woman 20 times.   He chased her down the

12   street.   He chased her out of her own home because he was mad,

13   because he wanted her to feel the pain he felt.

14        As to the release into the community, the safety of the

15   community.   Judge, he doesn't have any prior record but how do

16   we know when he's going to attack someone again and stab them

17   20 times because he's mad?   And we only have his criminal

18   history in Tennessee.   We don't know what his criminal history

19   in the military is.

20        And simply based on the proof and the likelihood of

21   conviction at trial given his statement of admission and

22   Ms. Kelly's identification in addition to the witnesses, the

23   State believes the likelihood of conviction is very high.   The

24   constitutional implications he has a bail.   He can make it.

25   But she is afraid of him.   She believes that this bail is not

1    set high enough.

2         And the only way that she can feel safe is if he remains

3    in custody.  And a General Sessions judge that heard the proof

4    rejected both of these arguments that Mr. Stanton made, and

5    this is forum shopping at its basis.  And that's the State's

6    argument and that's what we're relying on.

7         THE COURT:  Do you have anything further?

8         MR. STANTON:  Just to respond briefly to a couple

9    of the State's arguments.  First with respect to the forum

10   shopping argument.  I don't think it's forum shopping to appeal

11   a lower court decision.

12        Second, again, the State's focus on the danger of the

13   community.  I'd again note that the bail reform act

14   specifically directs the Court to look at the defendant's prior

15   record and not to assume that the defendant is dangerous solely

16   because of the nature of the allegations for which he is

17   constitutionally presumed innocent.

18        And last to address the State's focus on Bearden and

19   Williams as cases that were about punishment and not about

20   liberty.  Again, I think that that misses the import of those

21   cases, which is that in Bearden it stated clearly which is in

22   the petition that discrimination against a poor person in a

23   criminal case is illegal.

24        And I think that there are some -- there have been some

25   cases to look at this and actually extended those rulings to

1    the kind of argument that I'm making today, Your Honor.  So

2    there's a line of cases in district courts, mostly declaratory

3    judgments, preliminary injunctions, temporary restraining

4    orders, holding that setting a bond without proper

5    consideration of a defendant's financial ability to pay is

6    simply unconstitutional.

7        The Fifth Circuit looked at this in Pugh v. Rainwater

8    which is again cited in the petition.  Well that was a two-step

9    case, Your Honor.  It's the only circuit that's actually had an

10   opportunity to look at this issue and the initial panel,

11   three-judge panel that considered it held essentially that

12   there's a mandate of strict scrutiny by any court looking at a

13   bond being set that deprives somebody of their liberty based on

14   their economic status.

15       That was later vacated on other grounds, but I would

16   note that that is the only court of appeal to actually consider

17   this and I do think it's persuasive guidance to the Court in

18   terms of how it should be analyzing the problem.

19       Again, Mr. Weatherspoon is in custody not because he has

20   been -- simply because he has been accused with a crime but

21   because he is too poor to pay the bond that the Court set in

22   General Sessions.

23       For that reason I would ask the Court to set a

24   reasonable bond that he can afford, release him on his own

25   recognizance or to set an unsecured bond.  Thank you,

Your Honor.

THE COURT:  Okay.  I have considered the factors outlined in TCA 40-11-118 which include the defendant's length of residency in this community.  I've considered his employment status, family ties, his lack of prior criminal record.

I've considered the nature of the offense and the apparent probability of the conviction and the likely sentence. The nature of the offense is a very violent offense.  The apparently probability of conviction apparently is great and if he is convicted of murder first -- criminal attempt murder first, he's looking at serving 15 to 60 years in the State Penitentiary, a very significant sentence.

In light of the serious nature of this offense, the injuries to the victim, I think the bond that's set is appropriate $200,000.  He's not being incarcerated because he's poor.  He's being incarcerated because the community has to be protected from any potential violence such as this.

So your motion to reduce the bond is denied.

MS. FOWLER:  Thank you, Judge.

THE COURT:  All right.  Step out, sir.


(END OF PROCEEDINGS HEARD IN THIS CAUSE ON
WEDNESDAY, MARCH 22, 2017.)

CERTIFICATE

STATE OF TENNESSEE   )
                     )
COUNTY OF SHELBY     )


        I, the undersigned, **Katherine Knowles**, Court
Reporter for the Thirtieth Judicial District of the State of
Tennessee, do hereby certify that the foregoing to be true,
accurate and complete transcript to the best of my knowledge,
understanding and ability of all the evidence that was heard in
this cause in Division 2 of the Criminal Court for Shelby
County, Tennessee, before the Honorable Glenn Wright, Presiding
Judge, on the 22nd day of March, 2017.

        I do further certify that I am neither of kin,
counsel nor interest to any party hereto.

        Dated this 27th day of March, 2017.




COPY
_____
Katherine Knowles
Court Reporter, LCR #126