IN THE SUPREME COURT OF TENNESSEE
AT JACKSON

| | |
|---|---|
| STATE OF TENNESSEE,<br><br>               Prosecution,<br><br>v.<br><br>DELCHON WEATHERSPOON,<br><br>               Defendant. | TENN. CT. CRIM. APP.<br>No. W2017-00779-CCA-R8-CO<br><br>SHELBY COUNTY CRIMINAL<br>No. P-43279 |

## MOTION FOR RECONSIDERATION OF FINANCIAL CONDITIONS OF RELEASE

*JOSHUA STANTON*
Assistant Shelby County
Public Defender
201 Poplar Ave., Suite 2-01
Memphis, TN 38103
(901) 610-1441
B.P.R. No. 34593

*ORAL ARGUMENT REQUESTED*

*OF COUNSEL*
*STEPHEN C. BUSH*
*SHELBY COUNTY PUBLIC DEFENDER*

IN THE SUPREME COURT OF TENNESSEE
AT JACKSON

| | |
|---|---|
| STATE OF TENNESSEE, | TENN. CT. CRIM. APP. |
| Prosecution, | No. W2017-00779-CCA-R8-CO |
| v. | SHELBY COUNTY CRIMINAL |
| | No. P-43279 |
| DELCHON WEATHERSPOON, | |
| Defendant. | |

## MOTION FOR RECONSIDERATION OF FINANCIAL CONDITIONS OF RELEASE

There is only one reason Mr. Delchon Weatherspoon is in jail today: he is too poor to pay for his release. Accordingly, comes now Mr. Weatherspoon, by and through his attorney of record, Joshua Stanton, Assistant Public Defender, pursuant to Rule 8 of the Tennessee Rules of Appellate Procedure, T.C.A. § 40-11-101 *et seq.*, article I, §§ 8, 15, and 16 of the Tennessee Constitution, and the Eighth and Fourteenth Amendments to the United States Constitution, and moves this honorable Court either: (1) to remand this matter to the trial Court to implement a constitutionally sound bail process; or (2) to reduce Mr. Weatherspoon's monetary bail to an amount that the Court finds he can actually afford, to set an unsecured bail amount, or to release Mr. Weatherspoon with appropriate non-financial conditions.

## I.    PROCEDURAL HISTORY

On January 1, 2017, Mr. Weatherspoon was arrested and charged with attempted first degree murder. He was ordered released pursuant to a secured financial condition of release in the amount of $200,000. A preliminary hearing was held on February 24, 2017, and Mr. Weatherspoon was held to the state as charged. The General Sessions Court judge then denied a Defense motion to reduce bail.

1

Mr. Weatherspoon filed a Petition for Writ of Certiorari, presented under T.C.A. § 40-11-144(b), in the Shelby County Criminal Court on February 27, 2017.  A hearing was held on the Petition on March 22, 2017, in Division 2 of the Shelby County Criminal Court.  The Criminal Court judge made an oral ruling at the hearing denying the Petition, stating that Mr. Weatherspoon was being intentionally detained prior to trial because of concerns of public safety.  The court stated that Mr. Weatherspoon is "not being incarcerated because he's poor. He's being incarcerated because the community has to be protected from any potential violence such as this." (Tr. 27:15–25:17.)  The judge issued a written order denying the Petition on April 3, 2017.

On April 19, 2017, Mr. Weatherspoon filed a Rule 8 Motion with the Tennessee Court of Criminal Appeals, arguing that the bail set in this matter is unconstitutional on both Due Process and Equal Protection grounds.  The State filed a Response on April 25, 2017.  The Court of Criminal Appeals issued an Order denying the Motion on May 11, 2017.  That Order failed to address the Defendant's constitutional arguments, and merely held that the trial Court "did not abuse its discretion in denying the petition for writ of certiorari." *State v. Weatherspoon*, No. W2017-00779-CCA-R8-CO, at *3 (Tenn. Ct. Crim. App. May 11, 2017).

## II.   FACTS

Mr. Weatherspoon graduated from Hamilton High School in Memphis in 2007 and has lived in Shelby County his entire adult life. (Pretrial Rpt. 1.)  His family also lives in Shelby County. (*See* Pretrial Rpt. 1.)  He has been employed in Shelby County for his entire adult life. (*See* Pretrial Rpt. 1.)  Mr. Weatherspoon has never missed court before. (Pretrial Rpt. 2.) Indeed, he has never even been charged with a criminal offense before his arrest in this case. (Pretrial Rpt. 2.)  There was no suggestion, argument, or proof below that Mr. Weatherspoon is a

risk of flight.  Finally, Mr. Weatherspoon cannot pay a secured bond set higher than $500.

(Tr. 4:25–5:2 (statement of prosecutor stipulating that Mr. Weatherspoon "is indigent if he had

the public defender on this and that he can afford to pay a bond of no more than $500"); Pretrial

Rpt. 2.)

## III.  ARGUMENT

The factors outlined in T.C.A. §§ 40-11-115 and 40-11-118 strongly weigh in favor of

either a nominal monetary bond that Mr. Weatherspoon's family can likely assist with paying,

or, in the alternative, an unsecured bond or recognizance release with appropriate non-financial

conditions of release.

The more serious problem with the money bail ordered issued in this case, however, is

that it constitutes a flagrant violation of both the Tennessee and United States Constitutions.

First, the only appropriate purpose of financial conditions of release in Tennessee is to

reasonably assure the appearance of the accused.  The trial court, however, intentionally imposed

a financial condition of release for the *purpose of detaining* Mr. Weatherspoon for purported

*public safety reasons*, and the trial court did this without any of the procedures that the Supreme

Court has long required for the imposition of an order of pretrial detention.

The irony of the trial court's order is that, even if it believed Mr. Weatherspoon to be a

threat to public safety, its order would have allowed for his immediate release if he were rich.

The State and federal Constitutions forbid what the trial court did, even though the trial court's

de facto detention order is likely so widespread a practice that its obvious unconstitutionality is

obscured by its general acceptance in this State's trial courts.

As explained in more detail below, there are two reasons that the current money bail

order violates Mr. Weatherspoon's constitutional rights: first, the money bail set in this case

denies Mr. Weatherspoon his right to pretrial release; second, the current bail impermissibly discriminates against Mr. Weatherspoon based on his poverty.

**A.     The Money Bail Set in This Case Denies Mr. Weatherspoon His Right to Pretrial Release**

Under Article 1, § 15 of the Tennessee State Constitution, "[A]ll prisoners shall be bailable by sufficient sureties, unless for capital offences, when the proof is evident, or the presumption great." This Court has previously explained that "[t]his constitutional provision grants a defendant the right to pretrial release on bail pending adjudication of criminal charges." *State v. Burgins*, 464 S.W.3d 298, 304 (Tenn. 2015). The *Burgins* Court further remarked that "the right to pretrial bail has traditionally been a 'fundamental constitutional right.'" *Id.* at 305 (quoting Matthew J. Hegreness, *America's Fundamental and Vanishing Right to Bail*, 55 Ariz. L. Rev. 909, 916–17 (2013)). According to the *Burgins* Court, the right is rooted in two principles of the American justice system: first, "'that a person accused of [a] crime shall not, until . . . finally adjudged guilty in the court of last resort, be absolutely compelled to undergo imprisonment or punishment.'" *Burgins*, 464 S.W.3d at 303 (quoting *Hudson v. Parker*, 156 U.S. 277, 285 (1895)) (alterations in original); and, second, that "[p]retrial release on bail 'permits the unhampered preparation of a defense[ ] and serves to prevent the infliction of punishment prior to conviction.'" *Id.* (quoting *Stack v. Boyle*, 342 U.S. 1, 4 (1951)).

The Court's wording in *Burgins* is key to understanding the nature of the right to bail in Tennessee. The *Burgins* Court specifically highlighted that Article 1, § 15 "grants a defendant *the right to pretrial release on bail* . . . ." 464 S.W.3d at 304 (emphasis added). The import of this phrasing is that the Tennessee Constitution's reference to the right to be "bailable by sufficient sureties" amounts to a "right to pretrial release."

Federal law protects the same right to pretrial liberty.  In *United States v. Salerno*, 481 U.S. 739, 750 (1987), the United States Supreme Court held that pretrial liberty is a "fundamental" right that cannot be infringed unless certain rigorous procedures are followed for the issuance of a valid order of pretrial detention.  Those procedures include counsel, specific heightened legal standards concerning any danger to the community, an adversarial hearing, and an inquiry into and findings concerning whether there are any less restrictive conditions of release that could adequately protect against any specific danger posed. *See id.* at 751–52, 755.

A secured money bail amount set higher than a defendant can pay denies him his right to pretrial release just as much as no bail having been set at all.  *E.g.*, *United States v. Mantecon-Zayas*, 949 F.2d 548, 550 (1st Cir. 1991) ("[O]nce a court finds itself in this situation—insisting on terms in a 'release' order that will cause the defendant to be detained pending trial—it must satisfy the procedural requirements for a valid detention order"); *United States v. Leathers*, 412 F.2d 169, 171 (D.C. Cir. 1969) ("[T]he setting of bond unreachable because of its amount would be tantamount to setting no conditions at all."); *ODonnell v. Harris Cty., Texas*, No. 4:16-cv-01414, 2017 WL 1735456, at *72 (S.D. Tex. Apr. 28, 2017) (holding that secured money bail set in amount that an arrestee cannot afford is constitutionally equivalent to an order of detention). The United States Supreme Court has repeatedly acknowledged that conditioning a fundamental right on the payment of money that a person does not possess effects a legal denial of the right. *E.g.*, *Powell v. Alabama*, 287 U.S. 45, 73 (1932) (holding that the right to counsel is denied when counsel is not appointed to an indigent defendant); *Griffin v. Illinois*, 351 U.S. 12, 19–20 (1956) (plurality opinion) (recognizing that conditioning the right to appeal on the ability to purchase a transcript denied an indigent defendant the right to appeal); *id.* at 20–24 (Frankfurter, J., concurring in the judgment) (same); *Bandy v. United States*, 81 S. Ct. 197, 197–98 (1960)

5

(Douglas, J., in chambers) ("To continue to demand a substantial bond which the defendant is unable to secure raises considerable problems for the equal administration of the law. . . . Can an indigent be denied freedom, where a wealthy man would not, because he does not happen to have enough property to pledge for his freedom?"); *Boddie v. Connecticut*, 401 U.S. 371, 380 (1971) (holding that Connecticut's mandatory fees to initiate divorce proceedings in court, "the sole means in Connecticut for obtaining a divorce, must be regarded as the equivalent of denying [those without the money to pay such court fees] an opportunity to be heard upon their claimed right to a dissolution of their marriages").

In *State v. Brown*, 338 P.3d 1276 (N.M. 2014), the Supreme Court of New Mexico held that a state trial court violated the New Mexico Constitution—the requirements of which are similar to the federal Constitution's—by setting a secured money bail amount of $250,000 for a defendant charged with first degree felony murder. *Id.* at 1292. "[T]he New Mexico Constitution. . . [does not] permit a judge to set high bail for the purpose of preventing a defendant's pretrial release." *Id.* In *Brown*, as in this case, the trial court set a high secured money bail amount without finding that the defendant was likely to flee or to be a danger to the community—the trial court simply based the bond amount on the seriousness of the alleged offense. *Id.* The New Mexico Supreme Court ruled that it is illegal and unconstitutional to detain a defendant using unaffordable secured money bail solely based on the alleged offense. The trial court in this case did just that, and, therefore, this Court should remand this case to the trial court with instructions to release Mr. Weatherspoon on the least restrictive available conditions of release.

"Law addresses itself to actualities." *Griffin*, 351 U.S. at 23 (Frankfurter, J., concurring in the judgment). When a court sets bail at a dollar value higher than a defendant can afford, the

court denies a defendant his right to pretrial release.  Bond has been set in this case well above

the $500 that Mr. Weatherspoon is actually able to afford.  As a result, he has been denied his

right to pretrial release under Article I, § 15 of the Tennessee Constitution, and to due process

under the Fourteenth Amendment to the United States Constitution.

**B.      The Order of Release (But Only If He Can Pay $200,000) Discriminates
Against Mr. Weatherspoon Based on His Poverty**

Denial of a fundamental right on the basis of poverty violates a defendant's right to equal

protection of the laws under both the Tennessee and United States Constitutions.  *See, e.g.*,

*Gideon v. Wainwright*, 372 U.S. 335 (1963); *Griffin v. Illinois*, 351 U.S. 12 (1956); *Williams v.

Illinois*, 399 U.S. 235 (1970); *Tate v. Short*, 401 U.S. 395 (1971).  A fundamental right cannot be

denied on the basis of poverty alone.  *Gideon v. Wainwright* held that the right to counsel cannot

be denied on the basis of poverty.  372 U.S. 335 (1963).  The Supreme Court in *Griffin* held that

the right to appeal, once granted, cannot be denied on the basis of poverty.  351 U.S. at 17–18

(plurality opinion) ("In criminal trials a State can no more discriminate on account of poverty

than on account of religion, race, or color."); *id.* at 24 (Frankfurter, J., concurring in the

judgment) ("The State is not free to produce such a squalid discrimination.").  Perhaps most

analogous to the case at hand is *Williams v. Illinois*, 399 U.S. 235 (1970).

The Petitioner in *Williams* was sentenced by an Illinois court to one year of

imprisonment, a $500 fine, and taxed $5 in court costs.  *Id.* at 236.  The court judgment directed,

pursuant to then-existing Illinois law, "that if appellant was in default of the payment of the fine

and court costs at the expiration of the one year sentence, he should remain in jail pursuant to

§ 1—7(k) of the Illinois Criminal Code to 'work off' the monetary obligations at the rate of $5

per day."  *Id.*  The Supreme Court noted that "the Illinois statute in operative effect expose[d]

only indigents to the risk of imprisonment beyond the statutory maximum."  *Id.* at 242.

Accordingly, the Supreme Court held that imprisonment on the basis of "economic status" in such a case violates the Equal Protection Clause. *Id.* at 244; *see also Tate v. Short*, 401 U.S. 395, 397–98 (1971) ("Although the instant case involves offenses punishable by fines only, petitioner's imprisonment for nonpayment constitutes precisely the same unconstitutional discrimination since, like Williams, petitioner was subjected to imprisonment solely because of his indigency."); *Bearden v. Georgia*, 461 U.S. 660, 671 (1983) (holding that the Equal Protection Clause of the Fourteenth Amendment generally prohibits "punishing a person for his poverty").

The import of *Williams* is that a person cannot be held in jail solely because of his poverty. Surely, if a state violates the Equal Protection Clause by jailing someone because of his poverty after conviction, the Equal Protection Clause is similarly violated when a pretrial defendant is held in custody only because he is poor.

A ruling by this Court finding a constitutional violation in Mr. Weatherspoon's continued incarceration would be far from an outlier. Numerous courts are in accord. *See, e.g.*, *ODonnell*, 2017 WL 1735456, at *88 ("Jailing the indigent by setting secured money bail that they cannot pay makes an end run around a Texas-created liberty interest without providing due process."); *Thompson v. Moss Point, Mississippi*, 1:15-cv-00182-LG-RHW, 2015 WL 10322003, at *1 (S.D. Miss. Nov. 6, 2015) (issuing Declaratory Judgment) ("No person may, consistent with the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, be held in custody after an arrest because the person is too poor to post a monetary bond."); *Pierce v. City of Velda City*, 4-15-cv-570-HEA, 2015 WL 10013006, at *1 (E.D. Mo. June 3, 2015) (issuing Declaratory Judgment) (same); *Cooper v. City of Dothan*, 1:15-cv-425-WKW, 2015 WL 10013003, at *1 (M.D. Ala. June 18, 2015); *see also State v. Blake*, 642 So. 2d 959, 968 (Ala.

8

1994) (recognizing the unconstitutionality and irrationality of a bail scheme that allows "a defendant with financial means who is charged with a noncapital violent felony, and who may potentially pose a great threat to community safety," to "obtain immediate release simply by posting bail," while forcing an "indigent defendant . . . [to] remain incarcerated").

Mr. Weatherspoon today remains locked in a jail cell solely because of his poverty. As has been repeatedly held, such invidious discrimination violates Mr. Weatherspoon's rights enshrined in the Equal Protection Clause of the Fourteenth Amendment, as well as both article I, §§ 8, 15, and 16 of the Tennessee Constitution. Mr. Weatherspoon is therefore entitled to have this Court remedy this constitutional wrong. *See Angel v. Bullington*, 330 U.S. 183, 209 (1947) ("[A] right without a remedy is no right at all . . . .").

Under the federal Constitution, a trial court may enter an order of pretrial detention, but only if it complies with the robust procedures upheld in *Salerno*. The trial court here did not, and its intentional use of money to accomplish the same result does not obviate the procedures required by due process. *Brown*, 338 P.3d at 1292.

### C.     The Appropriate Remedy for the Court

When the deprivation of a fundamental right is concerned, courts must ensure that the any deprivation is narrowly tailored to serve a compelling government interest. *Skinner v. State of Okl. ex rel. Williamson*, 316 U.S. 535, 541 (1942) (holding that deprivation of a "basic liberty" mandates strict scrutiny); *ODonnell*, 2017 WL 1735456, at *64 ("Under *Williams*, *Tate*, and *Bearden*, an absolute deprivation of liberty based on wealth creates a suspect classification deserving of heightened scrutiny."); *see also Pugh v. Rainwater*, 557 F.2d 1189, 1195 (5th Cir.

1977)[1] (applying strict scrutiny to an Equal Protection challenge to pretrial detention), *vacated as moot on reh'g en banc*, 572 F.2d 1053 (5th Cir. 1978) (vacated due to Florida issuing a new bail policy while the case was under consideration). In order to justify its conduct, the State must therefore show that its response is narrowly tailored to a compelling governmental interest. That requires the State to demonstrate that the setting of money bail is "the least restrictive means among available, effective alternatives." *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004). Consequently, the Court must consider whether there exists a less restrictive, effective, available alternative to the money bail set in this case. Here, the trial court did not even consider available non-financial conditions of release to mitigate any purported but unarticulated danger.

### 1. Other Jurisdictions Demonstrate the Existence of Less Restrictive, Effective Alternatives to a High Money Bail

Other jurisdictions have enacted less restrictive bail laws that should guide this Court's analysis. Several jurisdictions, including the federal system, the District of Columbia, Maryland, and New Mexico, have generally outlawed the setting of financial conditions that result in the pretrial detention of defendant. 18 U.S.C. § 3142(c)(2) ("The judicial officer may not impose a financial condition that results in the pretrial detention of the person."); D.C. Code Ann. § 23-1321; N.M. Const. art. II, § 13 ("A person who is not detainable on grounds of dangerousness nor a flight risk in the absence of bond and is otherwise eligible for bail shall not be detained solely because of financial inability to post a money or property bond."); 2017 MARYLAND COURT ORDER 0001 (C.O. 0001) (effective July 1, 2017) ("A judicial officer may not impose a special condition of release with financial terms in form or amount that results in the pretrial

---

[1] The *Rainwater* panel decision appears to be the only Circuit Court of Appeals case that has considered the appropriate level of scrutiny that applies in a challenge such as this. Similarly, Defense counsel has not discovered any state supreme court decisions that have addressed the question.

detention of the defendant solely because the defendant is financially incapable of meeting that condition.").

Most of these jurisdictions, however, provide a mechanism for preventive detention under certain circumstances without regard to the defendant's economic status. In the federal system, a defendant may be detained pretrial if a judicial officer finds either: (1) by a preponderance of the evidence "that the defendant presents a risk of flight, and, if it finds such a risk, that no conditions could reasonably assure the defendant's presence at trial," *United States v. Jackson*, 823 F.2d 4, 5 (2d Cir. 1987); or (2) by clear and convincing evidence "that no condition or combination of conditions will reasonably assure the safety of any other person and the community," 18 U.S.C. § 3142(f)(2)(B). Similar preventive detention provisions exist in the District of Columbia, New Jersey, and New Mexico. D.C. Code Ann. § 23-1322(b)(2) (requiring a finding by clear and convincing evidence of either flight risk or danger to the community to order preventive detention); N.J. Stat. Ann. § 2A:162-18 (same); *State v. Robinson*, No. 078900, 2017 WL 1908548, at *14 (N.J. May 10, 2017) (requiring limited discovery at preventive detention hearings); N.M. Const. art. II, § 13 (same as the federal rule). Maryland is notable in that its newly promulgated Court Order does not appear to provide any mechanism for preventive detention. *See* 2017 MARYLAND COURT ORDER 0001 (C.O. 0001) (effective July 1, 2017).

The Tennessee legislature has chosen not to make preventive detention available for prosecutions in this State. The trial court attempted to evade that reality by intentionally issuing an order of *release* that the court knew would detain Mr. Weatherspoon. Even if this Court were to determine that were legal under Tennessee law as a matter of substance, this Court would still

11

require the procedural protections set forth in *Salerno* before a trial court could implement such an order of detention.

### 2.   A Narrowly Tailored Bail Process Must Be Implemented in This Case

The procedural safeguards used by the other jurisdictions result in a less restrictive form of pretrial detention than has been imposed on Mr. Weatherspoon in his current case: safeguards that prevent detention on the basis of financial condition, safeguards to prevent unnecessary detention in the absence of evidence of either danger to the community or of flight risk, and safeguards to prevent unnecessary delay when detention is required. Such safeguards must be implemented in this case in order to meet the requirements of narrow tailoring. Accordingly, the Court should remand this case to the trial court with the following instructions: (1) that a hearing be held to determine, by clear and convincing evidence, whether Mr. Weatherspoon is either a flight risk or poses an untenable danger to the community, after adequate evaluation of non-financial conditions of release, including GPS monitoring and pretrial supervision; (2) that limited discovery be provided prior to such a hearing consistent with the New Jersey Supreme Court's recent ruling in *Robinson*, 2017 WL 1908548, at *14; and (3) that reasonable time limits be implemented for indictment and trial if the trial Court determines that detention is necessary.[2]

In the alternative, the constitutional problem would also be remedied if the Court were to set monetary bail at an amount that the court finds, based on the record, Mr. Weatherspoon can

---

[2] In the event that a defendant is detained pretrial, many jurisdictions provide for accelerated prosecutions in order to decrease the impact of the "infliction of punishment prior to conviction," *Stack*, 342 U.S. at 4. For example, in the District of Columbia, a detained defendant must be indicted within 90 days, and tried within another 100 days. D.C. Code Ann. § 23-1322(b)(2). In New Jersey, a defendant detained "due to the inability to post monetary bail" must be indicted within 90 days, and tried within 180 days after indictment. N.J. Stat. Ann. § 2A:162-22. In Texas, a defendant may not be detained for longer than 90 days on a felony charge unless he or she has been indicted, and the prosecution has made a prima facie showing that they are "ready for trial." Tex. Crim. Proc. Code Ann. art. 17.151; Dixon v. State, 866 S.W.2d 115, 116 (Tex. App. 1993). For less serious offenses, Texas provides for less time for the prosecution to indict and show themselves ready for trial: 30 days on misdemeanors punishable by more than 180 days; 15 days on misdemeanors punishable by 180 days or less; and 5 days on misdemeanors punishable by fine only. Tex. Crim. Proc. Code Ann. art. 17.151.

12

actually afford, to set an unsecured bail amount, or to release Mr. Weatherspoon on his own recognizance.  To the extent the Court is concerned with ensuring Mr. Weatherspoon's continued appearance and protecting the community, the Court is, of course, free to impose reasonable bail conditions.  Those bail conditions may not, however, impose financial burdens on Mr. Weatherspoon that he cannot meet.

## IV.  CONCLUSION

"Criminal defendants, presumed innocent, must not be confined in jail merely because they are poor." *Jones v. The City of Clanton*, No. 2:15-cv-34-MHT, 2015 WL 5387219, at *3 (M.D. Ala. Sept. 14, 2015).  "Justice that is blind to poverty and indiscriminately forces defendants to pay for their physical liberty is no justice at all." *Id.*  Mr. Weatherspoon requests that this Court immediately either: (1) remand this matter to the trial Court to implement a narrowly tailored bail process; or (2) reduce Mr. Weatherspoon's bail to an amount that the Court finds he can actually afford, set an unsecured bail amount, or release Mr. Weatherspoon on his own recognizance.

Respectfully submitted,

Joshua Stanton
Assistant Public Defender
201 Poplar Avenue, Suite 2-01
Memphis, Tennessee  38103
(901) 610-1441
B.P.R. No. 34593

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion has been mailed, postage prepaid, to the Office of the Tennessee Attorney General, P.O Box 20207, Nashville, TN 37202, and delivered by hand to the office of the Shelby County District Attorney General, this the 25th day of May 2017.

Joshua Stanton

FILED
05/11/2017
Clerk of the
Appellate Courts

## IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON

### STATE OF TENNESSEE v. DELCHON WEATHERSPOON

**Criminal Court for Shelby County**
**No. P-43279**

---

**No. W2017-00779-CCA-R8-CO**

---

### ORDER

This matter is before the Court upon the Defendant's motion for reduction of pretrial bail. *See* Tenn. R. App. 8; T.C.A. §40-11-144. The Defendant contends that the present bond amount of $200,000 violates his constitutional rights and should be reduced. The State has filed a response to the motion of the Defendant.

The Defendant is charged with Attempted First Degree Murder as a result of an incident in which the Defendant allegedly stabbed the victim multiple times. The General Sessions Court set the $200,000 bond amount. After a preliminary hearing in which probable cause was found to bind the Defendant over to the Grand Jury, the Defendant requested a reduction in the $200,000 bond. The General Sessions Court denied the request and the Defendant pursued a Petition for Writ of Certiorari to the Criminal Court. Following a hearing at the Criminal Court, the Criminal Court entered an Order denying the petition for writ of certiorari finding that the bond in the amount of $200,000 was appropriate pursuant to the factors in T.C.A. §40-11-118.

At the hearing on the petition for writ of certiorari, the Defendant did not present any witnesses or testimony on his behalf. The only proof presented by the Defendant was the introduction of three (3) exhibits: Exhibit 1 – a Uniform Affidavit of Indigence signed by the Defendant; Exhibit 2 – the General Sessions Court File; and Exhibit 3 – Pretrial Services Investigation Report.[1] The State presented testimony from Sergeant Daniel Cordero with the Domestic Violence Bureau of the Memphis Police Department.

---

[1] The Defendant did not include copies of Exhibit 1 or Exhibit 2 with the transcript filed contemporaneously with his motion. The failure to include these exhibits prevents this Court from reviewing the information or facts contained therein. However, there was a stipulation by the State that the Defendant was indigent and could afford to pay a bond of no more than $500.

Sergeant Cordero testified that he had investigated the underlying crime in this matter and had spoken to the Defendant who had confessed to the crime.  According to the testimony of Sergeant Cordero, the Defendant admitted to stabbing the victim 10 to 13 times while chasing her down the street stabbing her over and over again.  The Defendant admitted that prior to the attack he had been seeking a weapon to kill the victim and the father of the victim's child.  In addition to the testimony of Sergeant Cordero there were pictures of the wounds of the victims presented that were not presented to this Court for review.

Both the United States and the Tennessee constitutions grant an individual the right to bail.  U.S. Const. Amend. VIII; Tenn. Const. Art 1 § 1.  In recognizing this constitutional right to bail, the Tennessee legislature had adopted statutes to guide the Courts in the setting of bail amounts for the dual purpose of reasonably assuring the appearance of the Defendant while at the same time protecting the safety of the public.  Tenn. Code Ann. § 40-11-118(b).  Furthermore, "in determining the amount of bond necessary to reasonably assure the appearance of the defendant while at the same time protecting the safety of the public," the trial courts shall consider the following factors in setting bail:

(1) The defendant's length of residence in the community;
(2) The defendant's employment status and history and the defendant's financial condition;
(3) The defendant's family ties and relationships;
(4) The defendant's reputation, character and mental condition;
(5) The defendant's prior criminal record and record of appearance at court proceedings or of flight to avoid prosecution or failure to appear at court proceedings;
(6) The nature of the offense and the apparent probability of conviction and the likely sentence;
(7) The defendant's prior criminal record and the likelihood that because of such record the defendant will pose a risk of danger to the community;
(8) The identity of responsible members of the community who will vouch for the defendant's reliability; . . . ; and
(9) Any other factors indicating the defendant's ties to the community or bearing on the risk of the defendant's willful failure to appear.

T.C.A. § 40-11-118(b).

"The trial court has very wide latitude in setting bail." *State v. Melson*, 638 S.W.2d 342, 358 (Tenn. 1982).  With this wide latitude, this Court reviews the actions of a trial court regarding a defendant's release under an abuse of discretion standard. *See, e.g.*, T.C.A. § 40-26-103.

In its Order denying the petition of the Defendant, the trial court considered the factors listed above from T.C.A. §40-11-118.  The court specifically referenced the Defendant's length of residence in Shelby County, his employment status, family ties and lack of criminal record.  In addition to those criteria, the court considered the "high probability of conviction and the likely sentence of 15 to 60 years."  The Defendant bases his motion upon the argument that the bond in his case violates both the Tennessee and United States Constitutions by denying the Defendant his right to pretrial release solely due to his financial condition.  The Defendant argues that he is too poor to afford the current bond as set by the Court and as such the bond is unconstitutional.  In presenting said argument, the Defendant overlooks that the financial condition of the Defendant is only a part of one of the nine (9) criteria to be reviewed in a setting of bail.

A review of the bond of the Defendant in light of the conditions as set out in T.C.A. §40-11-118 indicates that the trial Court did not abuse its discretion in denying the petition for writ of certiorari.  The written Order of the Court setting out the basis for the denial of the petition for writ of certiorari states a sufficient basis pursuant to T.C.A. §40-11-118.

IT IS HEREBY ORDERED that the Defendant's motion for reduction of pretrial bail is DENIED.  As the Defendant appears to be indigent, costs of this appeal are taxed to the State.

PER CURIAM

JOHN EVERETT WILLIAMS, JUDGE
ALAN E. GLENN, JUDGE
CAMILLE R. MCMULLEN, JUDGE

IN THE COURT FOR CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | |
| | ) | SHELBY COUNTY |
| v. | ) | NO. W2017-00779-CCA-R8-CO |
| | ) | |
| DELCHON WEATHERSPOON, | ) | |
| | ) | |
| Appellant. | ) | |

## ON MOTION UNDER TENN. R. APP. P. RULE 8
## FOR REVIEW OF REVOCATION OF BOND

---

### RESPONSE TO THE MOTION

---

The defendant has filed a motion under Tenn. R. App. P. 8(b) for review of the trial court's order denying his motion to reduce his $200,000 bond on the charge of attempted first degree murder. The gist of the defendant's argument is that because he is poor, his significant bond unconstitutionally denies him the opportunity for release.

In the defendant's Rule 8 application to this Court, he submits a transcript of the certiorari hearing, but not the four exhibits entered at the hearing, three of which were submitted on the defendant's behalf. (Transcript, at 3.) Included in the record, however, is a document titled "Shelby County Pretrial Services/County Probation Investigative Report." This document contains some background information; the 28 year old defendant listed three prior residences, with the most recent

1

being at a friend's home for two months. (Report, 1.) The Report noted the defendant completed the 12th grade. *Id.* The report noted that the defendant had no prior criminal history and a brief work history, at two jobs, totaling 1 year, five months. (Report, 1-2.) The Report noted that "Efforts made by Pretrial Services to verify the defendant's background information were unsuccessful." (Report, 2.)

At the hearing, the defendant submitted an affidavit of indigency, asserting he could only pay a bond of $500. (Transcript, 4-5.) The only witness called to testify was Sergeant Daniel Cordero, on behalf of the State. (Transcript, 8-18.) Cordero testified that the defendant, an "on again, off again boyfriend of the victim," admitted stabbing the victim, Victoria Kelly, "10 to 13 times" as he chased her down the street after chasing her out of her home. (Transcript, at 8-9, 12.) The defendant told Cordero that "he wanted her to feel the pain he was feeling in his heart." (Transcript, at 9.) The defendant admitted that while in the victim's home, prior to the attack, he was looking for a weapon to kill the victim and the father of the victim's child. (Transcript, 11.) Cordero identified photographs of the victim's wounds, taken while she was in the hospital. (Transcript, 12.) The victim had cuts to her hands, head, throat, and stomach, and was partially paralyzed on the day that Cordero met with her. (Transcript, 13-14.)

The trial court stated that it considered the required factors under Tenn. Code Ann. § 40-11-118, which included the defendant's length of residency, employment status, family ties, and lack of prior criminal record. (Transcript, 27.)

The court held that there was a high probability of conviction for a violent offense. (Transcript, 27.) If convicted, the defendant faced a sentence of from 15 to 60 years. (Transcript, 27.) The court concluded that "In light of the serious nature of this offense, the injuries to the victim,

2

I think the bond that's set is appropriate [at] $200,000. He's not being incarcerated because he's poor. He's being incarcerated because the community has to be protected from any potential violence such as this." (Transcript, 27.) From this record, the defendant contends that his incarceration is unconstitutional because he is being punished for being poor. However, the record shows otherwise and the defendant is not entitled to relief.

As an initial matter, this Court should find that the defendant has waived review for failing to provide a complete record to this Court. As noted above, the four exhibits entered at the hearing are not included in the defendant's application, though the defendant does attach a copy of a document from Shelby County Pretrial Services. Because the actual exhibits are not included in the record, this Court cannot review the issue as it was reviewed by the trial court. *See generally State v. Ballard*, 855 S.W.2d 557, 560 (Tenn. 1993) (lack of complete record precludes review).

In any event, the defendant is not entitled to relief. Article I, Section 15 of the Tennessee Constitution provides "[t]hat all prisoners shall be bailable by sufficient sureties, unless for capital offenses, when the proof is evident, or the presumption great." "This constitutional provision grants a defendant the right to pretrial release on bail pending adjudication of criminal charges." *State v. Burgins*, 464 S.W.3d 298, 304 (Tenn. 2015) (citations omitted). The constitutional guarantee of bail is not lost until the defendant is convicted. *State ex rel. Brown v. Newell*, 216 Tenn. 284, 290, 391 S.W.2d 667, 670 (1965). Bail is controlled by Tenn. Code Ann. § 40-11-118, as follows:

> (a) Any defendant for whom bail has been set may execute the bail bond and deposit with the clerk of the court before which the proceeding is pending a sum of money in cash equal to the amount of the bail. Upon depositing this sum, the defendant shall be released from custody subject to the conditions of the bail bond. Bail shall be set as low as the court determines is necessary to reasonably assure the appearance of the defendant as required.

3

(b) In determining the amount of bail necessary to reasonably assure the appearance of the defendant while at the same time protecting the safety of the public, the magistrate shall consider the following:

(1) The defendant's length of residence in the community;

(2) The defendant's employment status and history and financial condition;

(3) The defendant's family ties and relationships;

(4) The defendant's reputation, character and mental condition;

(5) The defendant's prior criminal record, record of appearance at court proceedings, record of flight to avoid prosecution or failure to appear at court proceedings;

(6) The nature of the offense and the apparent probability of conviction and the likely sentence;

(7) The defendant's prior criminal record and the likelihood that because of that record the defendant will pose a risk of danger to the community;

(8) The identity of responsible members of the community who will vouch for the defendant's reliability; however, no member of the community may vouch for more than two (2) defendants at any time while charges are still pending or a forfeiture is outstanding; and

(9) Any other factors indicating the defendant's ties to the community or bearing on the risk of the defendant's willful failure to appear.

Tenn. Code Ann. § 40-11-118(b). Under Tenn. Code Ann. § 40-11-143, a defendant can move for a change in bail or conditions of release.

Based on these circumstances and the authority set out above, the trial court did not abuse its discretion in denying the defendant's motion to reduce his bond. The trial court properly considered the factors listed in Tenn. Code Ann. § 40-11-118(b) and based its decision on the facts and circumstances presented at the hearing. The court found that the defendant posed a danger to the community, and that there was a high likelihood that he would be convicted at trial. *See* Tenn. Code

4

Ann. § 40-11-118(b) ("In determining the amount of bail necessary to reasonably assure the appearance of the defendant *while at the same time protecting the safety of the public*, the magistrate shall consider the following . . . .) (emphasis added). The court clearly articulated the reasons for its decision and set a bond amount reasonably necessary to assure the defendant's appearance at future court settings and to protect the public from the defendant.

The defendant contends that because he is poor and unable to pay more than $500 in bail, the trial court's refusal to lower his bail is unconstitutional. The defendant argues that other than the instant arrest, he has no prior criminal history and therefore his substantial bail amounts to a prison sentence unsupported by a jury verdict. However, the United States Supreme Court has held that the court can consider the nature of the defendant's offense, and the dangerousness posed by the defendant, when setting bail. *United States v. Salerno*, 481 U.S. 739, 748 (1987) ("We have repeatedly held that the Government's regulatory interest in community safety can, in appropriate circumstances, outweigh an individual's liberty interest."). It is well-established that the danger posed by a defendant to the community, as well as his risk of flight, are both factors to be considered in setting bail. *See United States v. LaFontaine*, 210 F.3d 125, 134 (2d Cir. 2000); *see also United States v. Dono*, 275 Fed. Appx. 35, 38 (2d Cir.2008) (unpublished opinion) ("[P]retrial detention was the means chosen by Congress in the Bail Reform Act to protect the community from dangerous defendants.").

Tennessee's statutory bail requirements are in accord with *Salerno*, and permit the trial court to consider the defendant's potential for danger. Most recently, in *Jones v. The City of Clanton*, No. 215CV34-MHT, 2015 WL 5387219, at *1–2 (M.D. Ala. Sept. 14, 2015), a case cited by the defendant in his application, the federal court reiterated that a generic bail schedule that did not

5

permit a hearing to consider individualized factors for each defendant was unconstitutional. *Id.* However, the federal court noted that since filing of the lawsuit, the City of Clanton had changed its methodology to permit individualized bail determinations, which, among other things, permitted the denial of release "of anyone who poses a danger to herself or others or whose release is precluded by statute." *Id.* at *1-2. The federal court concluded that Clanton's new policy was constitutional. *Id.* at *4.

Another case cited by the defendant also hinges on predetermined bail schedules. In *Pierce v. City of Velda City*, No. 4:15-CV-570-HEA, 2015 WL 10013006, at *1 (E.D. Mo. June 3, 2015), the federal court held that "The use of a secured bail schedule to set the conditions for release of a person in custody after arrest for an offense that may be prosecuted by Velda City implicates the protections of the Equal Protection Clause when such a schedule is applied to the indigent." *Id.* The court noted that all defendants should be afforded the right to make unsecured bonds (a promise to pay in the future if the bond is defaulted on), with the exception of "such persons as are brought before the court within 24 hours of arrest for potential imposition of conditions for release other than the posting of money bond in cases involving intentionally assaultive or threatening conduct or for a determination that release must be denied to prevent danger to a victim, the community or any other person under applicable constitutional standards." *Id.*

In the instant case, the trial court did not rely on a predetermined bond schedule, but afforded the defendant a hearing to determine what the bond should be to ensure the defendant's appearance in court and to protect the public. Accordingly, the defendant cannot prevail on the argument that his lack of income entitles him to what is essentially release on his own recognizance for attempted first degree murder. The defendant presented no proof that undermined the State's case that he searched

6

for a weapon and then repeatedly stabbed the victim.  The defendant has minimal work history and

presented no one to vouch for him at the hearing.  All of the proof supports the conclusion that the

defendant, likely facing conviction for a serious felony offense, is at risk for fleeing the area if

released without posting a substantial bond, and also poses a danger to the community.  Therefore,

the State submits that the defendant's motion in this Court should be denied and the bond should

remain as set by the trial court.

Respectfully submitted,

HERBERT H. SLATERY III
Attorney General and Reporter


DAVID H. FINDLEY
Senior Counsel
Criminal Appeals Division
Post Office Box 20207
Nashville, Tennessee 37202
(615) 741-4350
B.P.R. No. 020075
david.findley@ag.tn.gov

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing has been sent by first class mail, postage paid, to: Joshua Stanton, counsel for defendant on appeal, 201 Polar Ave, Suite 2-01, Memphis, Tennessee, 38103, on this the 25th day of April, 2017.

DAVID H. FINDLEY
Senior Counsel

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

STATE OF TENNESSEE,

Prosecution,

v.

DELCHON WEATHERSPOON,

Defendant.

SHELBY COUNTY CRIMINAL

No. P-43279

## MOTION FOR REDUCTION OF PRETRIAL BAIL

*JOSHUA STANTON*
Assistant Shelby County
Public Defender
201 Polar Ave., Suite 2-01
Memphis, TN 38103
(901) 610-1441
B.P.R. No. 34593

*OF COUNSEL*
*STEPHEN C. BUSH*
*SHELBY COUNTY PUBLIC DEFENDER*

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

| | |
|---|---|
| STATE OF TENNESSEE, | SHELBY COUNTY CRIMINAL |
| Prosecution, | No. P-43279 |
| v. | |
| DELCHON WEATHERSPOON, | |
| Defendant. | |

## MOTION FOR REDUCTION OF PRETRIAL BAIL

There is only one reason Mr. Delchon Weatherspoon is in jail today: he is too poor to pay for his release. Encaging a man for his poverty is not only a constitutional violation, but a moral stain on a society that purports to value freedom, equality, and the presumption of innocence. Accordingly, comes now Mr. Weatherspoon, by and through his attorney of record, Joshua Stanton, Assistant Public Defender, pursuant to Rule 8 of the Tennessee Rules of Appellate Procedure, T.C.A. § 40-11-101 *et seq.*, article I, §§ 8, 15, and 16 of the Tennessee Constitution, and the Eighth and Fourteenth Amendments to the United States Constitution, and moves this honorable Court to reduce Mr. Weatherspoon's bail to an amount that the Court finds he can actually afford, to set an unsecured bail amount, or to release Mr. Weatherspoon on his own recognizance.

## I.    PROCEDURAL HISTORY

On January 1, 2017, Mr. Weatherspoon was arrested and charged with attempted first degree murder. Bail was set at $200,000. A preliminary hearing was held on February 24, 2017, and Mr. Weatherspoon was held to the state as charged. The General Sessions Court judge then denied a Defense motion to reduce bail.

1

Mr. Weatherspoon filed a Petition for Writ of Certiorari, presented under T.C.A. § 40-11-144(b), in the Shelby County Criminal Court on February 27, 2017. A hearing was held on the Petition on March 22, 2017, in Division 2 of the Shelby County Criminal Court. The Criminal Court judge made an oral ruling at the hearing denying the Petition, stating that Mr. Weatherspoon is "not being incarcerated because he's poor. He's being incarcerated because the community has to be protected from any potential violence such as this." (Tr. 27:15–25:17.) The judge issued a written order denying the Petition on April 3, 2017.

## II.   FACTS

Mr. Weatherspoon graduated from Hamilton High School in Memphis in 2007 and has lived in Shelby County his entire adult life. (Pretrial Rpt. 1.) His family is here in Shelby County. (*See* Pretrial Rpt. 1.) He has been employed in Shelby County for his entire adult life. (*See* Pretrial Rpt. 1.) Mr. Weatherspoon has never missed court before. (Pretrial Rpt. 2.) Indeed, he has never even been charged with a criminal offense before his arrest in this case. (Pretrial Rpt. 2.) Finally, Mr. Weatherspoon cannot pay a secured bond set higher than $500. (Tr. 4:25–5:2 (statement of prosecutor stipulating that Mr. Weatherspoon "is indigent if he had the public defender on this and that he can afford to pay a bond of no more than $500"); Pretrial Rpt. 2.)

## III.   ARGUMENT

As a preliminary matter, the factors outlined in T.C.A. §§ 40-11-115 and 40-11-118 strongly weigh in favor of either a nominal bond that his family can likely assist with paying, or, in the alternative, an unsecured bond or recognizance release. In that regard, the trial court judge erred in considering the danger to the community on the basis of the nature of the allegations in this case: the Bail Reform Act only allows a judge to consider "[t]he defendant's prior criminal

2

record" in assessing danger to the community. T.C.A. § 40-11-118(b)(9). The Bail Reform Act's focus on prior record flows directly from the presumption of innocence. "The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." *Coffin v. United States*, 156 U.S. 432, 453 (1895). It is inappropriate to presume a defendant to be dangerous on the basis of conduct for which a defendant is presumed innocent.

The more odious problem, however, with the bail presently set in this case, is that it violates both the Tennessee and United States Constitutions. A system of money bail that lets some defendants go free while others remain in cages solely based on their financial resources creates one system of justice for the wealthy and another for the poor. It recalls the system of indulgences that so ired Martin Luther, which purported to allow the wealthy to pay money to avoid punishment for their sins, while offering the poor no similar opportunity.

Like the moral violations that sparked the Protestant Reformation, and the constitutional violations that pervaded our society throughout the times of Jim Crow, the violation that Mr. Weatherspoon is currently experiencing is so widespread that its obviousness is obscured by its general acceptance. There are two reasons that the current bail violates Mr. Weatherspoon's constitutional rights: first, the bail set in this case denies Mr. Weatherspoon his right to pretrial release; second, the current bail impermissibly discriminates against Mr. Weatherspoon based on his poverty.

### A. The Bail Set in This Case Denies Mr. Weatherspoon His Right to Pretrial Release

Under article 1, § 15 of the Tennessee State Constitution, "[A]ll prisoners shall be bailable by sufficient sureties, unless for capital offences, when the proof is evident, or the presumption great." The Tennessee Supreme Court explained, "This constitutional provision

3

grants a defendant the right to pretrial release on bail pending adjudication of criminal charges."
*State v. Burgins*, 464 S.W.3d 298, 304 (Tenn. 2015). The *Burgins* court further remarked that
"the right to pretrial bail has traditionally been a 'fundamental constitutional right.'" *Id.* at 305
(quoting Matthew J. Hegreness, *America's Fundamental and Vanishing Right to Bail*, 55 Ariz. L.
Rev. 909, 916–17 (2013)). According to the *Burgins* court, the right is rooted in two principles
of the American justice system: first, "'that a person accused of [a] crime shall not, until . . .
finally adjudged guilty in the court of last resort, be absolutely compelled to undergo
imprisonment or punishment.'" *Burgins*, 464 S.W.3d at 303 (quoting *Hudson v. Parker*, 156
U.S. 277, 285 (1895)) (alterations in original); and, second, that "[p]retrial release on bail
'permits the unhampered preparation of a defense[ ] and serves to prevent the infliction of
punishment prior to conviction.'" *Id.* (quoting *Stack v. Boyle*, 342 U.S. 1, 4 (1951)).

The Tennessee Supreme Court's wording in *Burgins* is key to understanding the nature of
the right to bail in Tennessee. The *Burgins* court specifically highlighted that article 1, § 15
"grants a defendant *the right to pretrial release on bail* . . . ." 464 S.W.3d at 304 (emphasis
added). The import of this phrasing is that the Tennessee Constitution's reference to the right to
be "bailable by sufficient sureties" amounts to a "right to pretrial release."

A secured bail amount set higher than a defendant can pay denies him his right to pretrial
release just as much as no bail having been set at all. The United States Supreme Court has
repeatedly acknowledged that conditioning a fundamental right on the payment of money that a
person does not possess effects a legal denial of the right. *See, e.g., Powell v. Alabama*, 287 U.S.
45, 73 (1932) (holding that the right to counsel is denied when counsel is not appointed to an
indigent defendant); *Griffin v. Illinois*, 351 U.S. 12, 19–20 (1956) (plurality opinion)
(recognizing that conditioning the right to appeal on the ability to purchase a transcript denied an

4

indigent defendant the right to appeal); *id.* at 20–24 (Frankfurter, J., concurring in the judgment) (same); *Boddie v. Connecticut*, 401 U.S. 371, 380 (1971) (holding that Connecticut's mandatory fees to initiate divorce proceedings in court, "the sole means in Connecticut for obtaining a divorce, must be regarded as the equivalent of denying [those without the money to pay such court fees] an opportunity to be heard upon their claimed right to a dissolution of their marriages").

"Law addresses itself to actualities." *Griffin*, 351 U.S. at 23 (Frankfurter, J., concurring in the judgment). When a court sets bail at a dollar value higher than a defendant can afford, the court denies a defendant his right to pretrial release every bit as much as poll taxes historically denied poor members of the electorate the right to vote. Bond has been set in this case well above the $500 that Mr. Weatherspoon is actually able to afford. As a result, he has been denied his right to pretrial release under article I, § 15 of the Tennessee Constitution, and to due process under the Fourteenth Amendment to the United States Constitution.

**B.   The Current Bail Impermissibly Discriminates Against Mr. Weatherspoon Based on His Poverty**

Denial of a fundamental right on the basis of poverty violates a defendant's right to equal protection of the laws under both the Tennessee and United States Constitutions. *See, e.g.,* *Gideon v. Wainwright*, 372 U.S. 335 (1963); *Griffin v. Illinois*, 351 U.S. 12 (1956); *Williams v. Illinois*, 399 U.S. 235 (1970); *Tate v. Short*, 401 U.S. 395 (1971). A fundamental right cannot be denied on the basis of poverty alone. *Gideon v. Wainwright* held that the right to counsel cannot be denied on the basis of poverty. 372 U.S. 335 (1963). The Supreme Court in *Griffin* held that the right to appeal, once granted, cannot be denied on the basis of poverty. 351 U.S. at 17–18 (plurality opinion) ("In criminal trials a State can no more discriminate on account of poverty than on account of religion, race, or color."); *id.* at 24 (Frankfurter, J., concurring in the

5

judgment) ("The State is not free to produce such a squalid discrimination."). Perhaps most analogous to the case at hand is *Williams v. Illinois*, 399 U.S. 235 (1970).

The Petitioner in *Williams* was sentenced by an Illinois court to one year of imprisonment, a $500 fine, and taxed $5 in court costs. *Id.* at 236. The court judgment directed, pursuant to then-existing Illinois law, "that if appellant was in default of the payment of the fine and court costs at the expiration of the one year sentence, he should remain in jail pursuant to § 1—7(k) of the Illinois Criminal Code to 'work off' the monetary obligations at the rate of $5 per day." *Id.* The Supreme Court noted that "the Illinois statute in operative effect expose[d] only indigents to the risk of imprisonment beyond the statutory maximum." *Id.* at 242. Accordingly, the Supreme Court held that imprisonment on the basis of "economic status" in such a case violates the Equal Protection Clause. *Id.* at 244; *see also Tate v. Short*, 401 U.S. 395, 397–98 (1971) ("Although the instant case involves offenses punishable by fines only, petitioner's imprisonment for nonpayment constitutes precisely the same unconstitutional discrimination since, like Williams, petitioner was subjected to imprisonment solely because of his indigency."); *Bearden v. Georgia*, 461 U.S. 660, 671 (1983) (holding that the Equal Protection Clause of the Fourteenth Amendment generally prohibits "punishing a person for his poverty").

The import of *Williams* is that a person cannot be held in jail solely because of his poverty. Surely, if a state violates the Equal Protection Clause by jailing someone because of his poverty after conviction, the Equal Protection Clause is similarly violated when a pretrial defendant is held in custody only because he is poor.

A ruling by this Court finding a constitutional violation in Mr. Weatherspoon's continued incarceration would be far from an outlier. Numerous courts are in accord. *See, e.g., Pugh v.*

*Rainwater*, 572 F.2d 1053, 1057 (5th Cir. 1978) (*en banc*); *Pierce v. City of Velda City*, 4-15-cv-570-HEA, 2015 WL 10013006, at *1 (E.D. Mo. June 3, 2015) (issuing Declaratory Judgment) ("No person may, consistent with the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, be held in custody after an arrest because the person is too poor to post a monetary bond."); *Thompson v. Moss Point, Mississippi*, 1:15-cv-00182-LG-RHW, 2015 WL 10322003, at *1 (S.D. Miss. Nov. 6, 2015) (issuing Declaratory Judgment) (same); *Cooper v. City of Dothan*, 1:15-cv-425-WKW, 2015 WL 10013003, at *1 (M.D. Ala. June 18, 2015); *Walker v. City of Calhoun, Georgia*, No. 4:15-cv-0170-HLM, 2016 WL 361612, at *14 (N.D. Ga. Jan. 28, 2016) (issuing preliminary injunction restraining defendant from "continu[ing] to keep arrestees in its custody for any amount of time solely because the arrestees cannot afford a secured monetary bond"); *see also State v. Blake*, 642 So.2d 959, 968 (recognizing the unconstitutionality and irrationality of a bail scheme that allows "a defendant with financial means who is charged with a noncapital violent felony, and who may potentially pose a great threat to community safety," to "obtain immediate release simply by posting bail," while forcing an "indigent defendant . . . [to] remain incarcerated").

Mr. Weatherspoon today remains encaged behind bars solely because of his poverty. As has been repeatedly held, such invidious discrimination violates Mr. Weatherspoon's rights enshrined in the Equal Protection Clause of the Fourteenth Amendment, as well as both article I, §§ 8, 15, and 16 of the Tennessee Constitution. Mr. Weatherspoon is therefore entitled to have this Court remedy this constitutional wrong. *See Angel v. Bullington*, 330 U.S. 183, 209 (1947) ("[A] right without a remedy is no right at all . . . .").

**C.** **The Appropriate Remedy is For the Court to Set Bail to an Amount That Mr. Weatherspoon Can Afford, to Set an Unsecured Bail Amount, or to Release Mr. Weatherspoon on His Own Recognizance**

The remedy for the constitutional problem is simple: set bail at an amount that the court finds Mr. Weatherspoon can actually afford, set an unsecured bail amount, or release Mr. Weatherspoon on his own recognizance. To the extent the Court is concerned with ensuring Mr. Weatherspoon's continued appearance and protecting the community, the Court is, of course, free to impose reasonable bail conditions. Those bail conditions may not, however, impose financial burdens on Mr. Weatherspoon that he cannot meet.

## IV. CONCLUSION

"Criminal defendants, presumed innocent, must not be confined in jail merely because they are poor." *Jones v. The City of Clanton*, No. 2:15-cv-34-MHT, 2015 WL 5387219, at *3 (M.D. Ala. Sept. 14, 2015). "Justice that is blind to poverty and indiscriminately forces defendants to pay for their physical liberty is no justice at all." *Id.* Mr. Weatherspoon requests that this Court immediately set a bail amount that Mr. Weatherspoon can afford, set an unsecured bail amount, or release him on his own recognizance.

Respectfully submitted,

Joshua Stanton
Assistant Public Defender
201 Poplar Avenue, Suite 2-01
Memphis, Tennessee  38103
(901) 610-1441
B.P.R. No. 34593

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion has been mailed, postage prepaid, to the Office of the Tennessee Attorney General, P.O Box 20207, Nashville, TN 37202, this the 17th day of April 2017.

Joshua Stanton

9

# STATE OF TENNESSEE

## Shelby County

I, Richard L. DeSaussure, III, Clerk of the Criminal Court of the 30th Judicial District at Memphis, do hereby certify that the foregoing **TWO (2)** pages of writing contain a full, complete, true and perfect copy of

**ORDER DENYING PETITION**

in the case of:

**STATE OF TENNESSEE**      Docket No.  **C1701364**

vs. **DELCHON WEATHERSPOON**

Indictment for **CRIMINAL ATTEMPT FIRST DEGREE MURDER**

as the same now appears on file, and of record in my office, and that I am the Custodian of said records and that all entries are presently under my care, custody and control

Witness my hand and the seal of said Court, at office in Memphis,

**SEAL**                      This, the **4th**   day of **APRIL**              **2017**

*R. DeSaussure*
Richard L. DeSaussure, III

**STATE OF TENNESSEE  IN THE CRIMINAL COURT OF SHELBY COUNTY, TN.**
**Shelby County**      Memphis, Tennessee **MARCH TERM**                    **20 17**

I, Chris Craft, Judge of the 30th Judicial District certify that Richard L. DeSaussure, III, who have foregoing certificate, is now, and was at the time of signing the same, Clerk of said Court, and that said Court is a Court of Record, and that his attestation is in due form, and his official acts, as such, are entitled to full faith and credit.

Witness my hand, this **4th**   day of **APRIL**                    **20 17**

*Chris Craft*
**JUDGE**

**STATE OF TENNESSEE**
**Shelby County**

I, Richard L. DeSaussure, III, Clerk of the Criminal Court of the 30th Judicial District at Memphis, certify that the Hon. Chris Craft, whose genuine official signature appears to the above and hereto annexed Certificate is and was at the time of the signing of the same, Judge of the 30th Judicial District which is Court of Record, duly commissioned and qualified, as such, and that said attestation is in due form of law.

In Testimony Whereof I have hereunto set my hand and affixed the seal of said Court, at office, in the City of Memphis, this **4th**   day of   **APRIL**                    **20 17**

*R. DeSaussure*
Richard L. DeSaussure, III

**SEAL**

4/3/2017 2:21 PM

IN THE CRIMINAL COURT OF TENNESSEE
FOR THE 30TH JUDICIAL DISTRICT AT MEMPHIS
DIVISION II

| | |
|---|---|
| STATE OF TENNESSEE, | C1701364 |
| Prosecution/Respondent, | No. P43279 |
| | G.S. Case No.: 17000034 |
| v. | |
| DELCHON WEATHERSPOON, | Charges: Criminal Attempt First Degree Murder |
| Defendant/Petitioner. | |

## ORDER DENYING PETITION

Before the Court is Defendant's Petition for Writ of Certiorari, filed February 14, 2017.

An evidentiary hearing was held in this matter on March 22, 2017.

The Court has considered the factors in Tennessee Code Annotated § 40-11-118,

including the defendant's length of residency in Shelby County, his employment status, family

ties, and lack of criminal record. The Court has further considered the high probability of

conviction, and the likely sentence of 15 to 60 years.

The Court finds that the $200,000 bond set in this matter is appropriate. The Defendant's

Petition for Writ of Certiorari is therefore DENIED.

_____
JUDGE

_____
DATE    4/3/17

Filed: _____4-3-17_____
        Richard DeSaussure

By: _____

488793

## SHELBY COUNTY PRETRIAL SERVICES/COUNTY PROBATION
## INVESTIGATION REPORT

DATE: 03/08/17

SUBMITTED BY: LaShonda Dancy

NAME: Delchon Weatherspoon

ADDRESS: 2953 New London, 38116

AKA:

CITY & STATE: Memphis, TN   AGE: 28   D.O.B.: 09/06/88   SEX: M   RACE: B

ATTORNEY: Josh Stanton   REF'D. BY: Judge Wright   DATE REF'D: 03/01/17

| CHARGE | DOCKET # | BAIL | COURT DATE/DIVISION |
|---|---|---|---|
| Crim Att-First Degree Murder | P-43279 | $200,000 BS | 03/22/17 Div 02 CC |

FAMILY BACKGROUND:
FATHER: Alfred Weatherspoon

ADDRESS: Deceased

MOTHER: Pearline Carter

ADDRESS: Memphis, TN

CURRENT MARITAL STATUS: Single

NUMBER OF CHILDREN: 0

IN WHOSE CUSTODY:

SUPPORTED BY:

RESIDENCE:
CURRENT AND PREVIOUS ADDRESSES

| | HOW LONG | WITH WHOM |
|---|---|---|
| 2953 New London, Memphis, TN, 38116 | 2 mos | Friend |
| On Meadow Lake Dr East, Memphis, TN, 38115 | 3 yrs | Alone |
| 2089 Southbridge St, Memphis, TN, 38118 | 1 yr | Aunt |

EDUCATION:
LAST SCHOOL ATTENDED: Hamilton H.S.   LAST YEAR ATTENDED: 2007
HIGHEST GRADE COMPLETED: 12th   REASON FOR LEAVING: Graduated

EMPLOYMENT:
EMPLOYER: Nike- Shelby Drive   LENGTH OF TIME: 1 mo
PREVIOUS EMPLOYER: ATC- Genesis/Genco   LENGTH OF TIME: 5 yrs

SOURCES:
Juvenile Court:   OTHER SOURCES:
City/County B of I:  X
Computer:  X
NCIC:

<u>Delchon Weatherspoon #488793</u>                                                    <u>Page 2</u>

PRIOR RECORD:

| DATE | CHARGE | DISPOSITION |
|------|--------|-------------|
| 01/01/17 | Crim Att-First Degree Murder | $200,000 BS; 02/24/17 HTS; 02/28/17 Ind# P-43279 Petition-Misc; 03/22/17 Set for Bond Hearing in Div 02 CC (Present Charge) |

<u>Summary</u>

Mr. Delchon Weatherspoon was referred to this office for the purpose of a Bond Report.

Efforts made by Pretrial Services to verify the defendant's background information were unsuccessful.

The defendant's adult arrest history includes no misdemeanor convictions and no felony convictions.

Mr. Delchon Weatherspoon has no prior bench warrants and no bond forfeitures.

Mr. Delchon Weatherspoon states that he can afford to pay a bond amount of $500.

Pretrial Services has no recommendation on this matter before the court.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

IN THE CRIMINAL COURT OF TENNESSEE AT MEMPHIS

THE THIRTIETH JUDICIAL DISTRICT

STATE OF TENNESSEE,           )

                              )

                              )        **ORIGINAL**

vs.                           )        Case No. P 43279

DELCHON WEATHERSPOON,         )

          Defendant.          )

-----------------------------------------------------------

PETITION FOR WRIT OF CERTIORARI/BOND HEARING

MARCH 22, 2017

-----------------------------------------------------------

THE HONORABLE GLENN WRIGHT, PRESIDING JUDGE

APPEARANCES

FOR THE STATE:

        MEGHAN FOWLER
        Assistant District Attorney General
        District Attorney General's Office
        201 Poplar Avenue - Third Floor
        Memphis, TN 38103

FOR THE DEFENDANT:

        JOSHUA STANTON
        Assistant Public Defender
        Public Defender's Office
        201 Poplar Avenue - Second Floor
        Memphis, TN 38103

                Reported by:
              **Katherine Knowles**
                Court Reporter

TABLE OF CONTENTS

VOLUME ONE

|                                                | PAGE |
|------------------------------------------------|------|
| Appearances                                    | 1    |
| Table of Contents                              | 2    |
| List of Exhibits                               | 3    |
| Style and Caption                              | 4    |
| **Wednesday, March 22, 2017**                  |      |
| Statements (By Mr. Stanton)                    | 3    |
| **STATE'S PROOF**                              |      |
| **SERGEANT CORDERO**                           |      |
| Direct Examination (By Ms. Fowler)             | 8    |
| Cross-Examination (By Mr. Stanton)             | 17   |
| Closing Arguments (By Mr. Stanton)             | 18   |
| Closing Arguments (By Ms. Fowler)              | 23   |
| Closing Arguments (By Mr. Stanton)             | 25   |
| Court's Ruling                                 | 27   |
| Certificate of Reporter                        | 28   |

INDEX OF EXHIBITS

| NO. | STATE/DEFENSE | ID/EVIDENCE | TO/DESCRIPTION | PAGE |
|-----|---------------|-------------|----------------|------|
| 1 | Defense | Evidence | Court, affidavit | 5 |
| 2 | Defense | Evidence | Court, court file | 6 |
| 3 | Defense | Evidence | Court, | 7 |
|   |         |          | Pretrial report |   |
| 4 | State | Evidence | Court, photos | 15 |

1          IN THE CRIMINAL COURT OF SHELBY COUNTY, TENNESSEE

2                              DIVISION 2

3

4     STATE OF TENNESSEE,              )

5                                      )

6     vs.                             )          Case No. P 43279

7     DELCHON WEATHERSPOON,           )

8                    Defendant.       )

9

10            This cause came to be heard and was heard on the

11    22nd day of March, 2017, before the Honorable Glenn Wright,

12    Judge, holding the Criminal Court for Shelby County, at

13    Memphis, Tennessee, and the following proceedings were had

14    to-wit:

15

16            THE COURT:  All right.  This is the matter of

17    Delchon Weatherspoon.   This is your motion?

18            MR. STANTON:  It is, Your Honor.

19            THE COURT:  All right.  You may proceed.

20            MR. STANTON:  Your Honor, at this time the only

21    evidence that the petitioner and defendant would like to

22    introduce first is a uniform affidavit of indigency signed by

23    the defendant but have previously shown that to the prosecutor.

24    If I could have that marked and admitted into evidence.

25            MS. FOWLER:  Judge, the State will stipulate that

1    he is indigent if he had the public defender on this and that

2    he can afford to pay a bond of no more than $500.

3                    THE COURT:  Let's mark it Exhibit 1 to this

4    hearing.

5                    (Exhibit No. 1 was marked and filed.)

6                    THE COURT:  All right.

7                    MR. STANTON:  And second, Your Honor, petitioner

8    would like to introduce a record of the General Sessions Court

9    file.  We were unable to obtain a certified copy of this and

10   went to the court clerk's office and they explained that

11   because it's somewhat in limbo between General Sessions Court

12   and Criminal Court that they cannot provide a certified copy

13   but they did retrieve it from the grand jury section and made a

14   copy of it and so I wanted to submit for the record the

15   documents that were in the General Sessions Court file.

16                   THE COURT:  State?

17                   MS. FOWLER:  And, Judge, I don't have a problem

18   entering that but I want to point out to the Court that that's

19   not the full file.  The initial affidavit of complaint was

20   amended to increase the charges to criminal attempt murder in

21   the first degree.  It documents much of the investigation and

22   so if we're entering the General Sessions file, then the State

23   wants to make sure that the amended affidavit of complaint is

24   included.

25                   MR. STANTON:  Defense has no opposition then.

1         THE COURT:  Let's show that Exhibit 2 then.

2         MS. FOWLER:  Judge, as the Court reviews the --

3         THE COURT:  Hold on just a second.

4         MS. FOWLER:  Yes, sir.

5         THE COURT:  All right.  Go ahead.

6         MS. FOWLER:  Judge, I just wanted to point out as

7 the Court is reviewing the documents that Mr. Stanton is asking

8 the Court to be made an exhibit to this hearing, that the exact

9 same motion was filed and heard in General Sessions Court by

10 the judge that heard the proof in this matter and rejected.

11         MR. STANTON:  And, Your Honor --

12         THE COURT:  Let's mark this Exhibit 2.

13         (Exhibit No. 2 was marked and filed.)

14         THE COURT:  How do you respond to that?

15         MR. STANTON:  Well of course the defendant has a

16 right to review in the Criminal Court to review the bond that's

17 been set.  The General Sessions Court's judgment is not the

18 final say under the bail reform act.  He has a right to appeal.

19 In fact that's specifically noted in the petition for writ of

20 certiorari that the petition is presented under Tennessee Code

21 Annotated section 40-11-144(b), which again provides a method

22 for appeal of General Sessions Courts bond judgment.

23         THE COURT:  You may proceed.

24         MR. STANTON:  Thank you, Your Honor.  And last for

25 the purposes of the record, I would like the Shelby County

1   pretrial services investigation report marked and entered into

2   evidence.

3           THE COURT:  All right.  Mark the pretrial report

4   Exhibit 3.

5           MR. STANTON:  I believe the Court already has a

6   copy but I can provide this to the Court if -- yes, Your Honor,

7   in the jacket.  Thank you, Your Honor.

8           (Exhibit No. 3 was marked and filed.)

9           THE COURT:  All right.  You may proceed.

10          MR. STANTON:  Defense has no further proof at this

11   time.

12          MS. FOWLER:  Judge, the State has proof.  The State

13   will call Sergeant Cordero.  As Sergeant Cordero is coming in,

14   I wanted to inform the Court that the victim is present for

15   this and also she has a vested interest in the bond hearing and

16   she did not want the bond reduced at all.

17          MR. STANTON:  At this time, Your Honor, I would ask

18   for the Rule to be invoked.

19          THE COURT:  Okay.

20          MS. FOWLER:  I'm not going to call her unless the

21   Court wants me to.

22

23

24

25

1           SERGEANT CORDERO

2  called as a witness, being first duly sworn, was examined and

3  testified as follows:

4           DIRECT EXAMINATION

5  BY MS. FOWLER:

6    Q    Morning, Sergeant.  Will you state and spell your name,

7  please.

8    A    My name is Sergeant Daniel Cordero, C-O-R-D-E-R-O.

9    Q    Sergeant Cordero, how are you employed?

10   A    I work with the City of Memphis, Memphis Police

11  Department and I've been with the Domestic Violence Bureau.

12   Q    And in that capacity did you have an occasion to

13  investigate an offense that occurred on January 1, 2017,

14  involving Delchon Weatherspoon and a Victoria Kelly?

15   A    Yes, ma'am.

16   Q    And what was the nature of the case that you

17  investigated?

18   A    Mr. Weatherspoon was arrested for stabbing Ms. Kelly.

19   Q    And how many times did Mr. Weatherspoon stab Ms. Kelly

20  by his own admission?

21   A    By his admission 10 to 13 times.

22   Q    And did Mr. Weatherspoon by his own admission chase

23  Ms. Kelly down the street stabbing her over and over and over

24  again?

25   A    Yes, ma'am.

1     Q      And why did Mr. Weatherspoon do this?

2     A      In his statement he said that he wanted her to feel the

3     pain he was feeling in his heart.

4     Q      And prior to stabbing -- chasing Ms. Kelly out of her

5     own home and stabbing her repeatedly, what did

6     Mr. Weatherspoon do in the hours that led up to the attack on

7     Ms. Kelly in her own home?

8     A      They were in the home together.  She was there with her

9     child's father and they were celebrating New Years.  And at

10    some point he went up to his room --

11           MR. STANTON:  Objection, Your Honor.  It doesn't

12    appear that the witness is testifying from his own personal

13    knowledge.

14           MS. FOWLER:  Judge, reliable hearsay is permissible

15    in bond hearings and this is all about his investigation.

16           THE COURT:  Objection overruled.

17    Q      I'm sorry, Sergeant?

18    A      He went upstairs.  They were downstairs.  And while he

19    was upstairs, he appeared -- I can't say how he felt but he was

20    posting on Facebook.

21           THE COURT:  This is what he told you, right?

22           THE WITNESS:  No, sir.  This is what was in his

23    statement.  I didn't take his statement.  I reviewed his

24    statement.  Part of it is what he told me and what Ms. Kelly

25    told me when I took her statement.

1          THE COURT:  Go ahead.

2          MR. STANTON:  Objection, Your Honor.  At this time

3     with respect to the contents of the statement, if he was not

4     even present, there's no foundation that the evidence he's

5     testifying to is actually from --

6          THE COURT:  Who took the statement from the

7     defendant?

8          THE WITNESS:  Felony Response investigators took

9     the statement.

10          MS. FOWLER:  Judge, reliable hearsay is permissible

11     in bond hearings.  If that's the case, then I'm going to have

12     to get the Felony Response officer down here.  I brought the

13     case officer down here who reviewed the statement for the

14     purposes of his investigation and to further his investigation.

15          THE COURT:  Is the case officer available who took

16     the statement?

17          MS. FOWLER:  This is the case officer.

18          THE COURT:  I mean the one who took the statement.

19          MS. FOWLER:  Judge, I'll have to find out.  He is a

20     Felony Response officer.  I thought that in the interest of

21     efficiency, given that reliable hearsay is permissible in bond

22     hearings that --

23          THE COURT:  Do you think we have to have that

24     statement?

25          MS. FOWLER:  I think that given that Mr. Stanton is

1   asking for an ROR bond in this Class A felony that the

2   defendant admitted to, that he admitted to stabbing her 13

3   times and what Sergeant Cordero is going to say is that he was

4   weapon seeking prior to the attack, I think that it's necessary

5   for the Court to hear this and the severity of it in addition

6   to the strength of --

7          THE COURT:  I've heard the severity from him

8   already okay.

9          MS. FOWLER:  Yes, Judge.  I just want the State's

10  case and the premeditation, the strength of the State's case

11  given that this is a bond hearing and that's a factor to be

12  considered, that the Court is aware that the premeditation is

13  very clear in this case, in addition to chasing her down the

14  street and stabbing her, was actually weapon seeking prior to

15  the attack.  That's the extent I'm going to ask him if he met

16  with Ms. Kelly and viewed her injuries and that's the extent.

17         THE COURT:  Okay.  Go ahead and ask him that.

18  BY MS. FOWLER:

19     Q   And prior to the attack, did Mr. Weatherspoon advise he

20  was seeking weapons in order to kill Ms. Kelly and her child's

21  father?

22     A   Yes.

23         MR. STANTON:  I'd object again on the basis of

24  knowledge, Your Honor.

25         THE COURT:  Overruled.

1            MS. FOWLER:  And again, Judge, reliable hearsay is

2  permissible.

3    Q    Now were you aware of the status of the relationship

4  between Mr. Weatherspoon and Ms. Kelly at the time of the

5  attack?

6    A    They were boyfriend/girlfriend.

7    Q    Had they broken up?

8    A    It was on again, off again.

9            MR. STANTON:  Again, I'd object, Your Honor.  The

10  basis of knowledge has not been established.

11            MS. FOWLER:  Judge, that's fine.  I'll withdraw

12  that question.

13    Q    Did you also meet with Ms. Kelly during the course of

14  your investigation?

15    A    Yes, ma'am.

16    Q    And when you got to Ms. Kelly, where was she?

17    A    She was in Regional One medical hospital.

18    Q    And did you -- during the course of your investigation,

19  did you view any of Ms. Kelly's injuries?

20    A    Yes, I did.

21    Q    If I may, did you photograph them?

22    A    Yes, I did.

23            MS. FOWLER:  And if I may, I'll show these to the

24  defense and pass them to the witness.

25    Q    Sergeant Cordero, are you familiar with those photos?

1    A    Yes, ma'am.

2    Q    Can you tell the Court what those photos are?

3    A    It's photographs of Victoria Kelly.

4    Q    And is Victoria Kelly the victim in this matter?

5    A    Yes, ma'am.

6    Q    And she's the one that Delchon Weatherspoon stabbed at

7    least 10 to 13 times?

8    A    Yes, ma'am.

9    Q    Do those pictures document some of the injuries that Ms.

10   Kelly sustained as a result of the attack that

11   Mr. Weatherspoon induced on Ms. Kelly?

12   A    Yes, ma'am.

13   Q    And can you -- are those a true and accurate depiction

14   of what Ms. Kelly looked like when you met with her in the

15   hospital in the days after the attack?

16   A    Yes, ma'am.

17   Q    Can you tell the Court what those pictures are?

18   A    The first picture she's wearing a head bandage.  She has

19   blood on the side of her face.  And she says -- beneath the

20   bandage she's sustained a cut to her throat.

21   Q    And as a result of the cut to her throat, does she have

22   permanent paralysis in the left side of her face?

23   A    I don't know if it's permanent but she had paralysis the

24   day I spoke to her.

25              MR. STANTON:  Objection.

1    THE COURT:  Hold on, there's an objection.  What's
2    the objection?

3    MR. STANTON:  Well, Your Honor, I think he would be
4    testifying to a medical conclusion.

5    THE COURT:  I'm going to sustain that objection.

6    MS. FOWLER:  Well, Judge, I want to point out that
7    it's in the affidavit of complaint that Mr. Stanton asked to be
8    entered into evidence as part of his proof.

9    THE COURT:  Okay.  Well it's in evidence already
10   then.

11   MS. FOWLER:  Thank you, Judge.

12   BY MS. FOWLER:

13   Q    It does document her injuries?

14   A    Yes,' ma'am.

15   Q    You weren't able to document all of her injuries due to
16   the extensive nature of them, were you?

17   A    She had injuries that were bandaged that I didn't ask
18   her to remove her bandage or her clothing to see injuries, but
19   she had injuries to her stomach area that I didn't observe.

20   Q    Did she have injuries to her throat?

21   A    Yes.

22   Q    And did you also in those pictures does that document
23   injuries to her hands?

24   A    Yes.

25   Q    And were those defensive wounds?

1    A      Based upon my experience --

2              MR. STANTON:   Objection, Your Honor.

3              THE COURT:   What's your objection?

4              MR. STANTON:   Well the witness hadn't been

5    qualified to answer questions as to the nature of wounds and

6    how they are received.

7              MS. FOWLER:   I'll qualify him, Judge.   He's been an

8    MPD officer for --

9              THE COURT:   I don't think we need to go into that.

10   It's just a bond hearing, okay.

11             MS. FOWLER:   Yes, Judge.   Judge, I'd ask these be

12   made an exhibit to the hearing, please.

13             THE COURT:   Okay.   Photographs of victim collective

14   Exhibit 4.

15             (Exhibit No. 4 was marked and filed.)

16             THE COURT:   Any further questions?

17             MS. FOWLER:   No, sir.

18             THE COURT:   Cross-examination?

19             MR. STANTON:   Yes, Your Honor.   Before

20   cross-examination begins, we would move for the Court to

21   require the testifying witness to turn over or the State to

22   turn over any prior statements relating to this case from the

23   testifying witness.

24        Although obviously Tennessee Rule of Criminal Procedure

25   26.2 may not apply in this hearing as it's pending indictment,

1    Your Honor, under Tennessee Code Annotated 40-17-120, the

2    Tennessee Code actually requires after a witness called by the

3    State or the defendant in a criminal case not a trial but in a

4    criminal case it says specifically has testified on direct

5    examination, the Court shall a motion order the State or

6    defense to produce any statement of a witness in the State's or

7    the defense's possession which relates to the subject matter as

8    to the witness that's testifying.

9        Your Honor, I was not previously aware that Mr. Cordero

10   was testifying so I did not have an opportunity to ask for any

11   prior statements prior to his testimony.

12        THE COURT:  What has he testified to that's

13   surprised you?

14        MR. STANTON:  I'm not suggesting that there's a

15   surprise, Your Honor.  It's simply that --

16        THE COURT:  Everything he testified to is already

17   in the documents you introduced.

18        MR. STANTON:  Yes, Your Honor.  I'm not suggesting

19   it's a surprise but again --

20        THE COURT:  I'm going to deny that request, okay.

21   You may proceed if you have some questions.

22        MR. STANTON:  All right.  Thank you, Your Honor.

23

24

25

<u>CROSS-EXAMINATION</u>

BY MR. STANTON:

Q     Good morning, Officer Cordero.

A     Good morning, sir.

Q     So you met with Ms. Kelly on January 1st?

A     No, sir.

Q     What day did you meet with Ms. Kelly?

A     I think it was January 5th.

Q     So that was four days after the event occurred?

A     Yes, sir.

Q     And when she -- when you met with her, what were the
circumstances of that meeting?

A     She was still in the hospital recovering from her
injuries.  I called and spoke with her mother who said that she
thought she was well enough to speak so I went to the hospital,
located her, and documented her injuries and asked if she was
well enough to give me a statement and she did.

Q     And at that time was she under the influence of any
medication?

A     She was taking medication, but I asked her if she felt
clear headed and could give me a truthful statement and she
said that she did feel well enough to give a statement.

          MR. STANTON:  Your Honor, may I have a moment?

          THE COURT:  Sure.

          MR. STANTON:  I have no further questions.

1   THE COURT:  Thank you, sir.  You may step down.
2   Any further proof?

3   MS. FOWLER:  I do have one more witness, Judge, but
4   I will just tell the Court what that witness would testify to.
5   An investigator in my office on the day of the prelim did take
6   pictures to document all of Ms. Kelly's injuries.  There are
7   upwards of 20 stab wounds documented in these photos.  I don't
8   know if the Court wants to get into it.

9   Again, the purpose of this, Judge, is simply to show the
10   severity of the attack and --

11   THE COURT:  That's already been shown.

12   MS. FOWLER:  -- the risk to the community.  Yes,
13   Judge.  Then in that case I don't have any further proof.

14   THE COURT:  Okay.  Defense, do you have any proof?

15   MR. STANTON:  No rebuttal, Your Honor.

16   THE COURT:  Statements?

17   MR. STANTON:  Your Honor, if I could address the
18   argument in the petition, I think it would be fair to divide
19   the argument into two sections, first to address the relevant
20   sections in the bail reform act as it applies to
21   Mr. Weatherspoon and then subsequently to move on to discussing
22   the constitutional argument in the petition.

23   With respect to the bail reform act, Your Honor, the
24   pretrial services investigation reflects that the defendant
25   certainly has been in Shelby County for at least the last six

1   years working, employed here.   He does have family ties here,

2   both his mother and aunt are in Shelby County.

3          Your Honor, as far as the military service that was

4   referenced in the petition, of course as the Court is certainly

5   aware, getting records for that kind of thing can take some

6   time.   Have not been able to secure that for the purposes of

7   this hearing and although I am proceeding to do that.   But the

8   defendant has made certainly a good faith representation to me

9   that that is the case.

10          Moving on to the defendant's prior criminal record,

11   including prior releases on recognizance or bail, he has no

12   record, Your Honor.   This is the very first charge that he has

13   received.

14          And moving on to the nature of the offense and apparent

15   probability of conviction and likely sentence, well, Your

16   Honor, certainly the severity of the injuries I would

17   understand to the Court are certainly problematic, but I would

18   note to the Court that there is a defense, a potential defense

19   at least certainly for a lesser included, the possibility of

20   criminal attempt voluntary manslaughter or aggravated assault

21   given the circumstances of this as an intimate partner

22   relationship.   And Your Honor, the likelihood of adequate

23   provocation under those circumstances is increased.

24          Last, Your Honor, as far as other factors relating to

25   his ties to the community, he is a high school graduate.   And

1   so I do think that the factors under the bail reform act

2   actually do suggest the recognizance release is appropriate.

3   And certainly the bail reform act in subsection 115 suggests

4   that the Court should consider recognizance release first.   And

5   only after the Court has considered that recognizance release

6   is inappropriate directed I believe it's under section 117

7   should the Court consider reasonable bail conditions.

8          And last in subsection 118 should the Court look to what

9   is an appropriate bond to be set.   And of course under section

10   118 it does give the Court opportunity to set an unsecured bond

11   instead of a secured bond if the Court sees appropriate.

12         And with respect to subsection 118 as far as the

13   defendant's financial condition and circumstances, the State

14   has stipulated that the maximum bond that the defendant

15   petitioner can afford is $500.   I do think that that's highly

16   relevant in this case and I'll address that more in the

17   constitutional argument.

18         But with respect to the danger to the community, and I

19   do expect that the State's argument will largely be about the

20   danger to the community if Mr. Weatherspoon is released.   Under

21   subsection 118 of the bail reform act specifically notes that

22   the danger to the community should be considered with respect

23   to the defendant's prior record, does not direct the Court to

24   consider danger to the community with respect to the current

25   charge.

1   Mr. Weatherspoon is of course constitutionally presumed

2 innocent in this matter and as a result would argue that it's

3 inappropriate for the Court to consider danger to the community

4 with respect to simply charges for which he is presumed

5 innocent.

6   Next, Your Honor, to move on to the constitutional

7 argument, there is a fundamental problem with the bail as it's

8 currently set.  It's set at $200,000 for Mr. Weatherspoon.  And

9 the fundamental problem is this.  He is in jail solely because

10 he is impoverished.  A wealthy man in his position would be

11 free, would be out of custody pending trial.

12   And so to the extent that the Court and the General

13 Sessions Court judge had set a bond which Mr. Weatherspoon is

14 completely unable to afford or meet, then he is discriminated

15 against or his liberty is taken away solely because of his

16 economic status.  And, Your Honor, a line of cases going back

17 decades shows this to be constitutionally impermissible.

18   Going back to Gideon v. Wainright, obviously the Supreme

19 Court held that an indigent defendant can't be discriminated

20 against in terms of not having counsel.

21   And I think two of the most relevant cases are Williams

22 v. Illinois and Bearden V. Georgia.  In Williams v. Illinois

23 the Supreme Court held again that a person's liberty actually

24 cannot be taken away solely because of economic status.

25   And Williams is outlined in the petition.  The defendant

1  in that case had his liberty taken away because he was unable
2  to pay a fine.

3  The Illinois criminal code at the time provided that a
4  person who could not pay their fine could instead be held in
5  jail longer to work off the fine. The Supreme Court said
6  that's illegal, it's impermissible.

7  In Bearden v. Georgia the Supreme Court held that a
8  defendant cannot have their probation violated solely because
9  they cannot pay a fine as long as they're making good faith
10  efforts to pay that fine.

11  So the Supreme Court has held again in additional cases
12  noted in the petition on multiple occasions that an indigent
13  defendant cannot be discriminated against on the basis of their
14  economic status.

15  As a result, I think the appropriate way to read the
16  bail reform act so that it does not run afoul of these
17  constitutional mandates from the United States Supreme Court is
18  to read the provisions related to the defendant's economic
19  status as requiring the Court essentially to set reasonable
20  bail conditions in light of the defendant's economic status and
21  then to set a money bail that either the defendant can afford
22  the secured money bail or an unsecured bond because again, it
23  is fundamentally unfair, a violation of Mr. Weatherspoon's
24  equal protection rights to deprive him of his liberty solely
25  because he is poor.

1      THE COURT:  State.

2      MS. FOWLER:  Judge, I'll do this in reverse.  I'll

3   address the constitutional argument first.  He is not being

4   deprived of his liberty solely because he's poor.  He's being

5   deprived of his liberty because a judge in General Sessions

6   Court found by a preponderance of the evidence that and found

7   probable cause that Mr. Weatherspoon stabbed Victoria Kelly

8   upwards of 20 times and was trying to kill her.  He caused her

9   serious bodily injury.  She has paralysis to the left side of

10  her face.  She has injuries documented in the photos that she

11  has cut marks on her neck.

12      He committed -- by probable cause he committed a

13  criminal attempt murder in the first degree and this woman will

14  be permanently disfigured.  And so he's not -- his liberty is

15  not being -- he's not being confined because he's poor.  He's

16  being confined because he committed a crime, and I think that

17  should be clear.

18      I also think it should be clear that the two cases that

19  Mr. Stanton is relying on, these are cases that involve

20  punishment after conviction that were fine-only crimes.  That's

21  not the case here.  The punishment in this case is 15 years to

22  25 years at 85 percent.  The likelihood of conviction in this

23  case is extremely high.

24      Mr. Weatherspoon gave a full statement of admission that

25  lays out not only his premeditation, in that he was weapon

1    seeking prior to the event, but then he broke into her room, he

2    chased her down the street, and he stabbed her 20 times.  And

3    there were witnesses to this crime.

4         Ms. Kelly picked him out in General Sessions Court and

5    the likelihood of conviction in this case is very high.

6    Therefore, Judge, and given the severity of the case, the

7    State's position is that the bail is set too low.  We're not

8    going to ask the Court to raise it but that's the State's

9    position.

10        This man armed himself with a knife because he was mad

11   and he stabbed this woman 20 times.  He chased her down the

12   street.  He chased her out of her own home because he was mad,

13   because he wanted her to feel the pain he felt.

14        As to the release into the community, the safety of the

15   community.  Judge, he doesn't have any prior record but how do

16   we know when he's going to attack someone again and stab them

17   20 times because he's mad?  And we only have his criminal

18   history in Tennessee.  We don't know what his criminal history

19   in the military is.

20        And simply based on the proof and the likelihood of

21   conviction at trial given his statement of admission and

22   Ms. Kelly's identification in addition to the witnesses, the

23   State believes the likelihood of conviction is very high.  The

24   constitutional implications he has a bail.  He can make it.

25   But she is afraid of him.  She believes that this bail is not

1   set high enough.

2       And the only way that she can feel safe is if he remains

3   in custody.  And a General Sessions judge that heard the proof

4   rejected both of these arguments that Mr. Stanton made, and

5   this is forum shopping at its basis.  And that's the State's

6   argument and that's what we're relying on.

7           THE COURT:  Do you have anything further?

8           MR. STANTON:  Just to respond briefly to a couple

9   of the State's arguments.  First with respect to the forum

10  shopping argument.  I don't think it's forum shopping to appeal

11  a lower court decision.

12      Second, again, the State's focus on the danger of the

13  community.  I'd again note that the bail reform act

14  specifically directs the Court to look at the defendant's prior

15  record and not to assume that the defendant is dangerous solely

16  because of the nature of the allegations for which he is

17  constitutionally presumed innocent.

18      And last to address the State's focus on Bearden and

19  Williams as cases that were about punishment and not about

20  liberty.  Again, I think that that misses the import of those

21  cases, which is that in Bearden it stated clearly which is in

22  the petition that discrimination against a poor person in a

23  criminal case is illegal.

24      And I think that there are some -- there have been some

25  cases to look at this and actually extended those rulings to

1   the kind of argument that I'm making today, Your Honor.  So

2   there's a line of cases in district courts, mostly declaratory

3   judgments, preliminary injunctions, temporary restraining

4   orders, holding that setting a bond without proper

5   consideration of a defendant's financial ability to pay is

6   simply unconstitutional.

7        The Fifth Circuit looked at this in Pugh v. Rainwater

8   which is again cited in the petition.  Well that was a two-step

9   case, Your Honor.  It's the only circuit that's actually had an

10  opportunity to look at this issue and the initial panel,

11  three-judge panel that considered it held essentially that

12  there's a mandate of strict scrutiny by any court looking at a

13  bond being set that deprives somebody of their liberty based on

14  their economic status.

15       That was later vacated on other grounds, but I would

16  note that that is the only court of appeal to actually consider

17  this and I do think it's persuasive guidance to the Court in

18  terms of how it should be analyzing the problem.

19       Again, Mr. Weatherspoon is in custody not because he has

20  been -- simply because he has been accused with a crime but

21  because he is too poor to pay the bond that the Court set in

22  General Sessions.

23       For that reason I would ask the Court to set a

24  reasonable bond that he can afford, release him on his own

25  recognizance or to set an unsecured bond.  Thank you,

1        Your Honor.

2                THE COURT:  Okay.  I have considered the factors

3        outlined in TCA 40-11-118 which include the defendant's length

4        of residency in this community.  I've considered his employment

5        status, family ties, his lack of prior criminal record.

6            I've considered the nature of the offense and the

7        apparent probability of the conviction and the likely sentence.

8        The nature of the offense is a very violent offense.  The

9        apparently probability of conviction apparently is great and if

10       he is convicted of murder first -- criminal attempt murder

11       first, he's looking at serving 15 to 60 years in the State

12       Penitentiary, a very significant sentence.

13           In light of the serious nature of this offense, the

14       injuries to the victim, I think the bond that's set is

15       appropriate $200,000.  He's not being incarcerated because he's

16       poor.  He's being incarcerated because the community has to be

17       protected from any potential violence such as this.

18           So your motion to reduce the bond is denied.

19                MS. FOWLER:  Thank you, Judge.

20                THE COURT:  All right.  Step out, sir.

21

22           (END OF PROCEEDINGS HEARD IN THIS CAUSE ON

23                WEDNESDAY, MARCH 22, 2017.)

24

25

1                              CERTIFICATE

2

3      STATE OF TENNESSEE    )

4                            )

5      COUNTY OF SHELBY      )

6

7           I, the undersigned, **Katherine Knowles**, Court

8      Reporter for the Thirtieth Judicial District of the State of

9      Tennessee, do hereby certify that the foregoing to be true,

10     accurate and complete transcript to the best of my knowledge,

11     understanding and ability of all the evidence that was heard in

12     this cause in Division 2 of the Criminal Court for Shelby

13     County, Tennessee, before the Honorable Glenn Wright, Presiding

14     Judge, on the 22nd day of March, 2017.

15           I do further certify that I am neither of kin,

16     counsel nor interest to any party hereto.

17           Dated this 27th day of March, 2017.

18

19

20

21

22                              Katherine Knowles
                                Court Reporter, LCR #126
23

24

25

IN THE CRIMINAL COURT OF TENNESSEE
FOR THE 30TH JUDICIAL DISTRICT AT MEMPHIS
DIVISION 2

STATE OF TENNESSEE,

    Prosecution,

v.

DELCHON WEATHERSPOON,

    Defendant.

No. P 13 279

H 1700816

G.S. Case No.: 17000034

Charges: Criminal Attempt First
Degree Murder

---

## PETITION FOR WRIT OF CERTIORARI

    There is only one reason Mr. Delchon Weatherspoon is in jail today: he is too poor to pay for his release. Encaging a man for his poverty is not only a constitutional violation, but a moral stain on a society that purports to value freedom, equality, and the presumption of innocence. Accordingly, comes now Mr. Weatherspoon, by and through his attorney of record, Joshua Stanton, Assistant Public Defender, pursuant to T.C.A. § 40-11-101 *et seq.*, article I, §§ 8, 15, and 16 of the Tennessee constitution, and the Eighth and Fourteenth Amendments to the United States Constitution, and moves this honorable court to reduce Mr. Weatherspoon's bail to an amount that the court finds he can actually afford, to set an unsecured bail amount, or to release Mr. Weatherspoon on his own recognizance.

    This petition is presented under T.C.A. § 40-11-144(b), which provides that the appeal of a General Sessions Court's action granting, denying, setting, or altering conditions of a defendant's release shall be sought in Criminal Court upon writ of certiorari. This petition has been sworn to before a notary public and is the first application for the writ. *See* T.C.A. § 27-8-106.

1

## I.       FACTUAL AND PROCEDURAL BACKGROUND

On January 1, 2017, Mr. Weatherspoon was arrested and charged with attempted first degree murder.  Bail was set at $200,000.  A preliminary hearing was held in the above-styled matter on February 24, 2017, and Mr. Weatherspoon was held to the state as charged.  The General Sessions Court judge then denied the Defense motion to reduce bail.

Mr. Weatherspoon does not have the resources to make such a high bail.  Moreover, his background indicates he is not a flight risk.  He was born in Memphis, graduated from Hamilton High School in Memphis in 2007, and has lived here his entire life.  Most of his family is here in Shelby County.  He has been employed in Shelby County for his entire adult life.

Mr. Weatherspoon is also a veteran, having served in the Army National Guard from 2010 through 2016.  Finally, Mr. Weatherspoon has never missed court before, and, indeed, has never even been charged with a criminal offense before his arrest in this case.

## II.      ARGUMENT

As a preliminary matter, the factors outlined in T.C.A. §§ 40-11-115 and 40-11-118 strongly weigh in favor of either a nominal bond that his family can likely assist with paying, or, in the alternative, an unsecured bond or recognizance release.  The more odious problem, however, with the bail presently set in this case, is that it violates both the Tennessee and United States constitutions.

A system of money bail that lets some defendants go free while others remain in cages solely based on their financial resources creates one system of justice for the wealthy and another for the poor.  It recalls the system of indulgences that so ired Martin Luther, which purported to allow the wealthy to pay money to avoid punishment for their sins, while offering the poor no similar opportunity.

2

Like the moral violations that sparked the Protestant Reformation, and the constitutional violations that pervaded our society throughout the times of Jim Crow, the violation that Mr. Weatherspoon is currently experiencing is so widespread that its obviousness is obscured by its general acceptance. Pretrial liberty is a fundamental right. *United States v. Salerno*, 481 U.S. 739, 750 (1987); *State v. Burgins*, 464 S.W.3d 298, 304 (Tenn. 2015). Denial of a fundamental right on the basis of poverty is unconstitutional under both the Tennessee and United States constitutions. *See, e.g., Gideon v. Wainwright*, 372 U.S. 335 (1963); *Griffin v. Illinois*, 351 U.S. 12 (1956); *Williams v. Illinois*, 399 U.S. 235 (1970); *Tate v. Short*, 401 U.S. 395 (1971). The court must therefore reduce Mr. Weatherspoon's bail to an amount he can afford or release him on his own recognizance, and set reasonable bail conditions that will assure Mr. Weatherspoon's appearance.

### A.    Mr. Weatherspoon Has a Fundamental Right to Be Released Pending Trial

Under article 1, § 15 of the Tennessee State Constitution, "[A]ll prisoners shall be bailable by sufficient sureties, unless for capital offences, when the proof is evident, or the presumption great." The Tennessee Supreme Court explained, "This constitutional provision grants a defendant the right to pretrial release on bail pending adjudication of criminal charges." *Burgins*, 464 S.W.3d at 304. The *Burgins* court further remarked that "the right to pretrial bail has traditionally been a 'fundamental constitutional right.'" *Id.* at 305 (quoting Matthew J. Hegreness, *America's Fundamental and Vanishing Right to Bail*, 55 Ariz. L. Rev. 909, 916–17 (2013)).

The Tennessee Supreme Court's wording in *Burgins* is of the utmost importance to the understanding of the nature of the right to bail in Tennessee. The *Burgins* court specifically highlighted that article 1, § 15 "grants a defendant *the right to pretrial release on bail* . . . ." 464 S.W.3d at 304 (emphasis added). The import of this phrasing is that the Tennessee constitution's

3

reference to the right to be "bailable by sufficient sureties" amounts to a "right to pretrial release."

**B.    The Current Bail Amount is More Expensive than Mr. Weatherspoon Can Afford, and Therefore Violates His Constitutional Rights**

When a court sets bail at a dollar value higher than a defendant can afford, the court denies a defendant his right to pretrial release every bit as much as poll taxes historically denied poor (and often black) members of the electorate the right to vote. Denial of a fundamental right based on poverty is unconstitutional under both the Tennessee and federal constitutions. As the United States Supreme Court has noted, "In criminal trials a State can no more discriminate on account of poverty than on account of religion, race, or color." *Griffin v. Illinois*, 351 U.S. 12, 17 (1956).

Several historical examples make clear that a fundamental right cannot be denied on the basis of poverty alone. *Gideon v. Wainwright* held that the right to counsel cannot be denied on the basis of poverty. 372 U.S. 335 (1963). The Supreme Court in *Griffin* held that the right to appeal, once granted, cannot be denied on the basis of poverty. 351 U.S. at 18. Perhaps most analogous to the case at hand is *Williams v. Illinois*, 399 U.S. 235 (1970).

The Petitioner in *Williams* was sentenced by an Illinois court to one year of imprisonment, a $500 fine, and taxed $5 in court costs. *Id.* at 236. The court judgment directed, pursuant to then-existing Illinois law, "that if appellant was in default of the payment of the fine and court costs at the expiration of the one year sentence, he should remain in jail pursuant to § 1—7(k) of the Illinois Criminal Code to 'work off' the monetary obligations at the rate of $5 per day." *Id.* The Supreme Court noted that "the Illinois statute in operative effect expose[d] only indigents to the risk of imprisonment beyond the statutory maximum." *Id.* at 242. Accordingly, the Supreme Court held that imprisonment on the basis of "economic status" in

4

such a case violates the Equal Protection Clause. *Id.* at 244; *see also Tate v. Short*, 401 U.S. 395, 397–98 (1971) ("Although the instant case involves offenses punishable by fines only, petitioner's imprisonment for nonpayment constitutes precisely the same unconstitutional discrimination since, like Williams, petitioner was subjected to imprisonment solely because of his indigency."); *Bearden v. Georgia*, 461 U.S. 660, 671 (1983) (holding that the Equal Protection Clause of the Fourteenth Amendment generally prohibits "punishing a person for his poverty").

A ruling by this Court finding a constitutional violation in Mr. Weatherspoon's continued incarceration would be far from an outlier.  Numerous courts are in accord. *E.g.*, *Pugh v. Rainwater*, 572 F.2d 1053, 1057 (5th Cir. 1978) (*en banc*); *Pierce v. City of Velda City*, 4-15-cv-570-HEA (ECF No. 15-2) (E.D. Mo. June 3, 2015) (issuing Declaratory Judgment) ("No person may, consistent with the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, be held in custody after an arrest because the person is too poor to post a monetary bond."); *Thompson v. Moss Point, Mississippi*, 1:15-cv-00182-LG-RHW (ECF No. 18) (S.D. Miss. Nov. 6, 2015) (issuing Declaratory Judgment) (same); *Cooper v. City of Dothan*, 1:15-cv-425-WKW (ECF No. 7) (M.D. Ala. June 18, 2015); *Walker v. City of Calhoun, Georgia*, No. 4:15-cv-0170-HLM, 2016 WL 361612, at *14 (N.D. Ga. Jan. 28, 2016) (issuing preliminary injunction restraining defendant from "continu[ing] to keep arrestees in its custody for any amount of time solely because the arrestees cannot afford a secured monetary bond"); *see also State v. Blake*, 642 So.2d 959, 968 (recognizing the unconstitutionality and irrationality of a bail scheme that allows "a defendant with financial means who is charged with a noncapital violent felony, and who may potentially pose a great threat to community safety," to "obtain immediate

release simply by posting bail," while forcing an "indigent defendant . . . [to] remain incarcerated").

Mr. Weatherspoon today remains encaged behind bars solely because of his poverty. As has been repeatedly held, such invidious discrimination violates Mr. Weatherspoon's rights enshrined in the Equal Protection Clause of the Fourteenth Amendment, as well as both article I, §§ 8 and 15 of the Tennessee constitution. Mr. Weatherspoon is therefore entitled to have this Court remedy this grave constitutional wrong. *See Angel v. Bullington*, 330 U.S. 183, 209 (1947) ("[A] right without a remedy is no right at all . . . .").

**C.    The Appropriate Remedy is For the Court to Set Bail to an Amount That Mr. Weatherspoon Can Afford, to Set an Unsecured Bail Amount, or to Release Mr. Weatherspoon on His Own Recognizance**

The remedy for the constitutional problem is simple: set bail at an amount that the court finds Mr. Weatherspoon can actually afford, set an unsecured bail amount, or release Mr. Weatherspoon on his own recognizance. To the extent the Court is concerned with ensuring Mr. Weatherspoon's continued appearance and protecting the community, the Court is, of course, free to impose reasonable bail conditions (insofar as such bail conditions do not impose financial burdens on Mr. Weatherspoon that he cannot meet).

## III.    CONCLUSION

"Criminal defendants, presumed innocent, must not be confined in jail merely because they are poor." *Jones v. The City of Clanton*, No. 2:15-cv-34-MHT, 2015 WL 5387219, at *3 (M.D. Ala. Sept. 14, 2015). "Justice that is blind to poverty and indiscriminately forces defendants to pay for their physical liberty is no justice at all." *Id.* Mr. Weatherspoon requests that this Court immediately set a bail amount that Mr. Weatherspoon can afford, set an unsecured bail amount, or release him on his own recognizance.

6

Respectfully submitted,

Joshua Stanton
Assistant Public Defender
201 Poplar Avenue, Suite 2-01
Memphis, Tennessee  38103
(901) 610-1441

STATE OF TENNESSEE
COUNTY OF SHELBY

I, Joshua Stanton, being first duly sworn, make oath that I am the attorney for the

petitioner in the foregoing petition for writ of certiorari, that the statements contained in the

petition are true to the best of my knowledge, information, and belief.

Joshua Stanton
Assistant Public Defender

SWORN TO AND SUBSCRIBED to before me this 27 day of February, 2017

NOTARY PUBLIC

My Commission Expires January 20, 2019

8

## CERTIFICATE OF SERVICE

I do hereby certify that I have served a copy of the foregoing motion upon the Assistant

District Attorney General by hand delivery this 27th day of February, 2017.

Joshua Stanton

9