**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | |
|---|---|
| DELCHON WEATHERSPOON, ) | |
| ) | |
| Petitioner, ) | |
| ) | Case No. |
| v. ) | |
| ) | |
| SHERIFF BILL OLDHAM, Shelby County ) | |
| Sheriff's Office, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PETITION FOR A WRIT OF HABEAS CORPUS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

I.    Introduction ........................................................................................... 1

II.   Background—Bail is a Mechanism of Pretrial Release, Not Pretrial Detention ............ 3

III.  Facts ................................................................................................... 8

IV.   Standard of Review ................................................................................ 10

V.    Argument ............................................................................................ 11

      a.  *Jailing Mr. Weatherspoon For Inability to Make a Monetary Payment that the State Concedes He Cannot Make Violates the Equal Protection and Due Process Clauses* ........... 12

      b.  *Jailing Mr. Weatherspoon Pretrial Without a Robust Hearing on, and Specific Findings Concerning, his Dangerousness or Risk of Flight Simply Because He Cannot Pay Secured Money Bail Violates the Due Process Clause* ...................................................... 14

            i. Salerno *and its Progeny Allow Pretrial Detention Only When it Complies with Substantive and Procedural Due Process Principles*...........................................16

            ii. *An Unattainable Money Bail Amount is Equivalent to an Order of Detention*............19

            iii. *Because No Court Has Properly Found Mr. Weatherspoon to Be Dangerous or at Risk of Flight, the Order of Detention Violates the Due Process Clause*.....................20

VI.   Conclusion .......................................................................................... 22

i

# TABLE OF AUTHORITIES

**Cases**

*Atkins v. Michigan*,
    644 F.2d 543 (6th Cir. 1981) ................................................................. 10

*Bandy v. United States*,
    81 S. Ct. 197 (1960) ........................................................................... 13

*Bearden v. Georgia*,
    461 U.S. 660 (1983) ..................................................................... 2, 12, 14

*Carlisle v. Desoto Cnty., Miss.*,
    2010 WL 3894114 (N.D. Miss. Sept. 30, 2010) .................................. 18

*Douglas v. California*,
    372 U.S. 353 (1963) ........................................................................... 12

*Foucha v. Louisiana*,
    504 U.S. 71 (1992) ........................................................................ 14, 15

*Gonzalez v. Justices of Mun. Ct. of Boston*,
    382 F.3d 1 (1st Cir. 2004), *judgment vacated on other grounds*,
    544 U.S. 918 (2005) ........................................................................... 11

*Griffin v. Illinois*,
    351 U.S. 12 (1956) ............................................................................. 12

*Lopez-Valenzuela v. Arpaio*,
    770 F.3d 772 (9th Cir. 2014) ..................................................... 15, 17, 19

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) ........................................................................... 15

*Mayer v. City of Chicago*,
    404 U.S. 189 (1971) ........................................................................... 12

*Morrissey v. Brewer*,
    408 U.S. 471 (1972) ........................................................................... 21

*ODonnell v. Harris Cty., Texas*,
    2017 WL 1735456 (S.D. Tex. Apr. 28, 2017) .............................. *passim*

*Phillips v. Court of Common Pleas, Hamilton Cty.*, Ohio,
    668 F.3d 804 (6th Cir. 2012) ........................................................... 10, 11

*Pugh v. Rainwater*,
    557 F.2d 1189 (5th Cir. 1977) ..................................................... 2, 13, 14

*Simpson v. Miller*,
387 P.3d 1270 (Ariz. 2017)................................................................17, 18

*State v. Brown*,
338 P.3d 1276 (N.M. 2014) ............................................................15, 16, 19

*Stow v. Murashige*,
389 F.3d 880 (9th Cir. 2004) ..................................................................11

*Tate v. Short*,
401 U.S. 395 (1971)................................................................................12

*United States v. Leathers*,
412 F.2d 169 (D.C. Cir. 1969) .......................................................15, 19, 20

*United States v. Mantecon-Zayas*,
949 F.2d 548 (1st Cir. 1991) ............................................................ *passim*

*United States v. McConnell*,
842 F.2d 105 (5th Cir. 1988) ..................................................................19

*United States v. Montalvo-Murillo*,
495 U.S. 711 (1990)................................................................................15

*United States v. Salerno*,
481 U.S. 739 (1987)............................................................................ *passim*

*Walck v. Edmondson*,
472 F.3d 1227 (10th Cir. 2007) ..............................................................11

*Williams v. Farrior*,
626 F. Supp. 983 (S.D. Miss. 1986) ....................................................14, 18

*Williams v. Illinois*,
399 U.S. 235 (1970)...........................................................................6, 12

*Zadvydas v. Davis*,
533 U.S. 678 (2001)................................................................................14

**Constitutional Provisions**

U.S. Const. art. I, § 9..............................................................................10

U.S. Const. amend VIV ..................................................................... *passim*

**Statutes**

18 U.S.C. §§ 3141–3150..........................................................................7

18 U.S.C. § 3142(c)(2)............................................................................7

28 U.S.C. § 2241....................................................................................10

The Bail Reform Act of 1966, 80 STAT. 214 (repealed 1984)..........................................................7

Tenn. Code Ann. 40-11-118(b)(7) .........................................................................................8, 21

**Other Authorities**

1 J. CHITTY, A PRACTICAL TREATISE ON THE CRIMINAL LAW (Philadelphia ed. 1819) .................5

Brian A. Reaves, *U.S. Dep't of Justice, Felony Defendants in Large Urban Counties, 2009-Statistical Tables* (2013) .....................................................................................................5

Brief for Amicus Curiae CATO Institute, *Walker v. City of Calhoun, Ga.*, No. 16-10521 (11th Cir. 2016) .........................................................................................3

Brief of Amicus Curiae United States Department of Justice, *Walker v. City of Calhoun, Ga.*, No. 16-10521 (11th Cir. 2016)...............................................................2

Caleb Foote, *The Coming Constitutional Crisis in Bail: I*, 113 U. PA. L. REV. 959 (1965)...........6

DANIEL J. FREED & PATRICIA M. WALD, BAIL IN THE UNITED STATES: 1964 (1964)....................4

June Carbone, *Seeing Through the Emperor's New Clothes: Rediscovery of Basic Principles in the Administration of Bail*, 34 SYRACUSE L. REV. 517 (1983)..................................4

Justice Arthur J. Goldberg, *Foreward, in* RONALD GOLDFARB, RANSOM (1965)...........................6

Matthew J. Hegreness, *America's Fundamental and Vanishing Right to Bail*, 55 ARIZ. L. REV. 909 (2013) ...............................................................................................4

Note, *Bail: An Ancient Practice Reexamined*, 70 YALE L.J. 966 (1961) .......................................4

Robert F. Kennedy, Aug. 4, 1964, Testimony on Bail Legislation before the Senate Judiciary Committee..........................................................................................................6

Timothy C. Hart & Brian A. Reaves, U.S. Dep't of Justice, *Felony Defendants in Large Urban Counties, 1996* (1999) .........................................................................................5, 6

Timothy R. Schnacke, U.S. Department of Justice—National Institute for Corrections, *Fundamentals of Bail: A Resource Guide for Pretrial Practitioners and a Framework for American Pretrial Reform* (Aug. 2014) .........................................................................3

Vera Institute of Justice, *Incarceration's Front Door: The Misuse of Jails in America* (Feb. 2015)..............................................................................................................5, 6

Petitioner Delchon Weatherspoon is in a Shelby County jail cell. He has not been convicted of a crime, and no court has found that he is a flight risk or poses an immitigable danger to the community. Mr. Weatherspoon is confined in jail because he is indigent and the Criminal Court of Tennessee, without providing the procedural protections required by the United States Constitution, required a financial condition of release that he cannot pay. This is equivalent to an order of pretrial detention, the State of Tennessee has not complied with the substantive and procedural requirements for entering such an order, and Mr. Weatherspoon is therefore being jailed in violation of the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution.

Because Petitioner is being jailed solely because of his inability to pay, and without the requisite constitutional safeguards, he respectfully petitions for a writ of habeas corpus ordering his release or, in the alternative, ordering the State to seek a thorough adversarial hearing that complies with the requirements for preventive detention described by the United States Supreme Court, which include making findings about whether he is a danger to the community and, if so, whether conditions of release exist that could reasonably assure Mr. Weatherspoon's presence at trial and the safety of the community.

## I.     Introduction

There are two principal constitutional problems with detaining a person prior to trial simply because he cannot make a monetary payment: (1) jailing someone solely because he cannot pay a sum of money without making a finding that he is able to pay it infringes a fundamental right solely on the basis of wealth in violation of the Equal Protection and Due Process Clauses; and (2) jailing someone on an unattainable financial condition violates the Constitution because it deprives a presumptively innocent person of the fundamental right to liberty without complying with the

substantive and procedural requirements of a valid order of detention under the Due Process Clause. If the state jails someone for failing to pay a sum of money, it must either make a procedurally proper finding that the person is able to pay the sum and is willfully refusing to, *or* that jailing the person outright would be permissible under the due process clause because no alternatives exist to meet compelling government interests. The state did neither here.

The state may not jail someone simply because he has not paid a sum of money without making a finding that he is able to pay it. In *Bearden v. Georgia,* 461 U.S. 660, 672–73 (1983), the Supreme Court explained that to "deprive [a convicted defendant] of his conditional freedom simply because, through no fault of his own he cannot pay [a] fine . . . would be contrary to the fundamental fairness required by the Fourteenth Amendment." The principles that forbid jailing a *convicted* defendant because he is unable to make a payment apply with even greater force to an arrestee who is presumed innocent. *See Pugh v. Rainwater*, 557 F.2d 1189, 1190 (5th Cir. 1977) (striking down the use of secured money bail without inquiry into ability to pay because it invidiously discriminates against the poor); *ODonnell v. Harris Cty., Texas*, 2017 WL 1735456, at *2 (S.D. Tex. Apr. 28, 2017) (same); *see also* Brief of Amicus Curiae United States Department of Justice, *Walker v. City of Calhoun, Ga.*, No. 16-10521, at 13 (11th Cir. 2016).[1]

In this case, the secured financial condition of release was chosen intentionally to detain Mr. Weatherspoon. If the state requires a money bail amount that a person cannot afford to pay, it has entered the functional equivalent of an order of pretrial detention. As a matter of well-settled law, an order resulting in pretrial detention must meet exacting procedural and substantive Constitutional restrictions. *Compare United States v. Mantecon-Zayas*, 949 F.2d 548, 550 (1st Cir.

---

[1] *Available at* https://www.justice.gov/crt/file/887436/download.

1991) ("[O]nce a court finds itself in this situation—insisting on terms in a 'release' order that will cause the defendant to be detained pending trial—it must satisfy the procedural requirements for a valid detention order."), *with United States v. Salerno*, 481 U.S. 739 (1987) (describing procedural requirements for a valid detention order, including: a hearing with counsel, legal standards requiring proof of dangerousness by clear and convincing evidence, opportunity to present evidence, consideration of less restrictive alternative conditions, and reviewable findings). Federal constitutional law allows the state to do that only if, after robust procedures, it finds that the detainee poses a severe risk to the public or severe risk of flight.

In this case, the state court not only imposed financial conditions of release that were beyond Mr. Weatherspoon's means, it imposed those conditions with the specific purpose of detaining him. That was so even though no court found that Mr. Weatherspoon poses a danger to the community or a risk of flight. The state's detention of Mr. Weatherspoon simply because he cannot pay a sum of money violates the United States Constitution.

## II.    Background—Bail is a Mechanism of Pretrial Release, Not Pretrial Detention

"Bail" is not equivalent to "money bail." "Bail" means *release* before trial. Although common in recent years, the sentence "the Defendant is held on $10,000 bail" is a contradiction: as a historical matter, being "held on bail" was impossible. Timothy R. Schnacke, U.S. Department of Justice—National Institute for Corrections, *Fundamentals of Bail: A Resource Guide for Pretrial Practitioners and a Framework for American Pretrial Reform* 13 (August 2014).[2] As the CATO institute has explained, since well before the Magna Carta, bail has been understood as a

---

[2]*Available at* http://static.nicic.gov/UserShared/2014-11-05_final_bail_fundamentals_september- 8, 2014.pdf.

3

device to *free* defendants pretrial. *See* Brief for Amicus Curiae CATO Institute, *Walker v. City of Calhoun, Ga.*, No. 16-10521, at 3 (11th Cir. 2016).[3]

"Money bail" is the practice of requiring a defendant to forfeit money if he does not appear for trial. Money bail can be either secured or unsecured. A secured money bail system requires the defendant to deposit money before she is released; an unsecured money bail system allows the defendant to be released without depositing any money so long as she promises to pay if she fails to appear.

As Chief Judge Rosenthal of the United States District Court for the Southern District of Texas recently summarized in her comprehensive discussion of the history of the American bail system, *ODonnell*, 2017 WL 1735456, at *11, bail originated in medieval England "as a device to free untried prisoners." DANIEL J. FREED & PATRICIA M. WALD, BAIL IN THE UNITED STATES: 1964 1 (1964). The Statute of Westminster, enacted by the English Parliament in 1275, listed the offenses that would be bailable and provided criteria for determining whether someone should be released. These criteria included the strength of the evidence against the accused and the severity of the accused's criminal history. *See* June Carbone, *Seeing Through the Emperor's New Clothes: Rediscovery of Basic Principles in the Administration of Bail*, 34 SYRACUSE L. REV. 517, 523–26 (1983); Note, *Bail: An Ancient Practice Reexamined*, 70 YALE L.J. 966, 966 (1961). In 1679, Parliament adopted the Habeas Corpus Act to ensure that an accused could obtain a timely bail hearing. And the English Bill of Rights, which was enacted in 1679, prohibited excessive bail. *See* Carbone, *supra*, at 528.

---

[3]*Available at* https://object.cato.org/sites/cato.org/files/pubs/pdf/walker-v-city-of-calhoun.pdf.

The American States continued this tradition. Beginning with the Pennsylvania Constitution of 1682, 48 states, including Tennessee, have protected, by constitution or statute, a right to bail "by sufficient sureties, except for capital offenses when the proof is evident or the presumption great." Matthew J. Hegreness, *America's Fundamental and Vanishing Right to Bail*, 55 ARIZ. L. REV. 909, 916 (2013).

As the United States District Court for the Southern District of Texas recently explained in its detailed opinion striking down Harris County's money bail practices, "[h]istorians and jurists confirm that from the medieval period until the early American republic, a bail bond was typically based on an individualized assessment of what the arrestee or his surety *could pay* to assure appearance and secure release." *ODonnell*, 2017 WL 1735456, at *12 (emphasis added). The court explained the English practice at the time of the ratification of the United States Constitution: "'The rule is, where the offence is prima facie great, to require good bail; moderation nevertheless is to be observed, and such bail only is to be required as the party is able to procure; for otherwise the allowance of bail would be a mere colour for imprisoning the party on the charge.'" *Id.* (quoting 1 J. CHITTY, A PRACTICAL TREATISE ON THE CRIMINAL LAW 88–89 (Philadelphia ed. 1819)).

Jurisdictions across America began to depart from the original understanding of bail in the middle of the 20th Century. And in the last two decades, the use of unaffordable secured money bail has increased in scope and severity. In 1996, 59% of felony defendants had to meet a financial condition to regain their liberty pretrial. Timothy C. Hart & Brian A. Reaves, U.S. Dep't of Justice, *Felony Defendants in Large Urban Counties, 1996*, at 17 (1999).[4] By 2009, that percentage had climbed to 72%. Brian A. Reaves, *U.S. Dep't of Justice, Felony Defendants in Large Urban*

---

[4] *Available at* https://www.bjs.gov/content/pub/pdf/fdluc96.pdf.

*Counties, 2009-Statistical Tables*, at 15, 20 (2013).[5] In 1990, the majority of felony defendants who were not detained while their cases were pending were released without financial conditions. In 2009, only 23% of felony defendants who were not detained while their cases were pending were released without financial conditions. And the average amount of money required to be paid as a condition of release has increased. Vera Institute of Justice, *Incarceration's Front Door: The Misuse of Jails in America* 29 (Feb. 2015).[6] By 2009, about half of felony defendants subject to financial conditions of release could not meet them and remained in custody until the disposition of their cases. *Felony Defendants, 2009*, at 17.

The routine use of unaffordable secured money bail resulted in a "crisis." *See United States v. Salerno*, 481 U.S. 739, 742 (1987) (describing "a bail crisis in the federal courts"); Caleb Foote, *The Coming Constitutional Crisis in Bail: I*, 113 U. PA. L. REV. 959, 971 (1965). Two distinct evils of the secured money bail system provoked the crisis: It imperiled public safety by allowing potentially dangerous defendants to be released without any consideration of their dangerousness, and it worked an "invidious discrimination" against those who could not pay. *See, e.g.*, *Williams v. Illinois*, 399 U.S. 235, 242 (1970).

Attorney General Robert Kennedy led a successful movement to reform bail in the federal courts. Over 50 years ago, Kennedy testified:

> Bail has become a vehicle for systematic injustice. Every year in this country, thousands of persons are kept in jail for weeks and even months following arrest. They are not yet proven guilty. They may be no more likely to flee than you or I. But, nonetheless, most of them must stay in jail because, to be blunt, they cannot

---

[5] *Available at* https://www.bjs.gov/content/pub/pdf/fdluc09.pdf.

[6] *Available at* https://storage.googleapis.com/vera-web-assets/downloads/Publications/incarcerations-front-door-the-misuse-of-jails-in-america/legacy_downloads/incarcerations-front-door-report_02.pdf.

> afford to pay for their freedom . . . . Plainly our bail system has changed what is a
> constitutional right into an expensive privilege.

Aug. 4, 1964, Testimony on Bail Legislation before the Senate Judiciary Committee.[7] *See also*

Justice Arthur J. Goldberg, *Foreward*, *in* RONALD GOLDFARB, RANSOM ix (1965).[8]

One of the results of the movement to reform the bail system in the 1960's was the virtual elimination of cash bonds in the District of Columbia and in all Federal courts. The Bail Reform Act "assure[d] that all persons, regardless of their financial status, [would] not needlessly be detained pending their appearance to answer charges . . . when detention serves neither the ends of justice nor the public interest." The Bail Reform Act of 1966, 80 STAT. 214 (repealed 1984). In 1984, Congress updated the Bail Reform Act as part of the Comprehensive Crime Control Act. *See* 18 U.S.C. §§ 3141–3150. Federal courts and the courts of the District of Columbia transitioned to a rigorous, evidence-based system of non-financial conditions that remains in place today. If the government believes that a defendant cannot be released pre-trial because she is too dangerous or too likely to flee, the government may seek an order of detention, but only after it has satisfied the court, at a "full-blown adversary hearing," that no condition or combination of conditions could assure the defendant's appearance at trial and the safety of the community. *Salerno*, 481 U.S. at 750. The government may not detain someone just because she does not have enough money, nor may the government use money to detain *sub rosa* people it believes to be dangerous. 18 U.S.C. § 3142(c)(2) ("The judicial officer may not impose a financial condition that results in the pretrial detention of the person.").

---

[7] *Available at* http://www.justice.gov/sites/default/files/ag/legacy/2011/01/20/08-04-1964.pdf

[8] RANSOM is out of print. A copy of the cited portion of the book is attached as Exhibit E. (Doc 1-5, Ex. E, RANSOM.)

Although federal courts may detain defendants pending trial, they may not do so without rigorous process. As Chief Judge Rosenthal of the United States District Court for the Southern District of Texas recently concluded, "[t]he federal history of bail reform confirms that bail is a mechanism of pretrial release, not of preventive detention." *ODonnell*, 2017 WL 1735456, at *16.

### III.    Facts

Petitioner Delchon Weatherspoon was arrested on January 1, 2017, and charged with attempted murder. The General Sessions court in Memphis imposed a secured money bail amount of $200,000. (*See* Doc. 1-1, Exhibit A, Transcript of Criminal Court Hearing, at 6 ["Transcript"].) Mr. Weatherspoon appealed that decision as of right to the Criminal Court, which reviewed the requirement of a secured financial condition of release de novo. (*Id.* at 6.)

The Criminal Court held a hearing on March 22, 2017. (*Id.*) At the hearing, counsel for Mr. Weatherspoon argued that he had no prior criminal record (*id.* at 19), that he had lasting ties to his community in Memphis (*id.* at 18–19), that he had served in the military (*id.* at 19), and that he was employed (*id.* at 18). Counsel introduced an affidavit of indigence. (*Id.* at 4.) The State stipulated that Mr. Weatherspoon is indigent and can pay, at most, $500. (*Id.* at 5.)

Counsel for Mr. Weatherspoon argued that the State was "depriving Mr. Weatherspoon of his liberty solely because he is poor" in violation of the United States Constitution and that the State had not met the requirements for a valid order of pretrial detention. (*Id.* at 21.)

The State introduced only the testimony of a police officer who described the facts of the alleged offense. (*Id.* at 8–17.) The State presented no evidence that Mr. Weatherspoon had a criminal record or was at risk of fleeing before trial. (*See generally id.*) And the State presented no evidence that Mr. Weatherspoon was a danger to the community, other than the facts of the alleged offense, which, under Tennessee law, are not among the factors to be considered when assessing

8

dangerousness in the pretrial context. *See* Tenn. Code Ann. 40-11-118(b)(7) (listing among factors to consider in setting bail "[t]he defendant's prior criminal record and the likelihood that *because of that record* the defendant will pose a risk of danger to the community" (emphasis added)). The State argued that Mr. Weatherspoon was being detained because there was probable cause that he committed a crime, not because he was poor.

And the court found as follows:

```
2              THE COURT:  Okay.  I have considered the factors
3     outlined in TCA 40-11-118 which include the defendant's length
4     of residency in this community.  I've considered his employment
5     status, family ties, his lack of prior criminal record.
6              I've considered the nature of the offense and the
7     apparent probability of the conviction and the likely sentence.
8     The nature of the offense is a very violent offense.  The
9     apparently probability of conviction apparently is great and if
10    he is convicted of murder first -- criminal attempt murder
11    first, he's looking at serving 15 to 60 years in the State
12    Penitentiary, a very significant sentence.
13             In light of the serious nature of this offense, the
14    injuries to the victim, I think the bond that's set is
15    appropriate $200,000.  He's not being incarcerated because he's
16    poor.  He's being incarcerated because the community has to be
17    protected from any potential violence such as this.
```

(*Id.* at 27.)

If Mr. Weatherspoon could pay to secure a $200,000 bond, he would walk out of the jail. Given prevailing practices in the bail-bond industry, he could be released if he could afford between 1% and 10% of that amount up front. He is in a jail cell today because he does not have

enough money. The court did not find, as it was required to, that releasing Mr. Weatherspoon posed an immitigable risk of flight or a danger to the community. Nor did the court consider whether any other alternative conditions or combinations of conditions (such as home detention and electronic monitoring or other forms of pretrial supervision) could reasonably serve the State's interests. Instead, the court used Mr. Weatherspoon's inability to pay money to enter an order of detention against him without considering non-financial alternatives, and without explicitly finding that he poses an immitigable risk of flight or danger to the public.

Mr. Weatherspoon appealed the Criminal Court's decision to the Tennessee Court of Criminal Appeals. (Doc. 1-2, Exhibit B, Court of Appeals Order.) That court denied his appeal under an abuse-of-discretion standard, reasoning only that the "financial condition of the Defendant is only one" among many factors to be considered in setting bail under Tennessee law, and that the Criminal Court did not abuse its discretion in setting a money bail amount that it acknowledged Mr. Weatherspoon could not pay. (*Id.* at 2.) The appellate court did not address Mr. Weatherspoon's Equal Protection and Due Process arguments. (*See generally id.*)

Mr. Weatherspoon appealed to the Tennessee Supreme Court. (Doc. 1-3, Exhibit C, Weatherspoon Supreme Court Motion.) The Tennessee Supreme Court denied Mr. Weatherspoon's requested relief without opinion. (Doc. 1-4, Exhibit D, Tennessee Supreme Court Order.)

## IV.    Standard of Review

Petitioner brings this action under 28 U.S.C. § 2241 and Article I, Section Nine of the United States Constitution. Because he has not been convicted of a crime and is not in custody "pursuant to the judgment of a state court," Petitioner may bring this action under § 2241 and need not bring this action under § 2254, which governs habeas petitions challenging state criminal

convictions. *Phillips v. Court of Common Pleas, Hamilton Cty., Ohio*, 668 F.3d 804, 809 (6th Cir. 2012) ("We have long recognized that pretrial detainees pursue habeas relief . . . under § 2241."); *Atkins v. Michigan*, 644 F.2d 543, 546 & n.1, 549 (6th Cir. 1981) (applying § 2241 to a pretrial detainee's challenge to a state-court bail determination).

Section 2254's heightened standards of review do not apply to this case. *Phillips*, 668 F.3d at 809 ("The standards that apply to § 2241 petitions, by contrast, are significantly less demanding [than those that apply to § 2254 petitions]." (citing *Martinez v. Caldwell*, 644 F.3d 238, 242 (5th Cir. 2011); *Walck v. Edmondson*, 472 F.3d 1227, 1234–35 (10th Cir. 2007); *Stow v. Murashige*, 389 F.3d 880, 885–86 (9th Cir. 2004); *Gonzalez v. Justices of Mun. Ct. of Boston*, 382 F.3d 1, 6–7 (1st Cir. 2004), *judgment vacated on other grounds*, 544 U.S. 918 (2005)). This Court, accordingly, reviews the legal determinations of the state courts, and the constitutional adequacy of the procedures they used to make them, de novo. *Id.* ("Accordingly, we must conduct a de novo review of the state court proceedings in addressing [a 2241] petition.").

**V.    Argument**

Mr. Weatherspoon's objection to his detention in the Shelby County Jail is twofold: (1) He is in jail because he cannot pay a secured money bail amount that was imposed without the required procedural protections—indeed the court acknowledged that he was indigent and could not pay it—and (2) He is in jail because the Criminal Court entered the functional equivalent of an order of detention and no court has found, in a manner that complies with the rigorous procedural protections and substantive legal standards established by the United States Supreme Court, that he is dangerous or that he is a flight risk.

Mr. Weatherspoon's substantive objections to his detention—that detaining him pretrial is not narrowly tailored to forward a compelling government interest—cannot be addressed until his

procedural ones are. That is because neither Mr. Weatherspoon nor this Court can know whether the Criminal Court's order of detention complies with the substantive requirements of the Due Process Clause until the required findings are made under the correct substantive and evidentiary standards. Accordingly, Mr. Weatherspoon prays for a writ of habeas corpus ordering his release or, in the alternative, ordering the State to seek a thorough adversarial hearing that complies with the requirements for preventive detention described by the United States Supreme Court, which include making findings about whether he is a danger to the community and, if so, whether conditions of release exist that could reasonably assure Mr. Weatherspoon's presence at trial and the safety of the community.

   a.  **Jailing Mr. Weatherspoon For Inability to Make a Monetary Payment that the State Concedes He Cannot Make Violates the Equal Protection and Due Process Clauses**

The principle that jailing the poor because they cannot pay a sum of money is unconstitutional has deep roots in American constitutional law. *See Williams v. Illinois*, 399 U.S. 235, 241 (1970) ("[T]he Court has had frequent occasion to reaffirm allegiance to the basic command that justice be applied equally to all persons."); *Douglas v. California*, 372 U.S. 353, 355 (1963) (condemning the "evil" of "discrimination against the indigent"); *Griffin v. Illinois*, 351 U.S. 12, 19 (1956) ("There can be no equal justice where the kind of trial a man gets depends on the amount of money he has."); *see also Mayer v. City of Chicago*, 404 U.S. 189, 193 (1971).

These principles have been applied in a variety of contexts in which a government jailed someone because of her inability to make a monetary payment. In *Tate v. Short*, 401 U.S. 395, 398 (1971), the United States Supreme Court held that "the Constitution prohibits the State from imposing a fine as a sentence and then automatically converting it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full." In *Bearden v. Georgia,* 461

U.S. 660, 672–73 (1983), the Court explained that to "deprive [a] probationer of his conditional freedom simply because, through no fault of his own he cannot pay [a] fine . . . would be contrary to the fundamental fairness required by the Fourteenth Amendment."

For pretrial arrestees, the rights at stake are even more significant because the arrestees' liberty is not diminished by a criminal conviction; they are presumed innocent. Justice Douglas framed the basic question that applies to pre-trial detainees:

> To continue to demand a substantial bond which the defendant is unable to secure raises considerable problems for the equal administration of the law. . . . Can an indigent be denied freedom, where a wealthy man would not, because he does not happen to have enough property to pledge for his freedom?

*Bandy v. United States*, 81 S. Ct. 197, 197–98 (1960) (Douglas, J., in chambers).

The Fifth Circuit answered that question in *Pugh v. Rainwater*, 557 F.2d 1189, 1190 (5th Cir. 1977) (en banc). The panel opinion had struck down a Florida Rule of Criminal Procedure dealing with money bail because it unconstitutionally jailed indigent pre-trial arrestees solely because they could not make a monetary payment. *Id.* The *en banc* court agreed with the constitutional holding of the panel opinion but reversed the panel's facial invalidation of the *entire* Florida Rule. The *en banc* court held that the Florida Rule did not on its face require Florida courts to set secured monetary bail for arrestees. But the court explained that if such a thing were to happen to an indigent person, it would be unconstitutional. The *en banc* court reversed the panel opinion only because Florida courts could not be expected to enforce a new Rule—the Rule had been amended during the litigation in that case—in a manner that violated the Constitution by requiring monetary payments to secure the release of an indigent person. The court wrote

> We have no doubt that in the case of an indigent, whose appearance at trial could reasonably be assured by one of the alternate forms of release, pretrial confinement for inability to post money bail would constitute imposition of an excessive restraint. We do not read the State of Florida's new rule to require such a result.

13

*Id*. at 1058.[9] The *en banc* court held that "[t]he incarceration of those who cannot [afford a cash payment], without meaningful consideration of other possible alternatives, infringes on both due process and equal protection requirements." *Id*. at 1057;[10] *see also Williams v. Farrior*, 626 F. Supp. 983, 985 (S.D. Miss. 1986) ("For the purposes of the Fourteenth Amendment's Equal Protection Clause, it is clear that a bail system which allows only monetary bail and does not provide for any meaningful consideration of other possible alternatives for indigent pretrial detainees infringes on both equal protection and due process requirements.").

In this case, the State conceded on the record that Mr. Weatherspoon is indigent and therefore cannot pay the money bail amount in his case. But, under the Supreme Court's cases described above (which lower courts have explicitly extended to the pre-trial context) the state is permitted to detain someone for failing to pay money only if it makes a procedurally proper finding that he is able to pay. *E.g.*, *Bearden*, 461 U.S. at 672. Therefore, the State cannot justify Mr. Weatherspoon's detention by arguing that he is willfully refusing to pay the sum.

    **b.**   **Jailing Mr. Weatherspoon Pretrial Without a Robust Hearing on, and Specific Findings Concerning, his Dangerousness or Risk of Flight Simply Because He Cannot Pay Secured Money Bail Violates the Due Process Clause**

---

[9]*Rainwater* further explained that it refused to require a priority to be given in all cases—including those of the non-indigent—to non-monetary conditions of release. The court noted that, at least for wealthier people, some might actually prefer monetary bail over release with certain other conditions, and that the court would not invalidate a state Rule that allowed for those other conditions in appropriate cases. *Id*. at 1057.

[10]Four circuit judges dissented in *Rainwater*. Although they agreed with the constitutional principles announced by the majority that the Constitution forbids jailing the poor when they cannot afford monetary bail, they were concerned about the majority's faith in the Florida courts not to apply the new state Rule in unconstitutional ways to detain the indigent. *Id*. at 1067 ("I cannot escape the conclusion that the majority has chosen too frail a vessel for such a ponderous cargo of human rights.") (Simpson, J., dissenting).

The right to pretrial liberty is "fundamental." *United States v. Salerno*, 481 U.S. 739, 750 (1987); *see also Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."); *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action."); *United States v. Montalvo-Murillo*, 495 U.S. 711, 716 (1990) (holding that release prior to trial is a "vital liberty interest").

Because "[f]reedom from bodily restraint is a fundamental liberty interest," any deprivation of that liberty must withstand heightened constitutional scrutiny, which generally requires that the deprivation be narrowly tailored to further a compelling government interest. *See, e.g.*, *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 781 (9th Cir. 2014) (*en banc*) (applying strict scrutiny to strike down Arizona bail law that required detention after arrest for undocumented immigrants accused of certain offenses). For that reason, the Supreme Court in *Salerno* applied exacting scrutiny to a presumptively innocent person's loss of pretrial liberty and required that the government employ rigorous procedures to protect that liberty. *See Salerno*, 481 U.S. at 746 (describing "procedural due process" restrictions on pretrial detention, and citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

The procedures challenged in this case violate the Due Process Clause. An order setting unattainable conditions of release is equivalent to an order of detention. *State v. Brown*, 338 P.3d 1276 (N.M. 2014); *United States v. Mantecon-Zayas*, 949 F.2d 548, 550 (1st Cir. 1991); *United States v. Leathers*, 412 F.2d 169, 171 (D.C. Cir. 1969) ("[T]he setting of bond unreachable because of its amount would be tantamount to setting no conditions at all."); *ODonnell v. Harris Cty., Texas*, No. CV H-16-61414, 2017 WL 1735456, at *72 (S.D. Tex. Apr. 28, 2017) (holding that

secured money bail set in amount that an arrestee cannot afford is constitutionally equivalent to an order of detention). It must, therefore, at least survive heightened constitutional scrutiny and, therefore, be narrowly tailored. *See Brown*, 338 P.3d at 1292 ("Intentionally setting bail so high as to be unattainable is simply a less honest method of unlawfully denying bail altogether . . . . If a defendant should be detained pending trial . . ., then that defendant should not be permitted any bail at all. Otherwise the defendant is entitled to release on bail, and excessive bail cannot be required."). To meet that standard, a court must at least find on the record that the detainee presents a risk of flight or danger to the community and that no conditions or combination of conditions alternative to detention could reasonably mitigate that danger. Because no court has done that for Mr. Weatherspoon, his detention violates the Due Process Clause.

   i. Salerno *and its Progeny Allow Pretrial Detention Only When it Complies with Substantive and Procedural Due Process Principles*

In *Salerno*, the United States Supreme Court considered a facial challenge to the federal Bail Reform Act. That Act permits the government to detain people found to be highly dangerous, after an individualized "full blown adversary hearing," 481 U.S. at 740, and only where the "Government . . . convince[s] a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community . . . ." *Id.* The Supreme Court subjected the Bail Reform Act to heightened judicial scrutiny, holding that the government may detain individuals before trial only where that detention is carefully limited to serve a "compelling" government interest. *Id.* at 746.

*Salerno* imposed two interlocking sets of requirements on preventive detention: substantive and procedural. *Id.* at 746 ("This Court has held that the Due Process Clause protects individuals against two types of government action. So-called 'substantive due process' prevents the government from engaging in conduct that 'shocks the conscience' or interferes with rights

16

'implicit in the concept of ordered liberty.' When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner. This requirement has traditionally been referred to as 'procedural' due process."). The procedural requirements are necessary to ensure that the substantive ones have been met.

Substantively, *Salerno* required that pretrial detention survive heightened constitutional scrutiny. The government may deprive a presumptively innocent person of her physical liberty only if doing so is tailored to forward a compelling interest. *Id.* at 746–48. Therefore, the government may detain someone pretrial only if other, less restrictive means are unavailable to serve the state's interests.

Procedurally, *Salerno* held that orders of detention may be entered after rigorous procedures have been met. These procedures include, but are not necessarily limited to, a "full-blown adversary hearing," *id.* at 740; a heightened evidentiary standard of proof of dangerousness by "clear and convincing evidence," *id.* at 751; consideration of alternative conditions of release, *id.* at 741; and "written findings of fact and a written statement of reasons for a decision to detain," *id.* Consistent with its reliance on procedural due-process cases, *id.* at 746 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)), *Salerno* insists on procedures that are sufficient to ensure that any preventive detention be consistent with *substantive* due process.

Following *Salerno*, courts across the country have made clear that pre-trial detention regimes must be consistent with both procedural and substantive due process. *See Simpson v. Miller*, 387 P.3d 1270, 1276 (Ariz. 2017) ("[I]t is clear from *Salerno* and other decisions that the constitutionality of a pretrial detention scheme turns on whether particular procedures satisfy substantive due process standards."); *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 781 (9th Cir. 2014) (*en banc*) (applying strict scrutiny to strike down an Arizona law that required detention

after arrest without individualized consideration of an arrestee's circumstances); *ODonnell v. Harris Cty., Texas*, 2017 WL 1735456, at *2 (S.D. Tex. Apr. 28, 2017); *Carlisle v. Desoto Cnty., Miss.*, 2010 WL 3894114, at *5 (N.D. Miss. Sept. 30, 2010) (holding that because a "compelling state interest" was required for pretrial detention, the plaintiff's rights were violated if he was jailed without a consideration of non-financial alternatives); *see also Williams v. Farrior*, 626 F. Supp. 983, 986 (S.D. Miss. 1986) (holding that a state's pretrial detention scheme must meet "strict judicial scrutiny" because of the fundamental rights at issue).

In *Simpson*, the Arizona Supreme Court considered a State constitutional amendment that required the pretrial detention of people charged with "sexual assault, sexual conduct with a minor under fifteen years of age or molestation of a child under fifteen years of age when the proof is evident or the presumption great." *Simpson*, 387 P.3d at 1273. Arizona procedures required a "full-blown adversary hearing" before someone was detained pretrial under this provision, but the hearing was to determine only whether the proof was evident that the defendant committed the alleged offense; trial courts did not inquire into dangerousness or risk of flight separately. The Arizona Supreme Court subjected this provision to "heightened scrutiny" under the Due Process Clause of the United States Constitution. *Id.* at 1277. Although it concluded that "heightened scrutiny" and "strict scrutiny" are not necessarily identical, and that *Salerno* applied the former rather than the latter, the court nonetheless concluded that Arizona's preventative detention regime failed the constitutional test. *Id.* at 1278. The court concluded that the state must either provide individualized determinations of dangerousness for every person detained pretrial or "if the state chooses not to provide such determinations, its procedure would have to serve as a convincing proxy for unmanageable flight risk or dangerousness." *Id.* at 1277 (quotation marks and citation omitted). The court held that Arizona's procedures were insufficient because nothing about the

18

crimes with which the defendant was charged served as a convincing proxy for unmanageable risk of flight or dangerousness.

In *Lopez-Valenzuela*, the United States Court of Appeals for the Ninth Circuit considered an Arizona law that categorically denied pretrial release to any arrestee who was an undocumented immigrant to the United States. The court applied "strict scrutiny" to the Arizona law, relying on *Salerno*. 770 F.3d at 786. Under strict scrutiny, the court concluded, the law could not survive. "Whether a categorical denial of bail for noncapital offenses could *ever* withstand heightened scrutiny is an open question," the court noted. *Id.* at 785 (emphasis added). But the court concluded that a blanket prohibition on pretrial release for undocumented immigrants clearly could not survive heightened scrutiny. *Id.* To detain a presumptively innocent person prior to trial, the court reasoned, the state must offer convincing—and almost always individualized—rationales. *Id.* at 786.

> ii. *An Unattainable Money Bail Amount is Equivalent to an Order of Detention*

Courts across the country agree that requiring money bail in an amount that a defendant cannot afford is equivalent to ordering that he be detained pretrial. "Intentionally setting bail so high as to be unattainable is simply a less honest method of unlawfully denying bail altogether." *State v. Brown*, 338 P.3d 1276, 1292 (N.M. 2014).

Federal courts have unanimously held that monetary conditions of "release" that result in detention are equivalent to orders of detention and, therefore, must meet the exacting procedural and substantive requirements for orders of detention. *Mantecon-Zayas*, 949 F.2d at 550; *United States v. McConnell*, 842 F.2d 105, 110 (5th Cir. 1988) (explaining that when no attainable conditions of release can be implemented, and the defendant must be detained pending trial, "the court must explain its reasons for concluding that the particular financial requirement is a necessary

19

part of the conditions for release"); *United States v. Leathers*, 412 F.2d 169, 171 (D.C. Cir. 1969) ("[T]he setting of bond unreachable because of its amount would be tantamount to setting no conditions at all."); *ODonnell v. Harris Cty., Texas*, No. CV H-16-61414, 2017 WL 1735456, at *72 (S.D. Tex. Apr. 28, 2017) (holding that secured money bail set in an amount that an arrestee cannot afford is constitutionally equivalent to an order of detention).

The reasoning here is easy to understand. For Mr. Weatherspoon—who the State stipulated can pay only $500—a money bail amount of $200,000 is equivalent to a money bail amount of $200,000,000: these conditions are simply, and strictly, impossible. Setting an impossible condition of release is the functional equivalent of setting no condition at all and, therefore, ordering pretrial detention.

      iii.   *Because No Court Has Properly Found Mr. Weatherspoon to Be Dangerous or at Risk of Flight, the Order of Detention Violates the Due Process Clause*

As explained above, the Due Process Clause imposes strict substantive and procedural requirements on pretrial detention. In Mr. Weatherspoon's case, the Criminal Court did not make constitutionally adequate findings on the record about his dangerousness or risk of flight. Instead, the court ordered him detained simply based on the allegations against him. If this Court issues the writ requested by Mr. Weatherspoon, the State will have the opportunity to seek an order of detention against Mr. Weatherspoon at a constitutionally adequate hearing. But as this case stands, Mr. Weatherspoon's detention does not comply with the procedural requirements of the Due Process Clause.

The Criminal Court did not explain its reasoning beyond the perfunctory paragraph copied, in full, in Mr. Weatherspoon's petition. This alone is sufficient to condemn the court's decision under the Due Process Clause. When issuing an order of detention, a court must at least state its

reasons on the record. *See Mantecon-Zayas*, 949 F.2d at 551 (citing *Salerno* as holding that "procedural safeguards, including requirement of written findings and reasons, [were] sufficient to repel facial due process challenge to Bail Reform Act"); *see also Morrissey v. Brewer*, 408 U.S. 471, 491 (1972) (Brennan, J., concurring).

Regardless, the evidence presented at the hearing in this case could not have supported a constitutionally sufficient finding. First, the court heard no evidence suggesting that Mr. Weatherspoon poses a risk of flight. And it heard evidence that Mr. Weatherspoon has longstanding ties to the community, a job, a history of military service, and no criminal record. In any event, the court did not even purport to find that Mr. Weatherspoon posed a risk of flight, let alone an immitigable one. Second, the only evidence the court heard that could be relevant to evaluating Mr. Weatherspoon's potential danger to the community was a recitation of the facts of the unproven allegations against him. Under Tennessee law, that evidence cannot support a finding of dangerousness and, therefore, this Court can conclude that it did not. *See* Tenn. Code Ann. 40-11-118(b)(7) (listing among factors to consider in setting bail "[t]he defendant's prior criminal record and the likelihood that *because of that record* the defendant will pose a risk of danger to the community" (emphasis added)). The court did not hear evidence about, nor consider on the record, the suitability of non-financial conditions of release such as GPS monitoring or house arrest.

Accordingly, the court had no constitutionally sufficient ground on which to detain Mr. Weatherspoon and, therefore, a writ of habeas corpus should issue ordering his release or, in the alternative, ordering the State to seek a thorough adversarial hearing that complies with the requirements for preventive detention described by the United States Supreme Court, which include making findings about whether he is a danger to the community and, if so, whether

conditions of release exist that could reasonably assure Mr. Weatherspoon's presence at trial and the safety of the community.

## VI.   Conclusion

For the foregoing reasons, Petitioner Delchon Weatherspoon respectfully requests that the Court issue a writ of habeas corpus ordering his release or, in the alternative, ordering the State to seek a thorough adversarial hearing that complies with the requirements for preventive detention described by the United States Supreme Court, which include making findings about whether he is a danger to the community and, if so, whether conditions of release exist that could reasonably assure Mr. Weatherspoon's presence at trial and the safety of the community.

*/s/ Charles Gerstein*
Charles Gerstein (*pro hac vice* application forthcoming)
(DC Bar No. 1033346)
Premal Dharia (*pro hac vice* application forthcoming)
(DC Bar No. 484091)
Civil Rights Corps
910 17th Street NW, Suite 500
Washington, DC 20006
charlie@civilrightscorps.org
premal@civilrightscorps.org
(202) 670-4809

*/s/ Amir Ali*
Amir Ali (*pro hac vice* application forthcoming)
(DC Bar No. 1019681)
Roderick & Solange MacArthur Justice Center
718 7th Street NW
Washington, DC 20001
Amir.ali@macarthurjustice.org
(202) 869-3434

*/s/ Emma Redden*
Emma J. Redden (# 33501)
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
First Tennessee Building

165 Madison Avenue, Suite 2000
Memphis, Tennessee  38103
Telephone: (901) 577-8158
Facsimile: (901) 577-0882
*Attorneys for Petitioner*