IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

<table>
<tr><td>DELCHON WEATHERSPOON,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Petitioner,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>v.</td><td>)</td><td>No. 17-cv-2535-SHM-cgc</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>BILL OLDHAM, SHELBY COUNTY SHERIFF,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Respondent.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
</table>

## ORDER

Before the Court is Petitioner Delchon Weatherspoon's petition for writ of habeas corpus under 28 U.S.C. § 2241, filed on July 25, 2017 (the "§ 2241 Petition"). (ECF No. 1.) Weatherspoon challenges the constitutionality of his pre-trial detention on the ground that the state trial court required an unattainable financial condition of pretrial release without making any inquiry into Weatherspoon's ability to pay or considering alternative, non-monetary conditions of release. (ECF No. 1-7 at 480-81.)[1] Weatherspoon argues that the state trial court failed to comply with the Equal Protection and Due Process Clauses of the United States Constitution. (Id. at 481.) Weatherspoon seeks a writ of habeas corpus ordering his

_____

[1] Unless otherwise noted, citations to the record refer to the PageID number.

release, or, in the alternative, ordering an additional hearing that comports with Due Process. (Id. at 470.) Respondent Bill Oldham, Shelby County Sheriff, Weatherspoon's custodian, responded on November 6, 2017. (ECF No. 21.) Weatherspoon replied on November 13, 2017. (ECF No. 22.)

For the following reasons, Weatherspoon's § 2241 Petition is GRANTED. Weatherspoon is GRANTED a conditional writ of habeas corpus, releasing him, unless the state trial court holds a bail hearing that comports with Due Process within 30 days of the issuance of the writ to determine whether continued detention is justified.

## I.    Background

Weatherspoon is charged with attempted first degree murder. He is alleged to have stabbed his girlfriend multiple times. (ECF No. 1-1 at 12, 15-16.) The General Sessions Court for Shelby County, Tennessee, set Weatherspoon's bail at $200,000.[2] Weatherspoon filed for a writ of certiorari in the Criminal Court for Shelby County, seeking a bail reduction. (See ECF No. 1-1.)

At the hearing before the Criminal Court, Weatherspoon called no witnesses. He submitted three exhibits: an affidavit

---

[2] Weatherspoon provides no record of the hearing before the General Sessions Court.

of indigence, the General Sessions Court file, and the Pretrial Services Investigation Report. (Id. at 11-14.) The State of Tennessee (the "State") presented the testimony of Sergeant Daniel Cordero of the Memphis Police Department. (Id. at 14.) Cordero testified that Weatherspoon had confessed to the crime. (Id. at 15.) Cordero testified that Weatherspoon had admitted chasing the victim down the street and stabbing her between 10 and 13 times. (Id.) Cordero testified that Weatherspoon had admitted seeking a weapon to kill the victim and another individual. (Id. at 16.) Cordero also testified that Weatherspoon had said "he wanted [the victim] to feel the pain he was feeling in his heart." (Id. at 16.) The State submitted photographs of the victim's injuries after the attack. (Id. at 20-22.)

After hearing the proof, the state trial court found, in open court, that the bail amount of $200,000 was appropriate under Tenn. Code Ann. § 40-11-118. (Id. at 34.)

Weatherspoon appealed the state trial court's decision to the Tennessee Court of Criminal Appeals pursuant to Tenn. R. App. 8 and Tenn. Code Ann. § 40-11-144. (See ECF No. 1-2.) On May 11, 2017, the Court of Criminal Appeals denied Weatherspoon's motion for reduction of pretrial bail. (Id.)

Weatherspoon appealed the decision of the Court of Criminal Appeals to the Tennessee Supreme Court. (ECF No. 1-3.) On June 8, 2017, the Tennessee Supreme Court denied Weatherspoon's motion for reduction of pretrial bail. (ECF No. 1-4.)

Weatherspoon then filed this § 2241 Petition. (ECF No. 1.)

## II. Legal Standard & Jurisdiction

### A. Petition under 28 U.S.C. § 2241

Title 28 U.S.C. § 2241 authorizes a district court to entertain an application for the release of any person "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). See Phillips v. Court of Common Pleas, 668 F.3d 804, 809 (6th Cir. 2012) ("We have long recognized that pretrial detainees pursue habeas relief instead under § 2241."); Girts v. Yanai, 600 F.3d 576, 587 (6th Cir. 2010). The Sixth Circuit has held that a pretrial § 2241 habeas corpus petition is a proper vehicle to raise alleged constitutional violations of the right to bail pending trial. Atkins v. People of State of Mich., 644 F.2d 543, 549 (6th Cir. 1981).

A petitioner who seeks relief under § 2241 is entitled to _de novo_ review of the state court proceedings. _Phillips_, 668 F.3d at 810. All habeas petitioners, including those who proceed under § 2241, must exhaust available state-court remedies before proceeding in federal court, "and this usually requires that they appeal an adverse decision all the way to the state's court of last resort." _Id._ (citing _Klein v. Leis_, 548 F.3d 425, 429 n.2 (6th Cir. 2008)).

Weatherspoon has exhausted his available state-court remedies. (_See_ ECF Nos. 1-2 – 1-4.) The state trial court's decision is reviewed _de novo_.

## B. Due Process Clause

The Fifth Amendment to the United States Constitution provides, in part, that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law[.]" Due Process has two components: substantive and procedural. Substantive due process "prohibits States from infringing fundamental liberty interests, unless the infringement is narrowly tailored to serve a compelling state interest." _Lawrence v. Texas_, 539 U.S. 558, 593 (2003) (citing _Washington v. Glucksberg_, 521 U.S. 702, 721 (1997)). Procedural due process guarantees fair procedure. _Zinermon v. Burch_, 494 U.S. 113, 125 (1990). "Procedural due process rules are meant to

protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." Carey v. Piphus, 435 U.S. 247, 259 (1978).

The essential elements of a procedural due process claim under the Fifth Amendment are: "(1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process." Fields v. Henry Cnty., Tenn., 701 F.3d 180, 185 (6th Cir. 2012); see Thompson v. Ashe, 250 F.3d 399, 407 (6th Cir. 2001) (citing LRL Properties v. Portage Metro Hous. Auth., 55 F.3d 1097, 1108 (6th Cir. 1995)). Neither party disputes that the right to pretrial release is a protected liberty interest or that Weatherspoon has been deprived of that right.

Due process of law does not guarantee any specific type of procedure. Mitchell v. W.T. Grant Co., 416 U.S. 600, 610 (1974). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." Mathews v. Eldridge, 424 U.S. 319, 334 (1976) (internal quotation marks omitted); see also Neinast v. Bd. of Tr. of Columbus Metro. Library, 346 F.3d 585, 597 (6th Cir. 2003). To determine whether a particular procedure complies with due

process, courts apply the three-part balancing test stated in

Mathews:

> [I]dentification of the specific dictates of due
> process generally requires consideration of three
> distinct factors.  First, the private interest that
> will be affected by the official action; second, the
> risk of erroneous deprivation of such interest
> through the procedures used, and the probable value,
> if any, of additional or substitute procedural
> safeguards; and finally, the Government's interest,
> including the function involved and the fiscal and
> administrative burdens that the additional or
> substitute procedural requirements would entail.

Mathews, 424 U.S. at 335.

## C. Equal Protection Clause

The Equal Protection Clause of the Fourteenth Amendment

prohibits the government from denying individuals equal

protection of the laws.  U.S. Const. amend. XIV, § 1.  The

Equal Protection Clause may be invoked to analyze governmental

actions that draw distinctions based on specific

characteristics or impinge on an individual's exercise of a

fundamental right.  See, e.g., Skinner v. Oklahoma, 316 U.S.

535 (1942); Bush v. Gore, 531 U.S. 98 (2000); Superior Commc'ns

v. City of Riverview, Michigan, No. 17-1234, 2018 WL 651382, at

*10 (6th Cir. Feb. 1, 2018) ("The Equal Protection Clause

prohibits discrimination by the government that 'burdens a

fundamental right, targets a suspect class, or intentionally

treats one differently than others similarly situated without

any rational basis for the difference.'" (quoting <u>TriHealth,</u>

<u>Inc. v. Bd. of Comm'rs, Hamilton Cty.</u>, 430 F.3d 783, 788 (6th

Cir. 2005)).

### D. Tennessee Release from Custody and Bail Reform Act of 1978

Article I, section 15 of the Tennessee Constitution

mandates "[t]hat all prisoners be bailable by sufficient

sureties, unless for capital offenses, when the proof is

evident, or the presumption great."  Tenn. Const. art. I, § 15.

The Release from Custody and Bail Reform Act of 1978 (the

"Act"), Tenn. Code Ann. §§ 40-11-101 - 40-11-144, establishes

the procedure for determining bond for bailable offenses.

The Act provides that all defendants, except those charged

with capital offenses, are presumed bailable.  Tenn. Code Ann.

§ 40-11-102.  Courts applying the Act first consider releasing

the bailable defendant on the defendant's own recognizance.

T.C.A. § 40-11-115; <u>see</u> <u>Graham v. Gen. Sessions Court of</u>

<u>Franklin Cty.</u>, 157 S.W.3d 790, 793 (Tenn. Ct. App. 2004).  That

requires consideration of eight statutory factors.  Tenn. Code

Ann. § 40-11-115(b); <u>Graham</u>, 157 S.W.3d at 793.[3]

---

[3] The statutory factors include:
>     (1) The defendant's length of residence in the community;
>     (2) The defendant's employment status and history, and
>     financial condition;
>     (3) The defendant's family ties and relationships;
>     (4) The defendant's reputation, character and mental condition;

If the statutory factors do not support release on the
defendant's own recognizance, the court considers conditions of
release.  Tenn. Code Ann. § 40-11-116; <u>Graham</u>, 157 S.W.3d at
793.  Any conditions imposed must be "the least onerous
conditions reasonably likely to assure the defendant's
appearance in court."  Tenn. Code Ann. § 40-11-116; <u>Graham</u>, 157
S.W.3d at 793.

If no conditions of release can reasonably assure the
defendant's appearance, the court must set bail.  Tenn. Code
Ann. § 40-11-117; <u>Graham</u>, 157 S.W.3d at 793.  Tennessee law
does not prohibit monetary bail, even if conditions of release
can reasonably assure the defendant's appearance.  <u>Cf.</u> <u>Fields</u>
<u>v. Henry Cty., Tenn.</u>, 701 F.3d 180, 187 (6th Cir. 2012) (citing
<u>Malmquist v. Metro. Gov't of Nashville</u>, No. 3:10-cv-1014, 2011
WL 5982670, at *10-11 (M.D. Tenn. Nov. 29, 2011)).  The
monetary bail must be "as low as the court determines necessary
to reasonably assure the appearance of the defendant at trial."
Tenn. Code Ann. § 40-11-118; <u>Graham</u>, 157 S.W.3d at 793.  The
court considers nine factors in setting the bail amount.  Tenn.

          (5) The defendant's prior criminal record, including prior
          releases on recognizance or bail;
          (6) The identity of responsible members of the community who
          will vouch for defendant's reliability;
          (7) The nature of the offense and the apparent probability of
          conviction and the likely sentence, insofar as these factors
          are relevant to the risk of nonappearance; and
          (8) Any other factors indicating the defendant's ties to the
          community or bearing on the risk of willful failure to appear.
Tenn. Code Ann. § 40-11-115(b).

Code Ann. § 40-11-118; <u>Graham</u>, 157 S.W.3d at 793. When

balancing the statutory factors,[4] the court must "determin[e]

the amount of bail necessary to reasonably assure the

appearance of the defendant while at the same time protect[]

the safety of the public. . . ." Tenn. Code Ann. § 40–11–

118(b).

In Tennessee pretrial bail proceedings, the State must

meet a preponderance of the evidence standard. <u>See</u> <u>State v.</u>

<u>Burgins</u>, 464 S.W.3d 298, 310 n.7, 311 (Tenn. 2015). To review

a general sessions court's bond determination, the defendant

must file a petition for writ of certiorari in criminal court.

Tenn. Code Ann. § 40-11-144(b); <u>see</u> <u>State v. Moore</u>, 262 S.W.3d

767, 772 (Tenn. Crim. App. 2008); <u>State v. Coppock</u>, No. E2007-

00026-CCA-R3CD, 2008 WL 115820, at *2 (Tenn. Crim. App. Jan.

---

[4] The statutory factors include:
    (1) The defendant's length of residence in the community;
    (2) The defendant's employment status and history and financial condition;
    (3) The defendant's family ties and relationships;
    (4) The defendant's reputation, character and mental condition;
    (5) The defendant's prior criminal record, record of appearance at court proceedings, record of flight to avoid prosecution or failure to appear at court proceedings;
    (6) The nature of the offense and the apparent probability of conviction and the likely sentence;
    (7) The defendant's prior criminal record and the likelihood that because of that record the defendant will pose a risk of danger to the community;
    (8) The identity of responsible members of the community who will vouch for the defendant's reliability . . . ; and
    (9) Any other factors indicating the defendant's ties to the community or bearing on the risk of the defendant's willful failure to appear.
Tenn. Code Ann. § 40-11-118.

14, 2008); Tenn. Code Ann. § 27-5-108(a)(1); Tenn. R. App. P. 8. The criminal court reviews the general sessions court's decision <u>de novo</u>. Tenn. Code Ann. § 27-5-108(c).

Review of the criminal court's determination can be had by filing a motion for review in the court of criminal appeals. Tenn. Code Ann. § 40-11-144; Tenn. R. App. R. 8. The court of criminal appeals then reviews the criminal court's determination for abuse of discretion. <u>State v. Martucci</u>, No. C.C.A. 213, 1990 WL 36251, at *2 (Tenn. Crim. App. Apr. 3, 1990).

Review of the court of criminal appeals' decision can be had by filing a motion for review in the state supreme court. Tenn. Code Ann. § 40-11-144; Tenn. R. App. R. 8. The Tennessee Supreme Court reviews under an abuse of discretion standard. <u>Cf.</u> <u>Hicks v. State</u>, 179 Tenn. 601, 168 S.W.2d 781 (1943) (reviewing bail pending appeal); <u>Goins v. State</u>, 192 Tenn. 32, 237 S.W.2d 8 (1950) (same).

**III. Analysis**

**A. Due Process**

Weatherspoon argues that he was deprived of his liberty interest in pretrial release without adequate process. Weatherspoon contends that the state trial court's failure to

set bail without considering his indigency and the availability
of a less restrictive non-monetary alternative condition or
combination of conditions of release violated his Due Process
rights.  He argues that adequate process "requires notice, a
hearing at which the person can be heard, with counsel, at
which a court applies a transparent and heightened legal
standard (clear and convincing evidence), and issues findings
on the record that the detainee poses an immitigable risk of
flight or danger to the community."  (ECF No. 22 at 617
(footnote omitted).)  Weatherspoon also argues that the state
trial court failed to "state its reasons [for denying
conditional release] on the record" and that "the evidence
presented at the hearing . . . could not have supported a
constitutionally sufficient finding."  (ECF No. 1-7 at 489-90.)
Weatherspoon relies on <u>Bearden v. Georgia</u>, 461 U.S. 660 (1983),
<u>United States v. Salerno</u>, 481 U.S. 739 (1987), and <u>Pugh v.
Rainwater</u>, 572 F.2d 1053 (5th Cir. 1978) (en banc).

Sheriff Oldham responds that the state trial court did not
violate Tennessee law because the court appropriately weighed
the statutory factors when determining the bail amount, and
that the court did not impinge on Weatherspoon's Due Process or
Equal Protection rights because it did not set bail based on
Weatherspoon's financial condition.  (ECF No. 21-1.)

In <u>Bearden</u>, the Supreme Court held that Due Process requires some consideration of indigency when a court decides whether to imprison a defendant for failing to pay fines imposed at criminal sentencing. The Supreme Court held that a state could not revoke probation and incarcerate an indigent defendant based solely on non-willful failure to pay a fine or restitution. <u>Bearden</u>, 461 U.S. at 672. If the defendant was making a reasonable, good faith attempt to pay the fine or restitution and was unable to do so by reason of indigency, it would be "fundamentally unfair to revoke probation automatically without considering whether adequate alternative methods of punishing the defendant are available." <u>Id.</u> at 668-69. A court must inquire into the reason for the nonpayment before it revokes a defendant's probation for nonpayment. <u>Id.</u> at 672. "If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternate measures of punishment other than imprisonment." <u>Id.</u> The Supreme Court opined that a sentencing court could imprison only probationers who made sufficient bona fide efforts to pay if it "determines that alternatives to imprisonment are not adequate in a particular situation to meet the State's interest in punishment and deterrence." <u>Id.</u>

In Pugh, the Fifth Circuit addressed indigency when considering whether Florida's pretrial bail scheme was constitutional. 572 F.2d at 1055. Florida allowed six types of pretrial release in non-capital cases. Id. at 1055-56. Cash bail was one. Id. Although the Fifth Circuit ultimately rejected a constitutional challenge to Florida's bail scheme, the court discussed general constitutional principles governing the calculation of bail. The court reasoned that "the fixing of bail for any individual defendant must be based upon standards relevant to the purpose of assuring the presence of that defendant." Id. at 1057 (internal quotation marks omitted). The court said that "[a]ny [bail] requirement in excess of th[e] amount" that is "necessary to provide reasonable assurance of the accused's presence at trial" would "be inherently punitive and run afoul of due process requirements." Id. It also said that "[t]he incarceration of those who cannot [pay bond], without meaningful consideration of other possible alternatives, infringes on both due process and equal protection requirements." Id.

Bearden and Pugh addressed situations where an individual's inability to pay a set fine or bail amount would result in detention. Both cases held that due process requires courts to consider and balance the relevant state interest and

the individual's indigency when setting fines or bail amounts.
In Bearden, the Supreme Court instructed sentencing courts to
consider a probationer's ability to pay, alternatives to
imprisonment, and "the State's interest in punishment and
deterrence," before revoking probation and imprisoning the
probationer for failure to pay fines or restitution.  Bearden,
461 U.S. at 672.  "To do otherwise would deprive the
probationer of his conditional freedom simply because, through
no fault of his own, he cannot pay the fine."  Id. at 672-73.
In Pugh, the Fifth Circuit instructed that bail determinations
"must be based upon standards relevant to the purpose of
assuring the presence of [each individual] defendant" --
assurance of the defendant's presence being the relevant state
interest -- and must take indigency and alternative conditions
of release into account.  Pugh, 572 F.2d at 1057 (internal
quotation marks omitted).  The Fifth Circuit concluded that a
"master bond schedule" that did not take those factors into
account could not withstand constitutional challenge because it
would not tailor bail to the amount necessary to assure the
state's interest in the presence of each individual in
subsequent proceedings.  Id.

      Citing Pugh and Bearden, several federal district courts
have held that state laws setting a particular monetary bail

15

amount for a person's release from detention without
individualized considerations of indigency violate the Due
Process Clause.  See, e.g., Rodriguez v. Providence Cmty.
Corr., Inc., 155 F. Supp. 3d 758, 2015 WL 9239821, at *6-*9 &
n.10 (M.D. Tenn. 2015) (granting class-wide preliminary
injunction enjoining state policy requiring monetary payment
for probationers to obtain release pending a revocation hearing
"without an inquiry into the individual's ability to pay the
bond and whether alternative methods of ensuring attendance at
revocation hearings would be adequate"); Jones v. The City of
Clanton, No. 215CV34-MHT, 2015 WL 5387219, at *2 (M.D. Ala.
Sept. 14, 2015) (holding that the "use of a secured bail
schedule to detain a person after arrest, without an
individualized hearing regarding the person's indigence and the
need for bail or alternatives to bail, violates the Due Process
Clause of the Fourteenth Amendment"); see also Williams v.
Farrior, 626 F. Supp. 983, 985 (S.D. Miss. 1986) ("[I]t is
clear that a bail system which allows only monetary bail and
does not provide for any meaningful consideration of other
possible alternatives for indigent pretrial detainees infringes
on both equal protection and due process requirements.");
Buffin v. City & Cty. of San Francisco, No. 15-CV-04959-YGR,
2018 WL 424362, at *7 (N.D. Cal. Jan. 16, 2018); cf. Abdi et
al, v. Nielsen et al, No. 1:17-CV-0721 EAW, 2018 WL 798747, at

16

*4 (W.D.N.Y. Feb. 9, 2018). These district court decisions
stand for a general proposition: requiring money bail as a
condition of release at an amount impossible for the defendant
to pay is equivalent to a detention order, which is only
appropriate when the state shows and the court finds that no
condition or combination of conditions of release could satisfy
the purposes of bail, to assure the defendant's appearance at
trial or hearing and the safety of the public. See, e.g.,
O'Donnell v. Harris County, Texas, 251 F. Supp. 3d 1052 (S.D.
Tex. 2017) aff'd, No. 17-20333, 2018 WL 851776 (5th Cir. Feb.
14, 2018); Coleman v. Hennessy, No. 17-CV-06503-EMC, 2018 WL
541091, at *1 (N.D. Cal. Jan. 5, 2018). Weatherspoon argues
that no such showing or finding was made in state court.

Weatherspoon cites Salerno, arguing that deliberately
imposing unaffordable bail is equivalent to effective detention
and requires the same procedure as a denial of bail. In
Salerno, the Supreme Court upheld the Bail Reform Act of 1984,
18 U.S.C. § 3142(e), against a substantive due process
challenge. 481 U.S. at 747. That act allowed courts to deny
bail for serious crimes of violence, offenses for which the
sentence is life imprisonment or death, serious drug offenses,
and certain repeat offenders. Id. In addition to showing
probable cause that the defendant committed the crime, the

17

government was required to prove by clear and convincing evidence in a "full-blown adversary hearing" that "no conditions of release can reasonably assure the safety of the community or any person." Id. at 750. Applying general Due Process principles, the Supreme Court considered whether the act impermissibly infringed arrestees' liberty interest. The court opined that an arrestee's liberty interest is fundamental, and thus, as a general proposition, "the government may not detain a person prior to judgment of guilt in a criminal trial" unless a recognized exception applies. Id. at 749 (discussing the "well-established authority of the government, in special circumstances, to restrain individuals' liberty prior to or even without criminal trial and conviction"). The Supreme Court concluded that the Bail Reform Act was constitutional because it served a "compelling" and "overwhelming" governmental interest "in preventing crime by arrestees" and was "carefully limited" to achieve that purpose. Id. at 749-50, 755. The act also carefully delineated the circumstances under which detention would be permitted. Id. at 751.

The private interest at stake here -- pretrial liberty -- is substantial. See supra, at 13-18. When an indigent arrestee faces the possibility of pretrial detention or its

functional equivalent, courts have held that the minimum

process a state must provide is an opportunity to determine

whether no condition or combination of conditions of release

could satisfy the purposes of bail: to assure the defendant's

appearance at trial or hearing and the safety of the public.

Id. at 15-17.  That process is particularly important when an

arrestee is indigent.  Id.[5]

The Tennessee Bail Reform Act mandates consideration of

conditions of release when setting a bail amount.  See Tenn.

Code Ann. §§ 40-11-116 - 40-11-118.  Even if conditions of

release could satisfy the purposes of bail, however, the state

court may impose monetary bail.  Id.

Here, the state trial court on de novo review did not

consider whether non-monetary conditions of release could

satisfy the purposes of bail.  (See ECF No. 1-1.)  After

holding a hearing and considering the parties' arguments, the

court focused solely on the statutory bail-amount factors at

Tenn. Code Ann. § 40-11-118.  (Id. at 34.)  Applying those

factors, the court considered Weatherspoon's financial

condition, i.e., his indigency.  (Id.)  It also considered the

---

[5] Due Process does not guarantee, however, that indigent arrestees
will never be subject to monetary bail.  See United States v. Mantecon-
Zayas, 949 F.2d 548 (1st Cir. 1991) (finding trial court could properly set
unaffordable bail, resulting in the defendant's detention, provided that
the trial court complied with the procedural requirements for a valid
detention order).

nature of the offense. (Id.)[6] Balancing the § 40-11-118

factors, the court determined that Weatherspoon's bail should

remain at $200,000 because Weatherspoon presented a risk of

danger to the community. (Id.)

Under the three-part Mathews test, the procedure the state

trial court used risked an erroneous deprivation of

Weatherspoon's liberty interest. See Mathews, 424 U.S. at 335.

The procedure did not include determining whether a non-

monetary condition or combination of conditions of release

could assure Weatherspoon's appearance at trial and the safety

of the public. The government's interest in protecting the

community from danger is compelling. Salerno, 481 U.S. at 749

("The government's interest in preventing crime by arrestees is

both legitimate and compelling.") However, no fiscal or

administrative burden would have been imposed had the state

trial court properly considered non-monetary conditions of

release, and determined whether no non-monetary condition or

_____

[6] Weatherspoon argues that the Act precludes the state trial court
from considering public safety when considering the nature of the offense.
He points to a separate factor, which limits the use of a defendant's prior
criminal record to determine the defendant's potential risk of danger to
the community. (ECF No. 1-7 at 490 (citing Tenn. Code Ann. § 40-11-
118(b)(7).) Weatherspoon reasons that only that factor can be used to
assess the defendant's risk of danger to the community. His reading is not
supported by the statutory language. Before listing the factors, the Act
provides that the court should consider the nine factors "to reasonably
assure the appearance of the defendant *while at the same time protecting
the safety of the public*. . . ." Tenn. Code Ann. § 40-11-118(b) (emphasis
added). Although the seventh factor addresses the risk of danger, that
does not affect the balancing mandated by the Act as to the remaining
factors. The state trial court properly considered public safety when
considering the nature of the offense.

combination of conditions was adequate, before setting a bail amount.  See id.  The process afforded Weatherspoon was inadequate.  See id.; see also Rodriguez-Ziese v. Hennessy, No. 17-CV-06473-BLF, 2017 WL 6039705 (N.D. Cal. Dec. 6, 2017) (finding violation of Due Process rights where magistrate judge failed to consider defendant's ability to pay the bail amount or whether non-monetary alternatives could serve the same purposes as the financial condition of release).  The state trial court violated Weatherspoon's procedural Due Process rights by failing to consider non-monetary conditions of release.

Weatherspoon also argues that the state trial court should apply "a transparent and heightened legal standard (clear and convincing evidence)" and "find[] on the record that the detainee poses an immitigable risk of flight or danger to the community." (ECF No. 22 at 617 (footnote omitted).)  Under the federal Bail Reform Act, the government must meet a clear and convincing standard of proof.  Salerno, 481 U.S. at 750.  The Tennessee Bail Reform Act establishes a preponderance of the evidence standard.  Burgins, 464 S.W.3d at 310 n.7, 311.  That lower standard is not a constitutional violation.  Weatherspoon cites no authority, and the Court has found none, that requires a clear and convincing standard as part of a state's pretrial

release procedure. Numerous state courts have concluded that a lower evidentiary standard is permissible under the Due Process Clause. See, e.g., Ex Parte Shires, 508 S.W.3d 856, 866 (Tex. App. 2016) (state statute that required preponderance of the evidence rather than clear and convincing evidence standard did not violate detainee's procedural and substantive due process rights) (citing Salerno); Com. v. Pal, No. 13 CR 2269, 2013 WL 10571435, at *14 (Pa. Com. Pl. Nov. 27, 2013) (a prima facie standard rather than a clear and convincing standard is appropriate in assessing bail under state law); Querubin v. Com., 440 Mass. 108, 120, 795 N.E.2d 534, 544 (2003) (holding state statute's preponderance of the evidence rather than a clear and convincing standard did not violate detainee's due process rights); Ayala v. State, 262 Ga. 704, 706, 425 S.E.2d 282, 285 (1993) (holding state has the burden of proving by a preponderance of the evidence that the trial court should deny bail to secure the defendant's appearance in court or to protect the community). A state need not require a clear and convincing standard in its pretrial release proceedings. Tennessee's preponderance of the evidence standard in pretrial release proceedings does not violate Weatherspoon's Due Process rights.

To the extent Weatherspoon contends that the state trial court must articulate its reasoning in writing to comport with Due Process, his argument fails.[7]  Although the state trial court must find that no non-monetary conditions of release could satisfy the purpose of bail before setting bail and explain that finding, the reasoning need not be a written. O'Donnell, 2018 WL 851776, at *8.

Weatherspoon seeks a writ of habeas corpus ordering his release or ordering an additional hearing that comports with due process.  This Court lacks authority to remand a federal habeas corpus proceeding to state court.  United States v. Robinson, 407 F.Supp.2d 437, 444 (E.D. Mich. 2005); see Coombs v. Diguglielmo, 616 F.3d 255, 265 n.10 (3d Cir. 2010) (holding that a federal court "do[es] not have authority under the federal habeas statutes, 28 U.S.C. § 2241 or § 2254, to remand a habeas corpus petition to a state court for an evidentiary hearing"); Coulter v. McCann, 484 F.3d 459, 466 (7th Cir. 2007) ("There is no authority in the habeas corpus statute for a federal court to remand or transfer a proceeding to the competent state court."); Magwood v. Smith, 791 F.2d 1438, 1449

---

[7] Weatherspoon argues that, "[w]hen issuing an order of detention, a court must at least state its reasons on the record."  (ECF No. 1-7 at 489-90.)  He cites United States v. Mantecon-Zayas, 949 F.2d 548, 550 (1st Cir. 1991) and Morrissey v. Brewer, 408 U.S. 471, 491 (1972) (Brennan, J., concurring), both of which require written findings by the decision maker.  (Id.)

(11th Cir. 1986) ("[A] federal district court or court of
appeals has no appellate jurisdiction over a state criminal
case and hence has no authority to 'remand' a case to the state
courts.").

The Court does have authority to grant a conditional writ
of habeas corpus. See, e.g., Chanthanounsy v. Cumberland Cty.
Sheriff, No. CIV. 02-71-P-C, 2002 WL 1477170 (D. Me. July 9,
2002) (granting conditional writ of habeas corpus, releasing
alien, unless Immigration and Naturalization Service (INS) held
bail hearing within 30 days of issuance of writ to determine
whether continued detention was justified.), aff'd, No. CIV.02-
71-P-C, 2002 WL 31112190 (D. Me. Sept. 23, 2002); cf.
Rodriguez-Ziese, 2017 WL 6039705, at *1 (staying writ until
specific date to allow state court to conduct constitutionally
adequate bail hearing).

Weatherspoon is GRANTED a conditional writ of habeas
corpus, releasing Weatherspoon, unless the Shelby County
Criminal Court holds a bail hearing that comports with Due
Process within 30 days of the issuance of the writ to determine
whether continued detention is justified.

## B. Equal Protection

Weatherspoon argues that the state trial court's failure to consider his indigency and non-monetary conditions of release violates his rights under the Equal Protection Clause. Having granted Weatherspoon relief on his Due Process claim, the Court need not address Weatherspoon's Equal Protection claim.

## IV.  Conclusion

For the foregoing reasons, Weatherspoon's § 2241 Petition is GRANTED.  Weatherspoon is GRANTED a conditional writ of habeas corpus, releasing Weatherspoon, unless the Shelby County Criminal Court holds a bail hearing that comports with Due Process within 30 days of the issuance of the writ to determine whether continued detention is justified.


So ordered this 26th day of February, 2018.

*/s/ Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE