# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| DELCHON WEATHERSPOON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Cv. No. 17-2535-SHM/cgc |
| | ) | |
| SHERIFF BILL OLDHAM, | ) | |
| Shelby County Sheriff's Office, | ) | |
| | ) | |
| Respondent. | ) | |

## RESPONDENT'S RESPONSE IN OPPOSITION TO PETITIONER'S
## EMERGENCY MOTION FOR COMPLIANCE WITH CONDITIONAL WRIT

Respondent, Sheriff Bill Oldham, submits the following response to Petitioner's Emergency motion for Compliance with Conditional Writ. (DE – 36.)

## I. PROCEDURAL HISTORY

On February 26, 2018, the Court granted Petitioner a conditional writ of habeas corpus. (DE – 31.) The Court ordered Petitioner to be released "unless the state trial court holds a bail hearing that comports with Due Process within 30 days of the issuance of the writ to determine whether continued detention is justified." (*Id.* at PageID 704.) On March 22, 2018, the state trial court held a bond hearing in accordance with the Court's order. (DE – 39-1.) On March 29, 2018, Petitioner filed an Emergency Motion for Compliance with Conditional Writ. (DE – 36.) In support of the motion, Petitioner attached an affidavit from state-court trial counsel providing an account of what occurred at the hearing. (DE – 36-1.)

1

On April 6, 2018, Sheriff Oldham filed a request for an extension of time to file a response to the Emergency Motion for Compliance in order for Sheriff Oldham to receive a transcript of the hearing. (DE – 37.) On April 9, 2018, the Court granted Sheriff Oldham's motion and granted Sheriff Oldham fourteen days after the filing of the transcript of the hearing in which to file a response. (DE – 38.) On the same date, Petitioner filed a copy of the transcript with the Court. (DE – 39; DE – 39-1.)

## II. ARGUMENT

Petitioner's Emergency Motion for Compliance with Conditional Writ should be denied for two reasons. First, the new bond hearing fully complied with the Court's order granting a conditional writ of habeas corpus. Second, Petitioner is required to exhaust available state-court remedies for the new challenges he raises to the bond hearing, and he has not yet done so.

**A.     The bail hearing on March 22, 2018 fully complied with the requirements of the Court's order granting a conditional writ of habeas corpus.**

As the Court set out in its order granting a conditional writ of habeas corpus, the state trial court must consider three matters in determining bond for a bailable offense. (DE – 31, PageID 710-13.) First, the court must consider releasing the bailable defendant on the defendant's own recognizance. Tenn. Code Ann. § 40-11-115. In making this determination, the trial court must consider eight statutory factors. *Id.* § 40-11-115(b)(1)-(8).

Second, if the statutory factors do not support release on the defendant's own recognizance, the court must consider conditions of release. Tenn. Code Ann. § 40-11-116. Any conditions imposed must be "the least onerous conditions reasonably likely to assure the defendant's appearance in court." Tenn. Code Ann. § 40-11-116(a).

Third, if no conditions of release can reasonably assure the defendant's appearance, the trial court must set bail.  Tenn. Code Ann. § 40-11-117.  The monetary bail must be "as low as the court determines necessary to reasonably assure the appearance of the defendant at trial…while at the same time protecting the safety of the public…"  Tenn. Code Ann. § 40-11-118(a) and (b).  The trial court considers nine statutory factors in setting the bail amount.  Tenn. Code Ann. § 40-11-118(b)(1)-(9).

This Court's grant of the conditional writ focused on the second consideration in determining bond: the conditions of release.  The Court specifically found that Petitioner was denied his procedural due process rights because the trial court did not determine "whether a non-monetary condition or combination of conditions of release could assure [Petitioner's] appearance at trial and the safety of the public."  (DE – 31, PageID 722, 723.)  In order to comply with the Court's order, the trial court was required to consider "non-monetary conditions of release," and determine "whether no non-monetary condition or combination of conditions was adequate, before setting a bail amount."  (*Id.* at PageID 722-23.)  A review of the transcript of the bond hearing shows that the hearing fully complied with the terms of the conditional writ of habeas corpus.

At the hearing, the State called six witnesses.  Before the State's first witness testified, the trial court observed that there were "many factors" for the trial court to consider and that the State's burden of proof was a preponderance of the evidence standard.  (DE – 39-1, PageID 777.)  Sergeant James Taylor testified that he spoke with Petitioner after the stabbing.  (*Id.* at PageID 778.)  He said that Petitioner admitted to stabbing the victim ten to thirteen times, although he could not remember the precise number.  (*Id.* at PageID 779.)  Petitioner told Sergeant Taylor that he stabbed the victim because he wanted her "to feel the pain that he felt in his heart."  (*Id.*)

Through his conversation with Petitioner, Sergeant Taylor learned that Petitioner had sought to obtain a handgun from a family member before stabbing the victim. (*Id.*)

Officer Edward Cash testified that he was tasked with keeping and tracking body camera footage and car camera footage recorded by police officers on the street. (*Id.* at PageID 786.) Officer Cash authenticated footage that was taken from the body camera of one of the officers who responded to the scene. (*Id.* at PageID 787-88.)

Officer Christopher Edwards testified that he responded to the scene of the stabbing. (*Id.* at PageID 789-90.) He confirmed that the body camera footage showed the victim lying on the ground covered in blood. (*Id.* at PageID 790.)

Lieutenant George Cave testified that he also responded to the scene of the stabbing. (*Id.* at PageID 793.) During the course of his investigation, Lieutenant Cave learned that Petitioner had communicated with his aunt prior to the stabbing. (*Id.* at PageID 794.) He also learned that Petitioner had packed a bag and placed it in his vehicle before stabbing the victim. (*Id.*)

Sergeant Rick Norris testified that he obtained copies of Facebook messages between Petitioner and his aunt. (*Id.* at PageID 822.) In the messages, Petitioner repeatedly expressed his anger at the victim and his desire to kill her. (*Id.* at PageID 824-26.) Petitioner's aunt repeatedly told him to leave the victim's home, but he refused. (*Id.* at PageID 825-26.)

The victim testified she had ended a romantic relationship with Petitioner about two weeks prior to the stabbing. (*Id.* at PageID 799, 816.) Despite the breakup, Petitioner still had romantic feelings for the victim. (*Id.* at PageID 816.) The victim allowed Petitioner to stay in her home as a guest, and he was living in the upstairs of her home at the time of the stabbing. (*Id.* at PageID 812, 813.) While the victim was in her room with the father of her child, Petitioner burst through her locked bedroom door brandishing a knife. (*Id.* at PageID 799.)

When the victim saw the knife, she started to walk toward Petitioner.  (*Id.*)  Petitioner began to chase her, and the victim fled out of the front door of her home.  (*Id.*)

Once she was outside, the victim tried to talk with Petitioner.  (*Id.*)  She asked him why he was upset, and he told her that he could not believe they were no longer in a romantic relationship.  (*Id.*)  Petitioner then stabbed the victim in the stomach.  (*Id.* at PageID 800.)  The victim attempted to run from Petitioner, but he pursued her and repeatedly stabbed her.  (*Id.* at PageID 800-01.)  The victim estimated that Petitioner stabbed her "about" twenty times.  (*Id.* at PageID 798-99.)

As a result of the stabbing, the victim required two surgeries.  (*Id.* at PageID 804, 806.)  The victim suffered partial paralysis and was unable to move the left side of her face.  (*Id.* at PageID 808.)

The victim testified that she was afraid of Petitioner.  (*Id.* at PageID 811-12.)  She testified that there was not anything that the judge could do to make her feel comfortable with Petitioner's being released into the community.  (*Id.* at PageID 812.)  She testified that she would not feel comfortable if Petitioner was equipped with a GPS monitor or ordered to stay in his own home.  (*Id.* at PageID 820.)  Trial counsel asked the victim if there were "any conditions of release that would actually let [her] feel comfortable with [Petitioner] being out, and the victim indicated that she would only feel comfortable with Petitioner's release "[a]fter he served his time."  (*Id.*)  She testified that she was afraid that Petitioner would hurt her again, feeling "like if he can do something like that once, [he] can do it again."  (*Id.*)  Even with Petitioner incarcerated, the victim still worried about Petitioner hurting her, and she said that she did not "want to have to worry even more if he was to get out."  (*Id.*)

At the conclusion of the State's proof, trial counsel made a motion that the State had failed to put on any evidence indicating that Petitioner was either a danger to society or a flight risk.  (*Id.* at PageID 830.)  The trial court disagreed, noting that the fact that Petitioner packed a bag prior to stabbing the victim was evidence of risk of flight.  (*Id.* at PageID 831.)  The court found that there was "some proof in the record" of the two factors.  (*Id.*)

Petitioner called Dr. Angela Madden and Renell Matthews[1] as witnesses.  Dr. Madden had conducted research into the effectiveness of GPS monitoring pretrial of certain domestic violence offenders and certain sexual offenders.  (*Id.* at PageID 833-34.)  Based on her "limited amount of information" about Petitioner, Dr. Madden concluded that Petitioner did not have a high risk of pretrial misconduct under the Public Safety Assessment rubric.  (*Id.* at PageID 835-37.)  Dr. Madden agreed that she was not aware how many people either harmed or killed their victims while on pretrial release.  (*Id.* at PageID 839-40.)  She testified that she was not saying that Petitioner would not harm the victim if he was released.  (*Id.* at PageID 840-41.)  Based on her research in Shelby County, Dr. Madden had preliminary data stating that less than two percent of persons released prior to trial engaged in pretrial misconduct.  (*Id.* at PageID 844.)  Dr. Madden testified that a common cause for arrest was the suspect's failure to charge the GPS monitoring device.  (*Id.*)  She agreed that it was impossible to monitor a suspect when the GPS device was not charged.  (*Id.*)  She also agreed that there were instances with the device where suspects had cut them off of their bodies.  (*Id.*)

Ms. Matthews testified that Petitioner could stay with her if he was released prior to trial.  (*Id.* at PageID 849.)  She agreed that she would be able to ensure that Petitioner actually showed

---

[1] Sergeant Norris referred to Petitioner's aunt as Renell Carter, but she gave her name at the hearing as Renell Matthews.  Because Matthews is the name used in the transcript, Sheriff Oldham will use this name to refer to the witness.

up to court.  (*Id.* at PageID 850.)  Ms. Matthews confirmed that Petitioner was supposed to be staying with her at the time he stabbed the victim.  (*Id.* at PageID 852, 853.)  She testified that she did not want Petitioner to stay with the victim but that he would not listen to her.  (*Id.* at PageID 854.)  She agreed with the trial court that if Petitioner did not want to stay with her if the court released him, he would not stay at her home.  (*Id.* at PageID 854.)

At the conclusion of the hearing, the prosecutor asked the court to consider and conclude under Tenn. Code Ann. § 40-11-116 that Petitioner was not a good candidate for release on recognizance.  (DE – 39-1, PageID 855.)  The prosecutor also asked the court to consider and conclude under Tenn. Code Ann. § 40-11-117 that no combination of pretrial release factors, including a GPS monitor, would protect the community and the victim.  (*Id.* at PageID 855-56.)  Lastly, the prosecutor asked the court to either keep the same bond or to increase it.  (*Id.* at PageID 856-57.)

The court considered each of the statutory factors of Tenn. Code Ann. § 40-11-115.[2]  (*Id.* at PageID 862-65.)  The court specifically found based on the State's proof that Petitioner had packed a bag to plan an escape, that there was a risk Petitioner would not appear in court if released prior to trial.  (*Id.* at PageID 865.)  The court rejected that "an ROR appearance in any way, shape, or form is appropriate.  I do think some type of bond certainly is appropriate in this case."  (*Id.* at 865.)  The court found that the victim had a "very real fear that [Petitioner] would be anxious to come finish the job based on his statements in the text messages that he intended to kill her based on the pain she had caused him."  (*Id.* at PageID 865-66.)  The court also found

---

[2] In the declaration of Petitioner's state-court trial counsel, trial counsel identified these factors as the factors articulated in Tenn. Code Ann. § 40-11-118.  (DE – 36-1, PageID 760, ¶ 9.)  However, the transcript shows that the trial court was referring to the factors in Tenn. Code Ann. § 40-11-115, which enumerates the factors a court must consider when determining whether to release a defendant on his own recognizance.  (*Compare* DE – 39-1, PageID 862-65 *with* Tenn. Code Ann. § 40-11-115(b)(1)-(8)).

that the father of the victim's child had reason to be afraid if Petitioner was released prior to trial. (*Id.* at PageID 866.)  The court found that the State had "a strong interest in protecting the victim in this case as well as assuring the appearance of" Petitioner.  (*Id.* at PageID 866.)  The court reduced Petitioner's bond to $100,000 and required Petitioner to submit to GPS monitoring if he is able to post the bond.  (*Id.*)

Implicit in the court's ruling at that point was a finding that there were no non-monetary conditions of release that could ensure Petitioner's appearance at trial and ensure the safety of the public.  The court then proceeded to make this ruling explicit.  Immediately after the court set Petitioner's bond at $100,000, the prosecutor specifically asked the court:

> [J]ust to clarify, there's no combination of pretrial release factors that the Court could find that would be sufficient.  You do feel like a monetary bond with a GPS factor - - a GPS monitor would be appropriate in this case.  *But there's nothing under 40-11-117 that you would find would be sufficient as conditions of some sort of ROR and then additional conditions.*

(*Id.* at PageID 866-67) (emphasis added).  The trial court answered, "Thank you for articulating that clearly," affirming that the prosecutor had correctly explained the court's ruling.  (*Id.* at PageID 867).  The court went on to find the following:

> Again, the defense has not come up with - - you know, they're making these suggestions, but they have not presented the Court with anything specific for me. They're stating these options but they're not really available.  They may be available in Federal Court, but they're not available here.  I have not been presented with viable options frankly.  You know, bonding companies or in State Court anyway, are often willing to post bonds for very, very small amount on those large bonds.  But I am requiring GPS monitoring but I think the Defense has a real responsibility to present the Court with viable options as alternatives.  So I have not seen that from the Defense today.  I'm sorry.
> . . .
>
> So I'm trying to do the best I can to assure [Petitioner's] appearance.  But if he doesn't even have family members that can assure, you know, for a bonding company – I'm certainly not releasing him on his own recognizance because that would not have a bonding company willing to go find him if he were to disappear.

> Pretrial Services or an ROR release will not assure this Court of anything.  No. That is not going to happen.  So I mean I'm trying to work with the Defense as well as I can, but I – *I am not convinced that there are options available to this Court to assure the safety of the victim as well as the perhaps targeted second victim.  And I just – I can't do any better than that.  $100,000 and GPS monitoring.*

(*Id.* at PageID 868-69) (emphasis added).

Petitioner now argues that the trial court "did not find that no combination of non-monetary conditions of release was sufficient to ensure [Petitioner's] presence at trial and the safety of the community."  (DE – 36, PageID 755.)  In support of his emergency motion, Petitioner relies on an affidavit from state-court trial counsel, which misstates the proof presented at the hearing and omits nearly all of the trial court's findings.  (DE – 36-1.)  Contrary to trial counsel's assertion that the State introduced no proof that Petitioner was a danger to society and a flight risk, the State presented evidence of both factors through the testimony of Sergeant Taylor, Lieutenant Cave, Sergeant Norris, and the victim.  Trial counsel also erroneously contends that the trial court did not make any findings by a preponderance of the evidence.  (DE – 36-1, PageID 760.)  This assertion ignores the fact that at the beginning of the hearing, the trial court specifically noted that the State's burden of proof was by a preponderance of the evidence standard.  (DE – 39-1, PageID 777.)  The assertion also ignores the trial court's numerous and lengthy findings of fact, including the finding that there was evidence that Petitioner would pose a flight risk and a danger to society if released prior to trial.  (*Id.* at PageID 830-31, 864-66, 868-69.)  Most glaringly, trial counsel's assertion ignores the express finding that there is no combination of non-monetary conditions of release reasonably sufficient to ensure Petitioner's presence at trial and to ensure the safety of the community.  (*Id.* at PageID 866-67.)

The transcript illustrates that the bond hearing fully complied with the conditions of the Court's conditional writ of habeas corpus. The trial court made the requisite findings identified by the Court in the writ, and the bond hearing did not deprive Petitioner of his right to due process. His motion for emergency compliance is without merit and should be denied.

**B.    To the extent Petitioner makes new constitutional objections to the bond hearing, he has not exhausted his available state-court remedies.**

Petitioner makes several challenges to the trial court's order setting the amount of bond at $100,000. (DE – 36, PageID 754-55.)  These claims are not properly before the Court because Petitioner has not yet exhausted his available state remedies as to those claims.

Generally, a district court has jurisdiction to enforce a conditional writ of habeas corpus. *Gentry v. Deuth*, 456 F.3d 687, 692 (6th Cir. 2006). "On the other hand, when a state meets the terms of the habeas court's condition, thereby avoiding the writ's actual issuance, the habeas court does not retain any further jurisdiction over the matter." *Id.* (citing *Pitchess v. Davis*, 421 U.S. 482 (1975)). "[A] habeas court does not maintain 'continuing supervision over a retrial conducted pursuant to a conditional writ granted by the habeas court.'" *Girts v. Yanai*, 600 F.3d 576, 582 (6th Cir. 2010) (quoting *Davis*, 421 U.S. at 490).

Here, the Court's conditional writ of habeas corpus was satisfied when the trial court conducted a new bond hearing within the time specified in the Court's order and as specified in its directives. To the extent Petitioner now seeks relief on allegations of constitutional violations within that new hearing, he must first exhaust available state-court remedies before seeking relief in federal court.

The Sixth Circuit Court of Appeals' decision in *Dyer v. Morrow*, No. 10-5137, 2012 WL 3893110 (6th Cir. Sept. 7, 2012), is instructive on this issue.  In *Dyer*, the petitioner filed a habeas corpus petition under 28 U.S.C. § 2241 challenging the Tennessee Board of Parole's

denial of parole, arguing that the use of parole standards in effect at the time of the parole hearing—but not in effect at the time of the offense—violated ex post facto protections. The district court dismissed the petition, but the Sixth Circuit reversed and remanded for an evidentiary hearing. On remand, the district court ordered that a new parole hearing be conducted consistent with the older standards. After the new hearing was conducted and parole was again denied, the district court granted summary judgment to the respondent, concluding that the new parole hearing lawfully comported with the older standards. *Id*. at *1-*3.

On appeal, the Sixth Circuit affirmed, albeit on different grounds. The Sixth Circuit recognized that no state court had yet reviewed the Board's actions in the new parole hearing. "Thus, all subsequent proceedings after the [new] parole hearing could not properly be before the district court until the issues were exhausted in state courts, whose decisions could then be assessed under AEDPA." *Id*. at *4. What the district court had done "in essence" was to grant a conditional writ of habeas corpus, providing for the petitioner's release (i.e., "the court's only possible remedy under habeas"), "unless a new parole hearing was held in accordance with the correct standards." *Id*. at *5. In such a scenario, "[o]nce the parole hearing was held, the writ would be dismissed, and the court's supervisory powers under AEDPA would cease, permitting the state courts to consider the new hearing *de novo*." *Id*. (emphasis in original). A prisoner's constitutional claims related to a new hearing granted in habeas corpus "should be considered in the first instance by a state court." *Id*. at *4.[3]

---

[3]In an opinion concurring in the judgment, Judge Gibbons opined that the petition became moot after the Board conducted a hearing under the older standards. "[I]n order to determine whether Dyer's petition had become moot in light of the new parole hearing, the district court had to inquire whether, at least facially, the hearing was conducted as directed under the old standard." *Id*. at *7. Once the district court performed a facial analysis and concluded that the older standards were used, the district court "should simply have dismissed Dyer's petition as moot." *Id*. The petitioner "was certainly permitted to argue that the parole board did not abide by the

Applying *Dyer* to Petitioner's case, the trial court complied with the conditional writ of habeas corpus by conducting a new bond hearing.  A ready review of the transcript from the new bond hearing shows that the condition of the writ was satisfied by the trial court, including consideration of whether non-monetary conditions or a combination of conditions of release could assure Petitioner's appearance at trial and the safety of the community.  As for Petitioner's new claims that the $100,000 bond violates his constitutional rights, he has not yet exhausted available state-court remedies on those claims.  Petitioner may challenge the trial court's actions in state court by filing a motion for review of the release order pursuant to Tennessee Rule of Appellate Procedure 8.  But he must exhaust available state-court remedies on his new constitutional claims before returning to federal court to litigate them.  Petitioner's motion should be denied on exhaustion grounds.

## III. CONCLUSION

The trial court held a new bond hearing that comported with the principles of due process and satisfied the Court's conditional writ of habeas corpus.  Petitioner has not yet exhausted his available state-court remedies for his new challenges to the bond hearing, and these claims are not properly before the Court.  For these two reasons, the Motion for Emergency Compliance should be denied.

---

correct standards," but he "simply was not entitled to receive more than a skin-deep review for mootness."  *Id*.  If the petitioner "seeks a deeper review of the parole board's actions," then he must "return to state court to exhaust his remedies."  *Id*.

Respectfully submitted,

*/s/ Bridgett L. Stigger*
BRIDGETT L. STIGGER (TN BPR #29415)
bridgett.stigger@shelbycountytn.gov
JOHN MARSHALL JONES (TN BPR #13289)
johnm.jones@shelbycountytn.gov
SHELBY COUNTY ATTORNEY'S OFFICE
160 N. Main Street, Suite 950
Memphis, TN 38103
(901) 222-2100

*Attorneys for Respondent*
*Sheriff Bill Oldham*

<u>Certificate of Service</u>

I certify that the foregoing is being filed via the Court's ECF system this 23rd day of April, 2018, for service on all persons registered in connection with this civil action, including:

Charles Gerstein, Esq.
Premal Dharia, Esq.
910 17th Street NW, Suite 500
Washington, DC  20006

Amir Ali, Esq.
718 7th Street NW
Washington, DC  20001

Emma J. Redden, Esq.
165 Madison Avenue, Suite 2000
Memphis, TN  38103

*/s/ Bridgett L. Stigger*

13